WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller, Esq.
     - and -
700 Louisiana Street, Suite 1600
Houston, Texas 77002-2784
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez, Esq.

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                        :
In re                                   :      Chapter 11 Case No.
                                        :
LENOX SALES, INC., et al.               :      08-14679 (ALG)
                                        :
            Debtors.                    :      (Jointly Administered)
                                        :
------------------------------------------------------------x
```

**MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(a), 362(d), 363(b)
AND 503(b) OF THE BANKRUPTCY CODE (I) AUTHORIZING THE DEBTORS
TO (A) CONTINUE THEIR WORKERS' COMPENSATION PROGRAM AND
THEIR INSURANCE PROGRAMS AND (B) PAY ALL OBLIGATIONS IN RESPECT
THEREOF AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR
AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

        Lenox Sales, Inc. and its affiliated debtors in the above-referenced chapter 11

cases, as debtors and debtors in possession (collectively, the "Debtors"),[1] respectfully represent:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are
Lenox Sales, Inc. (3270), Lenox Group Inc. (4956), Lenox, Incorporated (8476), D 56, Inc. (0891), FL 56
Intermediate Corp. (4955), Lenox Retail, Inc. (3269), and Lenox Worldwide, LLC (7980).

## BACKGROUND

### General

1.      On the date hereof (the "Commencement Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Further, a motion pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for joint administration of the Debtors' chapter 11 cases is pending before this Court.

### The Debtors' Businesses

2.      The Debtors are leading designers, marketers, distributors, wholesalers, and retailers of quality tableware, collectibles, and giftware products under the Lenox®, Dansk®, Gorham®, and Department 56® brand names.  The Debtors conduct their businesses through two main operating entities, Lenox, Incorporated ("Lenox, Inc.") (together with its wholly owned subsidiaries Lenox Sales, Inc. and Lenox Retail, Inc.) and D 56, Inc. ("D 56").

3.      Lenox, Inc. is primarily responsible for the product development and marketing of fine and casual tabletop products, including dinnerware, stemware, serveware, and stainless steel flatware, as well as ceramic, crystal and metal ornaments, jewelry, figurines, and home décor.  These products are offered under the Lenox, Dansk, and Gorham brands as well as various other licensed brands.  The Lenox brand of fine dinnerware is the most widely recognized of its kind in the U.S. market, and has been chosen as the White House china for United States Presidents for nearly a century.

4.     D 56 is a leader in the gift, collectible, and holiday decorating industry, providing the Village Series of nostalgic collectible lighted ceramic buildings and related accessories, the Snowbabies line of figurines, other lines of collectables, and giftware

5.     The Debtors sell their products through three principal marketing and sales channels: wholesale, retail, and consumer direct.  The Debtors' wholesale channel includes department stores, large specialty retailers, general merchandise chains, national chains and clubs, small independent specialty retailers, and other wholesale accounts.  The Debtors' retail sales channel includes 30 retail stores operated in 14 states.  Finally, the Debtors utilize various methods of consumer direct marketing, which is overseen by Lenox, Inc., to sell their products, including (a) traditional direct-to-consumer methods, such as media advertising, direct mail, and telemarketing, (b) catalogs, and (c) the Debtors' various Internet sites, www.lenox.com, www.dansk.com, and www.department56.com.

6.     The Debtors own or lease office, manufacturing, warehouse, and distribution facilities across the country and maintain two overseas offices for product sourcing functions in China.  In addition, the Debtors lease a number of retail stores and nine D 56 and Lenox showrooms within the United States, including two in New York City.  The Debtors' flagship New York City Lenox showroom is located on Madison Avenue near other Tabletop and Gift Brands' trade showrooms.  The Debtors currently employ approximately 1,800 employees.

7.     As of October 25, 2008, the Debtors' unaudited consolidated financial statements reflected assets totaling approximately $264 million and liabilities totaling approximately $238 million.

## JURISDICTION

8.　　This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

9.　　In connection with the operation of their businesses, the Debtors maintain a workers' compensation program and various general liability, property, and other insurance programs and policies (collectively, the "Insurance Programs") through several different insurance carriers (the "Insurance Carriers"). Annexed hereto as Exhibit A is a list of each of the Insurance Programs, disclosing with respect to each Insurance Program, as applicable: the Insurance Carrier, the type of coverage, the coverage period, and the aggregate annual premium due thereunder.[2]

10.　　By this Motion, the Debtors request authority, pursuant to sections 105(a), 362(d), 363(b), and 503(b) of the Bankruptcy Code and Bankruptcy Rules 4001, 6003 and 6004 to (i) continue their Insurance Programs on an uninterrupted basis, (ii) honor, in the Debtors' discretion, their undisputed prepetition obligations thereunder (the "Insurance Obligations"), and (iii) modify the automatic stay solely and for the limited purpose of permitting employees with claims under the Workers' Compensation Program to proceed with their claims in accordance with such program in the appropriate judicial or administrative forum.

11.　　As part of their cash management system, the Debtors maintain bank accounts at certain banks and financial institutions (the "Banks"), including, but not limited to,

---

[2] In addition to the Insurance Programs listed on Exhibit A, the Debtors maintain numerous other insurance policies and programs with respect to employee benefits, such as health, dental, disability, and life insurance. These programs and policies are addressed in a separate motion pertaining to the Debtors' employee wage policies and benefit programs and filed contemporaneously herewith.

the Banks listed on Exhibit B annexed hereto and any other bank that is approved as part of the Debtors' cash management system. The Debtors draw upon funds in their accounts to satisfy their obligations arising from the Insurance Programs. In addition to the relief requested above, the Debtors request that the Court authorize the Banks to receive, honor, process, and pay any and all checks drawn, or electronic fund transfers requested or to be requested on the Debtors' Banks, to the extent that such checks or electronic fund transfers relate to any of the foregoing.

## BASIS FOR RELIEF REQUESTED

### The Debtors' Insurance Programs and Other Obligations

### A.    The Workers' Compensation Program

12.    Under the laws of the various states in which they operate, the Debtors are required to maintain workers' compensation policies and programs to provide their employees with workers' compensation benefits for claims arising from or related to their employment with the Debtors. The Debtors maintain workers' compensation coverage through a program (the "Workers' Compensation Program") provided by Liberty Insurance Corporation ("Liberty"). The Workers' Compensation Program covers the Debtors' statutory obligations to maintain workers' compensation programs in each of the jurisdictions in which the Debtors operate (but excluding a monopolistic jurisdiction).[3]

13.    Under the Workers' Compensation Program, the Debtors pay an annual premium to Liberty that is calculated based upon the Debtors' projected payroll and historic loss rates. The annual premium is paid at the inception of the policy period. The Debtors are responsible for paying a deductible under the Workers' Compensation Program of $250,000 on a per claim occurrence. Under the Workers' Compensation Program, insurance coverage is

---

[3] "Monopolistic jurisdictions" require the Debtors to provide workers' compensation coverage through specific state-run insurance pools. The monopolistic jurisdiction in which the Debtors operate is the state of Ohio.

provided by Liberty for workers' compensation claims subject to policy limits, with a per incident deductible of $250,000. The Debtors utilize the services of Wells Fargo Insurance Services ("WFIS") to administer the program. WFIS processes and pays all approved claims and also pays amounts billed directly by doctors and medical facilities. The Debtors are obligated to pay the program premium and reimburse WFIS up to $250,000 per approved claim for the loss payments WFIS makes in respect of coverage deductibles in accordance with the terms of the Workers' Compensation Program. For the period from January 1, 2008 through and including January 1, 2009, the total premium for the Workers' Compensation Program totaled $339,041. As of the Commencement Date, the Debtors have no amounts outstanding to Liberty. The Debtors have provided a Letter of Credit totaling $3,720,000 for the benefit of Liberty as collateral for the Debtors' obligation to reimburse Liberty under policies, including the Workers' Compensation Program.

14. The Debtors have maintained this policy with the Liberty since the acquisition of Lenox, Incorporated by D 56 from Brown Forman Corporation in September 2005. Prior to this period, Lenox, Incorporated maintained a policy with Liberty, and D 56 maintained a policy with Vigilant Insurance Company, a subsidiary of the Chubb Group of Insurance Companies. While these policies have been replaced with the Workers' Compensation Program through Liberty for current employees, the Debtors are responsible for claims that accrued under the legacy policies before September 2005. Currently, there are $475,000 of open claims under the legacy policies, in addition to $846,000 of open claims under the current Workers' Compensation Program. By this motion, the Debtors seek authority to pay all open claims for which they are determined to be liable, including claims arising under the legacy

policies and the current Workers' Compensation Program.[4]  The Debtors have provided a Letter of Credit totaling $1,150,000 for the benefit of Liberty as collateral for the Debtors' obligation to reimburse Liberty under the legacy Workers' Compensation policy.  Additionally the Debtors have provided a Letter of Credit totaling $200,000 for the benefit of Vigilant as collateral for the Debtors' obligation to reimburse Vigilant under the legacy Workers' Compensation policy.  Finally, the Debtors also have been required to provide additional collateral in the form of cash deposits to both Liberty and Vigilant totaling $185,000 and $60,000 respectively.

### B. Liability and Property Insurance Programs

15.     The Debtors maintain various liability and property-related insurance Programs, which provide the Debtors with insurance coverage for liabilities relating to, among other things, general liability, primary property liability, automobile liability, cargo liability, employment practices liability, directors and officers liability, crime liability, special risk, and umbrella or excess liability insurance (collectively, the "Liability and Property Insurance Programs").  Continuation of these policies is essential to the ongoing operation of the Debtors' businesses.

16.     The Debtors are required to pay premiums under the Liability and Property Insurance Programs based upon fixed rates established by the applicable Insurance Carrier.  For example, the Debtors' primary property insurance coverage is provided by Affiliated FM, requiring an annual premium of $288,273, while their general liability insurance coverage is provided by Liberty Mutual, requiring an annual premium of $168,360.  These policies have a term which began on January 1, 2008 and runs through January 1, 2009.   The Debtors pay certain of these premiums in cash, either directly to the Insurance Carriers or to their

---

[4] As the legacy policies have expired, there are no premium obligations associated therewith.

insurance broker, while a number of the premiums under the Debtors' Liability and Property Insurance Programs are financed by a third party financing company.

17. Specifically, six of the Debtors' policies with respect to the Liability and Property Insurance Programs are financed by Imperial A.I. Credit Companies ("AICCO") pursuant to a finance agreement with AICCO (the "AICCO Agreement").[5] Under the AICCO Agreement, AICCO pays the premiums for each respective policy at the policy's inception (a total of $637,748). The Debtors reimbursed AICCO with an initial payment of $127,551 and thereafter paid nine monthly installments to AICCO of $58,060. As of the Commencement Date, the Debtors have no known amounts outstanding to AICCO.

18. The aggregate annual premium for the Liability and Property Insurance Programs is approximately $1,340,000. As of the Commencement Date, the Debtors have fully paid all obligations in connection with policy premiums for the existing Liability and Property Insurance Programs. In addition, the Debtors are required to pay various deductibles for claims asserted under the respective policies. The amounts of the applicable deductibles are set forth in Exhibit A hereto. As of the Commencement Date, the Debtor is unable to accurately estimate the aggregate outstanding amount with respect to deductibles under the Liability and Property Insurance Programs since, in the normal course of operating its business, many claims made fail to assert specific dollar damages and are ultimately resolved for nominal amounts. Deductibles for claims relating to the period prior to the Commencement Date may continue to arise in the ordinary course of business. Accordingly, the Debtors are seeking the Court's authorization to pay such undisputed claims, in their discretion, as they come due.

---

[5] The financed policies include property liability, cargo & transportation liability, umbrella liability, internet liability, media/advertising liability, and international package liability.

**Insurance Broker**

19. The Debtors employ an insurance broker, Wells Fargo Insurance Services (the "Insurance Broker"), to assist them with the procurement and negotiation of their Insurance Programs and the processing of claims. In certain circumstances, the Insurance Broker remits payment to the Insurance Carriers on behalf of the Debtors. The Insurance Broker is paid a commission by the Insurance Carriers, not by the Debtors. Accordingly, the Debtors believe there are no amounts accrued and outstanding with respect to the Insurance Broker.

**Debtors Request Authority to (i) Continue the
Insurance Programs and (ii) Pay All Obligations in Respect Thereof**

20. Pursuant to sections 105(a), 362(d), 363(b), and 503(b) of the Bankruptcy Code and Bankruptcy Rules 4001 and 6004, the Debtors seek authority to continue, in their sole discretion, the Insurance Programs on an uninterrupted basis in accordance with the same practices and procedures as were in effect prior to the Commencement Date. Furthermore, the Debtors seek authority to pay, in their sole discretion, all undisputed premiums, deductibles, administrative fees, and other obligations arising under the Insurance Programs, as applicable, that were or are due and payable, or related to the period before or after, the Commencement Date.

21. Pursuant to section 503(b)(1) of the Bankruptcy Code, a debtor may incur, and the court, after notice and a hearing, shall allow as administrative expenses, among other things, "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1). In addition, pursuant to section 363(b) of the Bankruptcy Code, a debtor may, in the exercise of its sound business judgment and after notice and a hearing, use property of the estate outside of the ordinary course of business. § 363(b). The Debtors submit that the use of estate

funds for payment of the Insurance Obligations is permitted by sections 503(b)(1) and 363(b) of the Bankruptcy Code as necessary costs of preserving the estate.

22.     Furthermore, to supplement these explicit powers, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." § 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."  In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).  "Under 11 U.S.C. § 105 the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."  In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing Ionosphere Clubs, 98 B.R. at 177).

23.     In a long line of well-established cases, federal courts consistently have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  See, e.g., Miltenberger v. Logansport C. & S.W. Ry. Co., 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); Dudley v. Mealey, 147 F.2d 268 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases); Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.), 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

24.     The "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  See In re Lehigh &

New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize the payment of pre-petition claims if such payment was essential to the continued operation of the debtor); In re Boston & Me. Corp., 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation).  The doctrine is frequently invoked early in a chapter 11 case, particularly in connection with the payment of prepetition claims.  The rationale for the doctrine of necessity rule is consistent with the paramount goal of chapter 11: "facilitating the continued operation and rehabilitation of the debtor." Ionosphere Clubs, 98 B.R. at 176.  Accordingly, pursuant to section 105(a) of the Bankruptcy Code, this Court is empowered to grant the relief requested herein.

25.     Moreover, numerous courts in this jurisdiction have granted similar relief in other chapter 11 cases.  See, e.g., In re Steve & Barry's Manhattan LLC, et al., Case No. 08-12579 (ALG) (Bankr. S.D.N.Y. Jul. 30, 2008), (Bankr. S.D.N.Y. Jul. 11, 2008); In re Lexington Precision, et al., Case No. 08-11153 (MG) (Bankr. S.D.N.Y. Apr. 22, 2008); In re Fortunoff Fine Jewelry and Silverware, LLC, Case No. 08-10353 (JMP) (Bankr. S.D.N.Y. Feb. 29, 2008), (Bankr. S.D.N.Y. Feb. 5, 2008); In re PRC, LLC, Case No. 08-10239 (MG) (Bankr. S.D.N.Y. Jan. 25, 2008); Silicon Graphics, Inc., et al., Case No. 06-10977 (BRL)  (Bankr. S.D.N.Y May 31, 2006), (Bankr. S.D.N.Y May 10, 2006); In re Atkins Nutritionals, Inc., et al., Case No. 05-15913 (ALG) (Bankr. S.D.N.Y. Aug. 1, 2005).

**Continuing the Insurance Programs and Paying All Obligations in
Respect Thereof Is Necessary to Preserve the Value of the Debtors' Estates**

26.     The nature of the Debtors' businesses and the extent of their operations make it essential for the Debtors to maintain their Insurance Programs on an uninterrupted basis. The nonpayment of any premiums, deductibles, or related fees under one of the Insurance

Programs could result in one or more of the Insurance Carriers declining to renew the Debtors' insurance policies or refusing to enter into new insurance agreements with the Debtors in the future. If the Insurance Programs lapse without renewal, the Debtors could be exposed to substantial liability for personal and/or property damages to the detriment of all parties in interest. Furthermore, the Debtors would then be required to obtain replacement policies on an expedited basis at a significant cost to the estates.

27. Moreover, the Insurance Programs are vital to all aspects of the Debtors' operations. Applicable state law mandates that the Debtors maintain workers' compensation coverage for their employees. Failure by the Debtors to pay the premiums associated with their Workers' Compensation Programs would jeopardize their coverage and expose the Debtors to substantial liability in fines by various state workers' compensation boards.

28. In addition, the risk that eligible workers' compensation claimants will not receive timely payment for prepetition employment-related injuries could have a devastating effect on the financial well-being and morale of the Debtors' current employees. Departures by employees at this critical time may result in a severe disruption of the Debtors' businesses with a substantially adverse impact on the Debtors, the value of their assets and their businesses. The retention of the Debtors' qualified and dedicated senior management also is linked to the continued effectiveness of the directors' and officers' liability insurance policies.

29. Finally, pursuant to the guidelines established by the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), the Debtors are obligated to remain current with respect to their primary Insurance Programs. Therefore, the continuation of the Insurance Programs, on an uninterrupted basis, and the payment of all undisputed prepetition and postpetition Insurance Obligations arising under the Insurance

Programs, are essential to the preservation of the Debtors' businesses and the value of the Debtors' estates for all creditors. Accordingly, the Debtors are seeking the Court's authorization to continue the Insurance Programs and related policies as such practices, programs, and policies were in effect as of the Commencement Date and authorize, but not direct, the Debtors to pay any undisputed prepetition claims arising under the Insurance Program as they come due.

30.     To the extent any Insurance Program or related agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtors do not, at this time, seek to assume any such contract. Accordingly, if the Court authorizes the payments described above, such payments should not be deemed to constitute a postpetition assumption or adoption of the programs, policies, or agreements as executory contracts pursuant to section 365 of the Bankruptcy Code. The Debtors are in the process of reviewing these matters and reserve all of their rights under the Bankruptcy Code with respect thereto. Moreover, authorization to pay all amounts on account of the Insurance Obligations shall not affect the Debtors' right to contest the amount or validity of these obligations.

### The Automatic Stay Should Be Waived for Workers' Compensation Claims

31.     Section 362(a) of the Bankruptcy Code, commonly known as the "automatic stay," operates to stay

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1). Section 362, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." § 362(d)(1).

32.     To the extent the Debtors' employees hold valid workers' compensation claims, the Debtors seek authorization under section 362(d) of the Bankruptcy Code to permit these employees to proceed with their claims in the appropriate judicial or administrative forum. The Debtors believe cause exists to modify the automatic stay because prohibiting the Debtors' employees from proceeding with their claims could have a detrimental effect on the financial well-being and morale of such employees and lead to their departure. As discussed above, such departures could cause a severe disruption in the Debtors' businesses to the detriment of all parties in interest.

33.     To this end, and solely with respect to workers' compensation claims covered under the Workers' Compensation Programs, the Debtors seek to modify the automatic stay as it relates to workers' compensation claims; provided, however, that such claims are pursued in accordance with the Workers' Compensation Program and recoveries, if any, are limited to the proceeds from the applicable Workers' Compensation Program. All other claims, including any claims relating to matters covered by other Insurance Programs, will remain subject to the automatic stay. To effectuate the aforementioned modification of the automatic stay, the Debtors request that the Court waive the stay of a judgment under Bankruptcy Rule 7062 and the requirements under Bankruptcy Rule 9014 relating to contested matters with respect to claims under the Workers' Compensation Programs.

34.     Pursuant to this Motion, the Debtors do not seek a waiver, termination, or modification of the automatic stay with respect to any other claims or matters.

### Applicable Banks Should Be Authorized to Honor and Pay Checks Issued and Make Other Transfers to Pay Insurance Obligations

35.     As a result of the commencement of the Debtors' chapter 11 cases, and in the absence of an order of the Court providing otherwise, the Banks may dishonor or reject

Debtors' checks and electronic fund transfers with respect to the Insurance Obligations.

Therefore, the Debtors request that the Court authorize the Banks listed on Exhibit B annexed

hereto to, and any other bank the Debtors are authorized to do business with under the Cash

Management Motion[6] to process, honor, and pay all prepetition and postpetition checks issued or

to be issued, and electronic fund transfers requested or to be requested, by the Debtors with

respect to their Insurance Obligations.  The Debtors also seek authority to issue new postpetition

checks or effect new electronic fund transfers with respect to the Insurance Obligations to

replace any prepetition checks or electronic fund transfer requests that may be dishonored or

rejected.

36.     The Debtors represent that each of these checks or transfers is or will be

drawn on accounts authorized by the Court under the Cash Management Motion, and can be

readily identified as relating directly to payments under the Insurance Programs.  Accordingly,

the Debtors believe that prepetition checks and transfers other than those relating to the

Insurance Programs will not be honored inadvertently.

37.     Furthermore, the Debtors seek a waiver of the notice requirements under

Bankruptcy Rule 6004(a) and the stay of the order authorizing the use, sale, or lease of property

under Bankruptcy Rule 6004(h).

## NOTICE

38.     No trustee, examiner, or statutory creditors' committee has been appointed

in these chapter 11 cases.  The Debtors have served notice of this Motion on (i) the Office of the

---

[6] Contemporaneously herewith the Debtors filed the Motion for an Order Pursuant to Sections 105(a), 345(b), 363(b), 363(c) and 364(a) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004 (A) Authorizing the Debtors to (i) Continue Using Existing Centralized Cash Management System, (ii) Honor Certain Prepetition Obligations Related to the Use of the Cash Management System, and (iii) Maintain Existing Bank Accounts and Business Forms; and (B) Extending the Time to Comply With Section 345(b) of the Bankruptcy Code (the "Cash Management Motion").

United States Trustee for the Southern District of New York (Attn: Susan D. Golden), (ii) Paul, Hastings, Janofsky & Walker LLP, 600 Peachtree Street, N.E., 24th Floor, Atlanta, Georgia 30308 (Attn: Jesse H. Austin, III, Esq.) and Park Avenue Tower, 75 East 55th Street, First Floor, New York, New York 10022 (Attn: Leslie A. Plaskon, Esq.), as counsel for UBS AG, Stamford Branch, the administrative agent for the Debtors' prepetition secured revolving loan lenders and as counsel for the Debtors' proposed postpetition lenders, (iii) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022 (Attn: Adam C. Harris, Esq.) as counsel for The Bank of New York Mellon, the administrative and collateral agent for the Debtors' prepetition secured term loan lenders, (iv) the Debtors' 30 largest unsecured creditors (on a consolidated basis), and (v) the Pension Benefit Guaranty Corporation, Distress Terminations, Dept. of Insurance Supervision & Compliance, Suite 270, 1200 K Street NW, Washington, DC 20005-4026 (Attn: Sarah Eagle, Esq.). In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided.

39.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just and appropriate.

Dated: November 24, 2008
New York, New York

Respectfully submitted,

By: /s/ Alfredo R. Pérez
    Alfredo R. Pérez

Harvey R. Miller, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
        - and -
Alfredo R. Pérez, Esq.
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002-2784
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Attorneys for Debtors and Debtors in Possession

# Exhibit A

## Insurance Programs

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium | Deductible |
|---|---|---|---|---|---|
| Workers' Compensation | Liberty Insurance Corp. | WA7-64D-435745-058<br>WC7-641-435745-068 | 1/1/08 – 12/31/08 | $ 339,041 | $ 250,000 |
| General Liability | Liberty Mutual | TB2-641-435745-078 | 1/1/08 - 12/31/08 | $ 168,360 | $ 100,000 |
| Automobile | Liberty Mutual | AS2-641-435745-088 | 1/1/08 - 12/31/08 | $ 22,136 | $ 500 |
| Property | Affiliated FM | EI294 | 1/1/08 - 12/31/08 | $ 288,273 | $ 100,000 |
| Cargo / Transportation | Travelers | OC 01800089 | 1/1/08 - 12/31/08 | $ 120,828 | $ 10,000 |
| Umbrella | Chubb Insurance Company /<br>Crum & Forster | 79733346 /<br>5500120947 | 1/1/08 - 12/31/08 | $ 136,523 | - - - |
| Internet Liability | American International Specialty | 007076208 | 1/1/08 - 12/31/08 | $ 62,939 | $ 250,000 |
| Media / Advertising | National Casualty Company | LS 041211 | 12/31/07 - 12/31/08 | $ 17,558 | $ 25,000 |
| International Package | Chubb Insurance Company | 35384218 | 1/1/08 - 12/31/08 | $ 11,627 | - - - |
| D&O Liability | Great American /<br>Ironshore /<br>XL Specialty /<br>XL Specialty | DOL 5592541 /<br>IRH 008980702001 /<br>ELU 100628-07 /<br>ELU 100631-07 | 10/7/08 - 10/7/09 | $ 397,650 | $ - - - (non-indemnifiable claims)<br>$ 250,000 (indemnifiable / securities) |
| Fiduciary | Federal Insurance Company (Chubb) | 81377385 | 10/7/08 - 10/7/09 | $ 19,193 | $ - - - (voluntary settlement)<br>$ 100,000 (fiduciary settlement) |
| Commercial Crime | National Union Fire Insurance Co. (AIG) | 164 14 06 | 10/7/08 - 10/7/09 | $ 16,520 | $ 25,000 |
| Employed Lawyers | National Union Fire Insurance Co. (AIG) | 164 13 02 | 10/7/08 - 10/7/09 | $ 6,985 | $ - - - (non-indemnifiable claims)<br>$ 50,000 |

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium | Deductible |
|---|---|---|---|---|---|
| Special Risk | Federal Insurance Company (Chubb) | 6802334 | 10/7/07 - 10/7/10 | $ 6,398 | $ - - - |
| Employment Practices | St. Paul Mercury (Travelers) | EC 06300956 | 10/7/07 - 12/31/08 | $ 33,400 | $ 100,000<br>$ 250,000 (mass or class action) |
| Pollution Liability | American International | PLS1467647 | 9/1/05 - 9/1/10 | $ 27,147 | $ 50,000 |

## Exhibit B

## Bank Accounts

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Bank of America - Shanghai | 18th Floor, S. Tower, 528 Pudong Rd South Shanghai, China 200120 Attn: Nico Zhu | Shanghai Representitive Office (Lenox Worldwide, LLC) | 00010841015 |
| Canadian Bank of Commerce | 180 Laird Dr., Toronto, ON, M4G 3V7 Canada Attn: Malcolm Subit | Canadian Operating Account (Wholesale) | 5500613 |
| M & T Bank | 17301 Valley Mall Drive, Hagerstown, MD 21740 Attn: Kelly Stine | Petty Cash (Wholesale) | 2660005105 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lenox Collections - Cash Deposits (ZBA) | 2100010070766 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lenox Collections - Refunds (ZBA) | 2079950071053 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Accounts Payable (Corporate) | 2079950061542 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | OTC Deposits (Corporate) | 2000030727995 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lockbox (Corporate) | 2100012019411 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Concentration (Corporate) | 2000032079010 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Payroll (Corporate) | 2000001684180 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Master Disbursements (Corporate) | 2000028329648 |
| Wachovia Bank | 111 Westminster Street<br>Mail stop: RI1-102-16-01<br>Providence, RI 02903<br>Attn: Dan Butler, Senior VP | ACH/Wire Payments (Corporate) | 2000028330213 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Employee Credit Card Sales (Corporate) | 2000032078244 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Employee Funds (Kinston) | 2044740008287 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | OTC Deposits-Pomona (Wholesale) | 2000031708971 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | US Customs (Wholesale) | 2100011972009 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Payroll – New (Corporate) | 2079951060649 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Process Lenox Credit Card Cash and Misc Deposits such as NSF Checks (Retail) | 2000031735708 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Process Dansk DTC Transfers (Retail) | 2100012021069 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Process Store Deposits – Global (Retail) | 2000109855837 |
| National City Bank | 12010 Church St., Birch Run, MI 48415 Attn: Susan Williams | Process Store Deposits (Retail) | 967336751 |
| Capital One Bank (formerly North Fork Bank) | 140 E. Main St., Riverhead, NY 11901 Attn: Joanie Scomordella | Process Store Deposits (Retail) | 3724111517 |
| Sevier County Bank | 3260 Parkway, Pigeon Forge, TN 37863 Attn: Angela Mora | Process Store Deposits (Retail) | 27318628 |
| Northeast Georgia Bank | 30990 Hwy 441 South, Commerce, GA 30529 Attn: Dawn McCook | Process Store Deposits (Retail) | 8000032165 |
| National City Bank | 632 West Main Street, Mt. Pleasant, PA 15666 Attn: Bonnie Wisniewski | Process Store Deposits (Retail) | 658925237 |
| Queenstown Bank of Maryland | 223 Outlet Center Drive, Queenstown, MD 21658 Attn: Janet Such | Process Store Deposits (Retail) | 465196601 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| TD Banknorth (formerly Hudson United Bank) | 260 Route 32, Central Valley, NY 10917 Attn: Susan Timpone | Process Store Deposits (Retail) | 3980515531 |
| SunTrust Bank | 1850 US Highway 1 South, St. Augustine, FL 32084 Attn: Afsana Catron | Process Store Deposits (Retail) | 1000049142556 |
| National City Bank | 41325 West 10 Mile Rd., Novi, MI 48375 Attn: Rever Anderson | Process Store Deposits (Retail) | 982178886 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | AP controlled disbursement (with positive pay) (D56) | 152118013977 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository (D56) | 160233250275 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | All outgoing ACH and wires (D56) | 170225138859 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | CC deposits only (D56) | 170225142810 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Wholesale CC & ECP deposits (D56) | 104756690137 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | L/C funding account (D56) | 104756211348 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104756807418 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104774436497 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104756211355 |
| JP Morgan Chase (formerly Bank One, NA) | 1111 E. Wisconsin Ave., Milwaukee, WI 53201 Attn: Rena Glorioso | Showroom checking account (D56) | 640126702 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Showroom checking account (D56) | 129577849 |
| Fifth Third Bank | Merchandise Mart Plaza, Chicago, IL 60654 Attn: Denise Robinson | Showroom checking account (D56) | 7518739920 |
| Bank of America | 110 East 9th Street C-Lobby #1, Los Angeles, CA 90079 Attn: Rosa C. Valles | Showroom checking account (D56) | 03762-05448 |
| Bank of New York | 260 Madison Ave. (at 39th Street), New York, NY 10016 Attn: Beverly Harris | Showroom checking account (D56) | 630-0978736 |
| Frost National Bank | 102 North Denton Tap Road, Coppell, TX 75019 Attn: Beth Fontenot | Showroom checking account (D56) | 950003018 |
| National City Bank | 116 Allegheny Center, Pittsburgh, PA 15212-5356 Attn: Jim Carter | Showroom checking account (D56) | 658848964 |
| The Bank of Nova Scotia | 44 King Street West, Toronto, ON M5K 1H1 Canada Attn: George Constantinou | CAD lockbox, AP (D56) | 800020405914 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                           :
In re                                      :        Chapter 11 Case No.
                                           :
LENOX SALES, INC., et al.                  :        08-14679 (ALG)
                                           :
              Debtors.                     :        (Jointly Administered)
                                           :
-----------------------------------------------------------------x
```

## ORDER PURSUANT TO SECTIONS 105(a), 362(d), 363(b) AND 503(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 4001(d) AND 6004(a) (I) AUTHORIZING DEBTORS TO (A) CONTINUE THEIR WORKERS' COMPENSATION PROGRAM AND THEIR INSURANCE PROGRAMS AND (B) PAY ALL OBLIGATIONS IN RESPECT THEREOF AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS

Upon the motion, dated November 24, 2008 (the "Motion"), of Lenox Sales, Inc. and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"),[1] for an order, pursuant to sections 105(a), 362(d), 363(b), and 503(b) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 4001, 6003 and 6004 of the Federal Rules of Bankruptcy Procedure, (i) authorizing the Debtors to (a) continue their workers' compensation programs (the "Workers' Compensation Programs") and their liability, product, property, and other insurance programs, including, without limitation, all of the policies set forth on Exhibit A annexed hereto (together with the Workers' Compensation Programs, the "Insurance Programs"), (b) pay all prepetition obligations in respect thereof, on an uninterrupted basis, consistent with their practices in effect prior to the commencement of the Debtors' chapter 11 cases, including the payment of all premiums, claims,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Lenox Sales, Inc. (3270), Lenox Group Inc. (4956), Lenox, Incorporated (8476), D 56, Inc. (0891), FL 56 Intermediate Corp. (4955), Lenox Retail, Inc. (3269), and Lenox Worldwide, LLC (7980).

deductibles, administrative expenses, and all other charges incurred, whether relating to the period prior to or after the commencement of these chapter 11 cases (collectively, "Insurance Obligations"), and (c) modify the automatic stay solely and for the limited purpose of permitting employees with claims under the Workers' Compensation Program to proceed with their claims in accordance with such program in the appropriate judicial or administrative forum; and (ii) authorizing certain banks and financial institutions (the "Banks"), including, but not limited to, the Banks listed on Exhibit B annexed hereto, to honor and process checks and transfers related to such obligations, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee for the Southern District of New York (Attn: Susan D. Golden), (ii) Paul, Hastings, Janofsky & Walker LLP, 600 Peachtree Street, N.E., 24th Floor, Atlanta, Georgia 30308 (Attn: Jesse H. Austin, III, Esq.) and Park Avenue Tower, 75 East 55th Street, First Floor, New York, New York 10022 (Attn: Leslie A. Plaskon, Esq.), as counsel for UBS AG, Stamford Branch, the administrative agent for the Debtors' prepetition secured revolving loan lenders and as counsel for the Debtors' proposed postpetition lenders, (iii) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022 (Attn: Adam C. Harris, Esq.) as counsel for The Bank of New York Mellon, the administrative and collateral agent for the Debtors' prepetition secured term loan lenders, (iv) the Debtors' 30 largest unsecured creditors (on a consolidated basis), and

(v) the Pension Benefit Guaranty Corporation, Distress Terminations, Dept. of Insurance

Supervision & Compliance, Suite 270, 1200 K Street NW, Washington, DC 20005-4026 (Attn:

Sarah Eagle, Esq.), and it appearing that no other or further notice need be provided; and the

Court having determined that the relief requested in the Motion being in the best interests of the

Debtors, their creditors, and all parties in interest; and the Court having determined that the legal

and factual bases set forth in the Motion establish just cause for the relief granted herein; and

upon all of the proceedings had before the Court and after due deliberation and sufficient cause

appearing therefor, it is hereby

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors are authorized and empowered to maintain their

Insurance Programs without interruption, on the same basis, and in accordance with the same

practices and procedures that were in effect prior to the commencement of the Debtors' chapter

11 cases; and it is further

ORDERED that the Debtors are authorized, but not required, to pay, in their sole

discretion, all Insurance Obligations that are or become payable, including, without limitation, all

premiums, claims, deductibles, excess, retrospective adjustments, administrative and brokers'

fees, and all other obligations arising under the Insurance Programs, including those Insurance

Obligations that (i) were due and payable or related to the period prior to the commencement of

these chapter 11 cases, without further order of the Court, and (ii) are or become due and payable

or related to the period after the commencement of these chapter 11 cases; and it is further

ORDERED that, pursuant to section 362(d) of the Bankruptcy Code, to the extent

any of the Debtors' employees hold claims under the Debtors' Workers' Compensation Program,

these employees are authorized, at the Debtors' discretion, to proceed with their workers'

compensation claims through and including the collection of any judgment in the appropriate judicial or administrative forum under the Workers' Compensation Program; provided, that the prosecution of such claims is in accordance with the Workers' Compensation Program and the recoveries are limited to the proceeds available under the Workers' Compensation Program; and it is further

ORDERED that the Banks, including, but not limited to those on the list annexed hereto as Exhibit B, are authorized to honor, process, and pay, to the extent of funds on deposit, any and all prepetition checks or electronic fund transfer requests issued by the Debtors in respect of any Insurance Obligation, whether pre- or post-petition; and it is further

ORDERED that any Bank, including, but not limited to, those on the list annexed hereto as Exhibit B, may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Commencement Date should be honored pursuant to this Order, and such Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein; and it is further

ORDERED that nothing in this Order or the Motion shall be construed as prejudicing the rights of the Debtors to dispute or contest the amount of or basis for any claims against the Debtors in connection with or relating to the Debtors' Insurance Programs; and it is further

ORDERED that, to the extent that any Insurance Program or any related contract or agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, neither this Order nor any payments made in accordance with this Order shall constitute the postpetition assumption of any such Insurance Program, contract, or related agreement pursuant to section 365 of the Bankruptcy Code; and it is further

ORDERED that Bankruptcy Rule 6003(b) has been satisfied; and it is further

ORDERED that notwithstanding any applicability of Rules 6004(h), 7062, or 9014 of the Bankruptcy Rules, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that notice of the Motion as provided herein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rules 4001(d) and 6004(a) are waived; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: November ___, 2008
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

## Insurance Programs

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium | Deductible |
|---|---|---|---|---|---|
| Workers' Compensation | Liberty Insurance Corp. | WA7-64D-435745-058 WC7-641-435745-068 | 1/1/08 – 12/31/08 | $ 339,041 | $ 250,000 |
| General Liability | Liberty Mutual | TB2-641-435745-078 | 1/1/08 - 12/31/08 | $ 168,360 | $ 100,000 |
| Automobile | Liberty Mutual | AS2-641-435745-088 | 1/1/08 - 12/31/08 | $ 22,136 | $ 500 |
| Property | Affiliated FM | EI294 | 1/1/08 - 12/31/08 | $ 288,273 | $ 100,000 |
| Cargo / Transportation | Travelers | OC 01800089 | 1/1/08 - 12/31/08 | $ 120,828 | $ 10,000 |
| Umbrella | Chubb Insurance Company / Crum & Forster | 79733346 / 5500120947 | 1/1/08 - 12/31/08 | $ 136,523 | - - - |
| Internet Liability | American International Specialty | 007076208 | 1/1/08 - 12/31/08 | $ 62,939 | $ 250,000 |
| Media / Advertising | National Casualty Company | LS 041211 | 12/31/07 - 12/31/08 | $ 17,558 | $ 25,000 |
| International Package | Chubb Insurance Company | 35384218 | 1/1/08 - 12/31/08 | $ 11,627 | - - - |
| D&O Liability | Great American / Ironshore / XL Specialty / XL Specialty | DOL 5592541 / IRH 008980702001 / ELU 100628-07 / ELU 100631-07 | 10/7/08 - 10/7/09 | $ 397,650 | $ - - - (non-indemnifiable claims) $ 250,000 (indemnifiable / securities) |
| Fiduciary | Federal Insurance Company (Chubb) | 81377385 | 10/7/08 - 10/7/09 | $ 19,193 | $ - - - (voluntary settlement) $ 100,000 (fiduciary settlement) |
| Commercial Crime | National Union Fire Insurance Co. (AIG) | 164 14 06 | 10/7/08 - 10/7/09 | $ 16,520 | $ 25,000 |
| Employed Lawyers | National Union Fire Insurance Co. (AIG) | 164 13 02 | 10/7/08 - 10/7/09 | $ 6,985 | $ - - - (non-indemnifiable claims) $ 50,000 |

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium | Deductible |
|---|---|---|---|---|---|
| Special Risk | Federal Insurance Company (Chubb) | 6802334 | 10/7/07 - 10/7/10 | $ 6,398 | $ - - - |
| Employment Practices | St. Paul Mercury (Travelers) | EC 06300956 | 10/7/07 - 12/31/08 | $ 33,400 | $ 100,000 <br> $ 250,000 (mass or class action) |
| Pollution Liability | American International | PLS1467647 | 9/1/05 - 9/1/10 | $ 27,147 | $ 50,000 |

NY2:\1930395\15\15D$315!.DOC\58519.0003

# Exhibit B

## Bank Accounts

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Bank of America - Shanghai | 18th Floor, S. Tower, 528 Pudong Rd South Shanghai, China 200120 Attn: Nico Zhu | Shanghai Representitive Office (Lenox Worldwide, LLC) | 00010841015 |
| Canadian Bank of Commerce | 180 Laird Dr., Toronto, ON, M4G 3V7 Canada Attn: Malcolm Subit | Canadian Operating Account (Wholesale) | 5500613 |
| M & T Bank | 17301 Valley Mall Drive, Hagerstown, MD 21740 Attn: Kelly Stine | Petty Cash (Wholesale) | 2660005105 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lenox Collections - Cash Deposits (ZBA) | 2100010070766 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lenox Collections - Refunds (ZBA) | 2079950071053 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Accounts Payable (Corporate) | 2079950061542 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | OTC Deposits (Corporate) | 2000030727995 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lockbox (Corporate) | 2100012019411 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Concentration (Corporate) | 2000032079010 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Payroll (Corporate) | 2000001684180 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Master Disbursements (Corporate) | 2000028329648 |
| Wachovia Bank | 111 Westminster Street<br>Mail stop: RI1-102-16-01<br>Providence, RI 02903<br>Attn: Dan Butler, Senior VP | ACH/Wire Payments (Corporate) | 2000028330213 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Employee Credit Card Sales (Corporate) | 2000032078244 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Employee Funds (Kinston) | 2044740008287 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | OTC Deposits-Pomona (Wholesale) | 2000031708971 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | US Customs (Wholesale) | 2100011972009 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Payroll – New (Corporate) | 2079951060649 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Process Lenox Credit Card Cash and Misc Deposits such as NSF Checks (Retail) | 2000031735708 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Process Dansk DTC Transfers (Retail) | 2100012021069 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Process Store Deposits – Global (Retail) | 2000109855837 |
| National City Bank | 12010 Church St.,<br>Birch Run, MI 48415<br>Attn: Susan Williams | Process Store Deposits (Retail) | 967336751 |
| Capital One Bank (formerly North Fork Bank) | 140 E. Main St.,<br>Riverhead, NY 11901<br>Attn: Joanie Scomordella | Process Store Deposits (Retail) | 3724111517 |
| Sevier County Bank | 3260 Parkway,<br>Pigeon Forge, TN 37863<br>Attn: Angela Mora | Process Store Deposits (Retail) | 27318628 |
| Northeast Georgia Bank | 30990 Hwy 441 South,<br>Commerce, GA 30529<br>Attn: Dawn McCook | Process Store Deposits (Retail) | 8000032165 |
| National City Bank | 632 West Main Street,<br>Mt. Pleasant, PA 15666<br>Attn: Bonnie Wisniewski | Process Store Deposits (Retail) | 658925237 |
| Queenstown Bank of Maryland | 223 Outlet Center Drive,<br>Queenstown, MD 21658<br>Attn: Janet Such | Process Store Deposits (Retail) | 465196601 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| TD Banknorth (formerly Hudson United Bank) | 260 Route 32, Central Valley, NY 10917 Attn: Susan Timpone | Process Store Deposits (Retail) | 3980515531 |
| SunTrust Bank | 1850 US Highway 1 South, St. Augustine, FL 32084 Attn: Afsana Catron | Process Store Deposits (Retail) | 1000049142556 |
| National City Bank | 41325 West 10 Mile Rd., Novi, MI 48375 Attn: Rever Anderson | Process Store Deposits (Retail) | 982178886 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | AP controlled disbursement (with positive pay) (D56) | 152118013977 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository (D56) | 160233250275 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | All outgoing ACH and wires (D56) | 170225138859 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | CC deposits only (D56) | 170225142810 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Wholesale CC & ECP deposits (D56) | 104756690137 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | L/C funding account (D56) | 104756211348 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104756807418 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104774436497 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104756211355 |
| JP Morgan Chase (formerly Bank One, NA) | 1111 E. Wisconsin Ave., Milwaukee, WI 53201 Attn: Rena Glorioso | Showroom checking account (D56) | 640126702 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Showroom checking account (D56) | 129577849 |
| Fifth Third Bank | Merchandise Mart Plaza, Chicago, IL 60654 Attn: Denise Robinson | Showroom checking account (D56) | 7518739920 |
| Bank of America | 110 East 9th Street C-Lobby #1, Los Angeles, CA 90079 Attn: Rosa C. Valles | Showroom checking account (D56) | 03762-05448 |
| Bank of New York | 260 Madison Ave. (at 39th Street), New York, NY 10016 Attn: Beverly Harris | Showroom checking account (D56) | 630-0978736 |
| Frost National Bank | 102 North Denton Tap Road, Coppell, TX 75019 Attn: Beth Fontenot | Showroom checking account (D56) | 950003018 |
| National City Bank | 116 Allegheny Center, Pittsburgh, PA 15212-5356 Attn: Jim Carter | Showroom checking account (D56) | 658848964 |
| The Bank of Nova Scotia | 44 King Street West, Toronto, ON M5K 1H1 Canada Attn: George Constantinou | CAD lockbox, AP (D56) | 800020405914 |

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller, Esq.
        - and -
700 Louisiana Street, Suite 1600
Houston, Texas 77002-2784
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez, Esq.

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                       :
In re                                  :      Chapter 11 Case No.
                                       :
LENOX SALES, INC., et al.              :      08-14679 (ALG)
                                       :
              Debtors.                 :      (Jointly Administered)
                                       :
-------------------------------------------------------------x
```

**MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(a), 362(d), 363(b)
AND 503(b) OF THE BANKRUPTCY CODE (I) AUTHORIZING THE DEBTORS
TO (A) CONTINUE THEIR WORKERS' COMPENSATION PROGRAM AND
THEIR INSURANCE PROGRAMS AND (B) PAY ALL OBLIGATIONS IN RESPECT
THEREOF AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR
AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Lenox Sales, Inc. and its affiliated debtors in the above-referenced chapter 11

cases, as debtors and debtors in possession (collectively, the "Debtors"),[1] respectfully represent:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are
Lenox Sales, Inc. (3270), Lenox Group Inc. (4956), Lenox, Incorporated (8476), D 56, Inc. (0891), FL 56
Intermediate Corp. (4955), Lenox Retail, Inc. (3269), and Lenox Worldwide, LLC (7980).

# BACKGROUND

## General

1.      On the date hereof (the "<u>Commencement Date</u>"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Further, a motion pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") for joint administration of the Debtors' chapter 11 cases is pending before this Court.

## The Debtors' Businesses

2.      The Debtors are leading designers, marketers, distributors, wholesalers, and retailers of quality tableware, collectibles, and giftware products under the Lenox®, Dansk®, Gorham®, and Department 56® brand names.  The Debtors conduct their businesses through two main operating entities, Lenox, Incorporated ("<u>Lenox, Inc.</u>") (together with its wholly owned subsidiaries Lenox Sales, Inc. and Lenox Retail, Inc.) and D 56, Inc. ("<u>D 56</u>").

3.      Lenox, Inc. is primarily responsible for the product development and marketing of fine and casual tabletop products, including dinnerware, stemware, serveware, and stainless steel flatware, as well as ceramic, crystal and metal ornaments, jewelry, figurines, and home décor.  These products are offered under the Lenox, Dansk, and Gorham brands as well as various other licensed brands.  The Lenox brand of fine dinnerware is the most widely recognized of its kind in the U.S. market, and has been chosen as the White House china for United States Presidents for nearly a century.

4.      D 56 is a leader in the gift, collectible, and holiday decorating industry, providing the Village Series of nostalgic collectible lighted ceramic buildings and related accessories, the Snowbabies line of figurines, other lines of collectables, and giftware

5.      The Debtors sell their products through three principal marketing and sales channels: wholesale, retail, and consumer direct.  The Debtors' wholesale channel includes department stores, large specialty retailers, general merchandise chains, national chains and clubs, small independent specialty retailers, and other wholesale accounts.  The Debtors' retail sales channel includes 30 retail stores operated in 14 states.  Finally, the Debtors utilize various methods of consumer direct marketing, which is overseen by Lenox, Inc., to sell their products, including (a) traditional direct-to-consumer methods, such as media advertising, direct mail, and telemarketing, (b) catalogs, and (c) the Debtors' various Internet sites, www.lenox.com, www.dansk.com, and www.department56.com.

6.      The Debtors own or lease office, manufacturing, warehouse, and distribution facilities across the country and maintain two overseas offices for product sourcing functions in China.  In addition, the Debtors lease a number of retail stores and nine D 56 and Lenox showrooms within the United States, including two in New York City.  The Debtors' flagship New York City Lenox showroom is located on Madison Avenue near other Tabletop and Gift Brands' trade showrooms.  The Debtors currently employ approximately 1,800 employees.

7.      As of October 25, 2008, the Debtors' unaudited consolidated financial statements reflected assets totaling approximately $264 million and liabilities totaling approximately $238 million.

## JURISDICTION

8.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

9.      In connection with the operation of their businesses, the Debtors maintain a workers' compensation program and various general liability, property, and other insurance programs and policies (collectively, the "Insurance Programs") through several different insurance carriers (the "Insurance Carriers").  Annexed hereto as Exhibit A is a list of each of the Insurance Programs, disclosing with respect to each Insurance Program, as applicable: the Insurance Carrier, the type of coverage, the coverage period, and the aggregate annual premium due thereunder.[2]

10.     By this Motion, the Debtors request authority, pursuant to sections 105(a), 362(d), 363(b), and 503(b) of the Bankruptcy Code and Bankruptcy Rules 4001, 6003 and 6004 to (i) continue their Insurance Programs on an uninterrupted basis, (ii) honor, in the Debtors' discretion, their undisputed prepetition obligations thereunder (the "Insurance Obligations"), and (iii) modify the automatic stay solely and for the limited purpose of permitting employees with claims under the Workers' Compensation Program to proceed with their claims in accordance with such program in the appropriate judicial or administrative forum.

11.     As part of their cash management system, the Debtors maintain bank accounts at certain banks and financial institutions (the "Banks"), including, but not limited to,

---

[2] In addition to the Insurance Programs listed on Exhibit A, the Debtors maintain numerous other insurance policies and programs with respect to employee benefits, such as health, dental, disability, and life insurance.  These programs and policies are addressed in a separate motion pertaining to the Debtors' employee wage policies and benefit programs and filed contemporaneously herewith.

the Banks listed on Exhibit B annexed hereto and any other bank that is approved as part of the Debtors' cash management system. The Debtors draw upon funds in their accounts to satisfy their obligations arising from the Insurance Programs. In addition to the relief requested above, the Debtors request that the Court authorize the Banks to receive, honor, process, and pay any and all checks drawn, or electronic fund transfers requested or to be requested on the Debtors' Banks, to the extent that such checks or electronic fund transfers relate to any of the foregoing.

## BASIS FOR RELIEF REQUESTED

### The Debtors' Insurance Programs and Other Obligations

#### A.    The Workers' Compensation Program

12.    Under the laws of the various states in which they operate, the Debtors are required to maintain workers' compensation policies and programs to provide their employees with workers' compensation benefits for claims arising from or related to their employment with the Debtors. The Debtors maintain workers' compensation coverage through a program (the "Workers' Compensation Program") provided by Liberty Insurance Corporation ("Liberty"). The Workers' Compensation Program covers the Debtors' statutory obligations to maintain workers' compensation programs in each of the jurisdictions in which the Debtors operate (but excluding a monopolistic jurisdiction).[3]

13.    Under the Workers' Compensation Program, the Debtors pay an annual premium to Liberty that is calculated based upon the Debtors' projected payroll and historic loss rates. The annual premium is paid at the inception of the policy period. The Debtors are responsible for paying a deductible under the Workers' Compensation Program of $250,000 on a per claim occurrence. Under the Workers' Compensation Program, insurance coverage is

---

[3] "Monopolistic jurisdictions" require the Debtors to provide workers' compensation coverage through specific state-run insurance pools. The monopolistic jurisdiction in which the Debtors operate is the state of Ohio.

provided by Liberty for workers' compensation claims subject to policy limits, with a per incident deductible of $250,000. The Debtors utilize the services of Wells Fargo Insurance Services ("WFIS") to administer the program. WFIS processes and pays all approved claims and also pays amounts billed directly by doctors and medical facilities. The Debtors are obligated to pay the program premium and reimburse WFIS up to $250,000 per approved claim for the loss payments WFIS makes in respect of coverage deductibles in accordance with the terms of the Workers' Compensation Program. For the period from January 1, 2008 through and including January 1, 2009, the total premium for the Workers' Compensation Program totaled $339,041. As of the Commencement Date, the Debtors have no amounts outstanding to Liberty. The Debtors have provided a Letter of Credit totaling $3,720,000 for the benefit of Liberty as collateral for the Debtors' obligation to reimburse Liberty under policies, including the Workers' Compensation Program.

14. The Debtors have maintained this policy with the Liberty since the acquisition of Lenox, Incorporated by D 56 from Brown Forman Corporation in September 2005. Prior to this period, Lenox, Incorporated maintained a policy with Liberty, and D 56 maintained a policy with Vigilant Insurance Company, a subsidiary of the Chubb Group of Insurance Companies. While these policies have been replaced with the Workers' Compensation Program through Liberty for current employees, the Debtors are responsible for claims that accrued under the legacy policies before September 2005. Currently, there are $475,000 of open claims under the legacy policies, in addition to $846,000 of open claims under the current Workers' Compensation Program. By this motion, the Debtors seek authority to pay all open claims for which they are determined to be liable, including claims arising under the legacy

policies and the current Workers' Compensation Program.[4]  The Debtors have provided a Letter

of Credit totaling $1,150,000 for the benefit of Liberty as collateral for the Debtors' obligation to

reimburse Liberty under the legacy Workers' Compensation policy.  Additionally the Debtors

have provided a Letter of Credit totaling $200,000 for the benefit of Vigilant as collateral for the

Debtors' obligation to reimburse Vigilant under the legacy Workers' Compensation policy.

Finally, the Debtors also have been required to provide additional collateral in the form of cash

deposits to both Liberty and Vigilant totaling $185,000 and $60,000 respectively.

**B.**     **Liability and Property Insurance Programs**

15.     The Debtors maintain various liability and property-related insurance

Programs, which provide the Debtors with insurance coverage for liabilities relating to, among

other things, general liability, primary property liability, automobile liability, cargo liability,

employment practices liability, directors and officers liability, crime liability, special risk, and

umbrella or excess liability insurance (collectively, the "Liability and Property Insurance

Programs").  Continuation of these policies is essential to the ongoing operation of the Debtors'

businesses.

16.     The Debtors are required to pay premiums under the Liability and

Property Insurance Programs based upon fixed rates established by the applicable Insurance

Carrier.  For example, the Debtors' primary property insurance coverage is provided by

Affiliated FM, requiring an annual premium of $288,273, while their general liability insurance

coverage is provided by Liberty Mutual, requiring an annual premium of $168,360.  These

policies have a term which began on January 1, 2008 and runs through January 1, 2009.   The

Debtors pay certain of these premiums in cash, either directly to the Insurance Carriers or to their

---

[4] As the legacy policies have expired, there are no premium obligations associated therewith.

insurance broker, while a number of the premiums under the Debtors' Liability and Property Insurance Programs are financed by a third party financing company.

17.     Specifically, six of the Debtors' policies with respect to the Liability and Property Insurance Programs are financed by Imperial A.I. Credit Companies ("AICCO") pursuant to a finance agreement with AICCO (the "AICCO Agreement").[5] Under the AICCO Agreement, AICCO pays the premiums for each respective policy at the policy's inception (a total of $637,748). The Debtors reimbursed AICCO with an initial payment of $127,551 and thereafter paid nine monthly installments to AICCO of $58,060.  As of the Commencement Date, the Debtors have no known amounts outstanding to AICCO.

18.     The aggregate annual premium for the Liability and Property Insurance Programs is approximately $1,340,000.  As of the Commencement Date, the Debtors have fully paid all obligations in connection with policy premiums for the existing Liability and Property Insurance Programs.  In addition, the Debtors are required to pay various deductibles for claims asserted under the respective policies.  The amounts of the applicable deductibles are set forth in Exhibit A hereto.  As of the Commencement Date, the Debtor is unable to accurately estimate the aggregate outstanding amount with respect to deductibles under the Liability and Property Insurance Programs since, in the normal course of operating its business, many claims made fail to assert specific dollar damages and are ultimately resolved for nominal amounts.  Deductibles for claims relating to the period prior to the Commencement Date may continue to arise in the ordinary course of business.  Accordingly, the Debtors are seeking the Court's authorization to pay such undisputed claims, in their discretion, as they come due.

---

[5] The financed policies include property liability, cargo & transportation liability, umbrella liability, internet liability, media/advertising liability, and international package liability.

**Insurance Broker**

19.     The Debtors employ an insurance broker, Wells Fargo Insurance Services (the "Insurance Broker"), to assist them with the procurement and negotiation of their Insurance Programs and the processing of claims.  In certain circumstances, the Insurance Broker remits payment to the Insurance Carriers on behalf of the Debtors.  The Insurance Broker is paid a commission by the Insurance Carriers, not by the Debtors.  Accordingly, the Debtors believe there are no amounts accrued and outstanding with respect to the Insurance Broker.

**Debtors Request Authority to (i) Continue the
Insurance Programs and (ii) Pay All Obligations in Respect Thereof**

20.     Pursuant to sections 105(a), 362(d), 363(b), and 503(b) of the Bankruptcy Code and Bankruptcy Rules 4001 and 6004, the Debtors seek authority to continue, in their sole discretion, the Insurance Programs on an uninterrupted basis in accordance with the same practices and procedures as were in effect prior to the Commencement Date.  Furthermore, the Debtors seek authority to pay, in their sole discretion, all undisputed premiums, deductibles, administrative fees, and other obligations arising under the Insurance Programs, as applicable, that were or are due and payable, or related to the period before or after, the Commencement Date.

21.     Pursuant to section 503(b)(1) of the Bankruptcy Code, a debtor may incur, and the court, after notice and a hearing, shall allow as administrative expenses, among other things, "the actual, necessary costs and expenses of preserving the estate."  11 U.S.C. § 503(b)(1).  In addition, pursuant to section 363(b) of the Bankruptcy Code, a debtor may, in the exercise of its sound business judgment and after notice and a hearing, use property of the estate outside of the ordinary course of business.  § 363(b).  The Debtors submit that the use of estate

funds for payment of the Insurance Obligations is permitted by sections 503(b)(1) and 363(b) of the Bankruptcy Code as necessary costs of preserving the estate.

22.     Furthermore, to supplement these explicit powers, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). "Under 11 U.S.C. § 105 the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing Ionosphere Clubs, 98 B.R. at 177).

23.     In a long line of well-established cases, federal courts consistently have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. See, e.g., Miltenberger v. Logansport C. & S.W. Ry. Co., 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); Dudley v. Mealey, 147 F.2d 268 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases); Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.), 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

24.     The "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. See In re Lehigh &

New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize the payment of pre-petition claims if such payment was essential to the continued operation of the debtor); In re Boston & Me. Corp., 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation).  The doctrine is frequently invoked early in a chapter 11 case, particularly in connection with the payment of prepetition claims.  The rationale for the doctrine of necessity rule is consistent with the paramount goal of chapter 11: "facilitating the continued operation and rehabilitation of the debtor."  Ionosphere Clubs, 98 B.R. at 176.  Accordingly, pursuant to section 105(a) of the Bankruptcy Code, this Court is empowered to grant the relief requested herein.

25.    Moreover, numerous courts in this jurisdiction have granted similar relief in other chapter 11 cases.  See, e.g., In re Steve & Barry's Manhattan LLC, et al., Case No. 08-12579 (ALG) (Bankr. S.D.N.Y. Jul. 30, 2008), (Bankr. S.D.N.Y. Jul. 11, 2008); In re Lexington Precision, et al., Case No. 08-11153 (MG) (Bankr. S.D.N.Y. Apr. 22, 2008); In re Fortunoff Fine Jewelry and Silverware, LLC, Case No. 08-10353 (JMP) (Bankr. S.D.N.Y. Feb. 29, 2008), (Bankr. S.D.N.Y. Feb. 5, 2008); In re PRC, LLC, Case No. 08-10239 (MG) (Bankr. S.D.N.Y. Jan. 25, 2008); Silicon Graphics, Inc., et al., Case No. 06-10977 (BRL)  (Bankr. S.D.N.Y May 31, 2006), (Bankr. S.D.N.Y May 10, 2006); In re Atkins Nutritionals, Inc., et al., Case No. 05-15913 (ALG) (Bankr. S.D.N.Y. Aug. 1, 2005).

**Continuing the Insurance Programs and Paying All Obligations in**
**Respect Thereof Is Necessary to Preserve the Value of the Debtors' Estates**

26.    The nature of the Debtors' businesses and the extent of their operations make it essential for the Debtors to maintain their Insurance Programs on an uninterrupted basis. The nonpayment of any premiums, deductibles, or related fees under one of the Insurance

Programs could result in one or more of the Insurance Carriers declining to renew the Debtors' insurance policies or refusing to enter into new insurance agreements with the Debtors in the future. If the Insurance Programs lapse without renewal, the Debtors could be exposed to substantial liability for personal and/or property damages to the detriment of all parties in interest. Furthermore, the Debtors would then be required to obtain replacement policies on an expedited basis at a significant cost to the estates.

27. Moreover, the Insurance Programs are vital to all aspects of the Debtors' operations. Applicable state law mandates that the Debtors maintain workers' compensation coverage for their employees. Failure by the Debtors to pay the premiums associated with their Workers' Compensation Programs would jeopardize their coverage and expose the Debtors to substantial liability in fines by various state workers' compensation boards.

28. In addition, the risk that eligible workers' compensation claimants will not receive timely payment for prepetition employment-related injuries could have a devastating effect on the financial well-being and morale of the Debtors' current employees. Departures by employees at this critical time may result in a severe disruption of the Debtors' businesses with a substantially adverse impact on the Debtors, the value of their assets and their businesses. The retention of the Debtors' qualified and dedicated senior management also is linked to the continued effectiveness of the directors' and officers' liability insurance policies.

29. Finally, pursuant to the guidelines established by the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), the Debtors are obligated to remain current with respect to their primary Insurance Programs. Therefore, the continuation of the Insurance Programs, on an uninterrupted basis, and the payment of all undisputed prepetition and postpetition Insurance Obligations arising under the Insurance

Programs, are essential to the preservation of the Debtors' businesses and the value of the Debtors' estates for all creditors. Accordingly, the Debtors are seeking the Court's authorization to continue the Insurance Programs and related policies as such practices, programs, and policies were in effect as of the Commencement Date and authorize, but not direct, the Debtors to pay any undisputed prepetition claims arising under the Insurance Program as they come due.

30. To the extent any Insurance Program or related agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtors do not, at this time, seek to assume any such contract. Accordingly, if the Court authorizes the payments described above, such payments should not be deemed to constitute a postpetition assumption or adoption of the programs, policies, or agreements as executory contracts pursuant to section 365 of the Bankruptcy Code. The Debtors are in the process of reviewing these matters and reserve all of their rights under the Bankruptcy Code with respect thereto. Moreover, authorization to pay all amounts on account of the Insurance Obligations shall not affect the Debtors' right to contest the amount or validity of these obligations.

### The Automatic Stay Should Be Waived for Workers' Compensation Claims

31. Section 362(a) of the Bankruptcy Code, commonly known as the "automatic stay," operates to stay

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1). Section 362, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." § 362(d)(1).

32.     To the extent the Debtors' employees hold valid workers' compensation claims, the Debtors seek authorization under section 362(d) of the Bankruptcy Code to permit these employees to proceed with their claims in the appropriate judicial or administrative forum. The Debtors believe cause exists to modify the automatic stay because prohibiting the Debtors' employees from proceeding with their claims could have a detrimental effect on the financial well-being and morale of such employees and lead to their departure.  As discussed above, such departures could cause a severe disruption in the Debtors' businesses to the detriment of all parties in interest.

33.     To this end, and solely with respect to workers' compensation claims covered under the Workers' Compensation Programs, the Debtors seek to modify the automatic stay as it relates to workers' compensation claims; provided, however, that such claims are pursued in accordance with the Workers' Compensation Program and recoveries, if any, are limited to the proceeds from the applicable Workers' Compensation Program.  All other claims, including any claims relating to matters covered by other Insurance Programs, will remain subject to the automatic stay.  To effectuate the aforementioned modification of the automatic stay, the Debtors request that the Court waive the stay of a judgment under Bankruptcy Rule 7062 and the requirements under Bankruptcy Rule 9014 relating to contested matters with respect to claims under the Workers' Compensation Programs.

34.     Pursuant to this Motion, the Debtors do not seek a waiver, termination, or modification of the automatic stay with respect to any other claims or matters.

## Applicable Banks Should Be Authorized to Honor and
## Pay Checks Issued and Make Other Transfers to Pay Insurance Obligations

35.     As a result of the commencement of the Debtors' chapter 11 cases, and in the absence of an order of the Court providing otherwise, the Banks may dishonor or reject

Debtors' checks and electronic fund transfers with respect to the Insurance Obligations.
Therefore, the Debtors request that the Court authorize the Banks listed on Exhibit B annexed hereto to, and any other bank the Debtors are authorized to do business with under the Cash Management Motion[6] to process, honor, and pay all prepetition and postpetition checks issued or to be issued, and electronic fund transfers requested or to be requested, by the Debtors with respect to their Insurance Obligations. The Debtors also seek authority to issue new postpetition checks or effect new electronic fund transfers with respect to the Insurance Obligations to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected.

36.     The Debtors represent that each of these checks or transfers is or will be drawn on accounts authorized by the Court under the Cash Management Motion, and can be readily identified as relating directly to payments under the Insurance Programs. Accordingly, the Debtors believe that prepetition checks and transfers other than those relating to the Insurance Programs will not be honored inadvertently.

37.     Furthermore, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the stay of the order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**NOTICE**

38.     No trustee, examiner, or statutory creditors' committee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion on (i) the Office of the

---

[6] Contemporaneously herewith the Debtors filed the Motion for an Order Pursuant to Sections 105(a), 345(b), 363(b), 363(c) and 364(a) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004 (A) Authorizing the Debtors to (i) Continue Using Existing Centralized Cash Management System, (ii) Honor Certain Prepetition Obligations Related to the Use of the Cash Management System, and (iii) Maintain Existing Bank Accounts and Business Forms; and (B) Extending the Time to Comply With Section 345(b) of the Bankruptcy Code (the "Cash Management Motion").

United States Trustee for the Southern District of New York (Attn: Susan D. Golden), (ii) Paul, Hastings, Janofsky & Walker LLP, 600 Peachtree Street, N.E., 24th Floor, Atlanta, Georgia 30308 (Attn: Jesse H. Austin, III, Esq.) and Park Avenue Tower, 75 East 55th Street, First Floor, New York, New York 10022 (Attn: Leslie A. Plaskon, Esq.), as counsel for UBS AG, Stamford Branch, the administrative agent for the Debtors' prepetition secured revolving loan lenders and as counsel for the Debtors' proposed postpetition lenders, (iii) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022 (Attn: Adam C. Harris, Esq.) as counsel for The Bank of New York Mellon, the administrative and collateral agent for the Debtors' prepetition secured term loan lenders, (iv) the Debtors' 30 largest unsecured creditors (on a consolidated basis), and (v) the Pension Benefit Guaranty Corporation, Distress Terminations, Dept. of Insurance Supervision & Compliance, Suite 270, 1200 K Street NW, Washington, DC 20005-4026 (Attn: Sarah Eagle, Esq.). In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided.

39.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just and appropriate.

Dated: November 24, 2008
New York, New York

Respectfully submitted,

By: /s/ Alfredo R. Pérez
Alfredo R. Pérez

Harvey R. Miller, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
- and -
Alfredo R. Pérez, Esq.
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002-2784
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511

Attorneys for Debtors and Debtors in Possession

# Exhibit A

## Insurance Programs

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium | Deductible |
|---|---|---|---|---|---|
| Workers' Compensation | Liberty Insurance Corp. | WA7-64D-435745-058 WC7-641-435745-068 | 1/1/08 – 12/31/08 | $ 339,041 | $ 250,000 |
| General Liability | Liberty Mutual | TB2-641-435745-078 | 1/1/08 - 12/31/08 | $ 168,360 | $ 100,000 |
| Automobile | Liberty Mutual | AS2-641-435745-088 | 1/1/08 - 12/31/08 | $ 22,136 | $ 500 |
| Property | Affiliated FM | EI294 | 1/1/08 - 12/31/08 | $ 288,273 | $ 100,000 |
| Cargo / Transportation | Travelers | OC 01800089 | 1/1/08 - 12/31/08 | $ 120,828 | $ 10,000 |
| Umbrella | Chubb Insurance Company / Crum & Forster | 79733346 / 5500120947 | 1/1/08 - 12/31/08 | $ 136,523 | - - - |
| Internet Liability | American International Specialty | 007076208 | 1/1/08 - 12/31/08 | $ 62,939 | $ 250,000 |
| Media / Advertising | National Casualty Company | LS 041211 | 12/31/07 - 12/31/08 | $ 17,558 | $ 25,000 |
| International Package | Chubb Insurance Company | 35384218 | 1/1/08 - 12/31/08 | $ 11,627 | - - - |
| D&O Liability | Great American / Ironshore / XL Specialty / XL Specialty | DOL 5592541 / IRH 008980702001 / ELU 100628-07 / ELU 100631-07 | 10/7/08 - 10/7/09 | $ 397,650 | $ - - - (non-indemnifiable claims) $ 250,000 (indemnifiable / securities) |
| Fiduciary | Federal Insurance Company (Chubb) | 81377385 | 10/7/08 - 10/7/09 | $ 19,193 | $ - - - (voluntary settlement) $ 100,000 (fiduciary settlement) |
| Commercial Crime | National Union Fire Insurance Co. (AIG) | 164 14 06 | 10/7/08 - 10/7/09 | $ 16,520 | $ 25,000 |
| Employed Lawyers | National Union Fire Insurance Co. (AIG) | 164 13 02 | 10/7/08 - 10/7/09 | $ 6,985 | $ - - - (non-indemnifiable claims) $ 50,000 |

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium | Deductible |
|---|---|---|---|---|---|
| Special Risk | Federal Insurance Company (Chubb) | 6802334 | 10/7/07 - 10/7/10 | $ 6,398 | $ - - - |
| Employment Practices | St. Paul Mercury (Travelers) | EC 06300956 | 10/7/07 - 12/31/08 | $ 33,400 | $ 100,000 $ 250,000 (mass or class action) |
| Pollution Liability | American International | PLS1467647 | 9/1/05 - 9/1/10 | $ 27,147 | $ 50,000 |

NY2:\1930395\15\15D$315!.DOC\58519.0003

# Exhibit B

## Bank Accounts

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Bank of America - Shanghai | 18th Floor, S. Tower, 528 Pudong Rd South Shanghai, China 200120 Attn: Nico Zhu | Shanghai Representitive Office (Lenox Worldwide, LLC) | 00010841015 |
| Canadian Bank of Commerce | 180 Laird Dr., Toronto, ON, M4G 3V7 Canada Attn: Malcolm Subit | Canadian Operating Account (Wholesale) | 5500613 |
| M & T Bank | 17301 Valley Mall Drive, Hagerstown, MD 21740 Attn: Kelly Stine | Petty Cash (Wholesale) | 2660005105 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lenox Collections - Cash Deposits (ZBA) | 2100010070766 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lenox Collections - Refunds (ZBA) | 2079950071053 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Accounts Payable (Corporate) | 2079950061542 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | OTC Deposits (Corporate) | 2000030727995 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lockbox (Corporate) | 2100012019411 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Concentration (Corporate) | 2000032079010 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Payroll (Corporate) | 2000001684180 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Master Disbursements (Corporate) | 2000028329648 |
| Wachovia Bank | 111 Westminster Street<br>Mail stop: RI1-102-16-01<br>Providence, RI 02903<br>Attn: Dan Butler, Senior VP | ACH/Wire Payments (Corporate) | 2000028330213 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Employee Credit Card Sales (Corporate) | 2000032078244 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Employee Funds (Kinston) | 2044740008287 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | OTC Deposits-Pomona (Wholesale) | 2000031708971 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | US Customs (Wholesale) | 2100011972009 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Payroll – New (Corporate) | 2079951060649 |

| Bank Name | Address | Account Type | Account Number |
|-----------|---------|--------------|----------------|
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Process Lenox Credit Card Cash and Misc Deposits such as NSF Checks (Retail) | 2000031735708 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Process Dansk DTC Transfers (Retail) | 2100012021069 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Process Store Deposits – Global (Retail) | 2000109855837 |
| National City Bank | 12010 Church St.,<br>Birch Run, MI 48415<br>Attn: Susan Williams | Process Store Deposits (Retail) | 967336751 |
| Capital One Bank (formerly North Fork Bank) | 140 E. Main St.,<br>Riverhead, NY 11901<br>Attn: Joanie Scomordella | Process Store Deposits (Retail) | 3724111517 |
| Sevier County Bank | 3260 Parkway,<br>Pigeon Forge, TN 37863<br>Attn: Angela Mora | Process Store Deposits (Retail) | 27318628 |
| Northeast Georgia Bank | 30990 Hwy 441 South,<br>Commerce, GA 30529<br>Attn: Dawn McCook | Process Store Deposits (Retail) | 8000032165 |
| National City Bank | 632 West Main Street,<br>Mt. Pleasant, PA 15666<br>Attn: Bonnie Wisniewski | Process Store Deposits (Retail) | 658925237 |
| Queenstown Bank of Maryland | 223 Outlet Center Drive,<br>Queenstown, MD 21658<br>Attn: Janet Such | Process Store Deposits (Retail) | 465196601 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| TD Banknorth (formerly Hudson United Bank) | 260 Route 32, Central Valley, NY 10917 Attn: Susan Timpone | Process Store Deposits (Retail) | 3980515531 |
| SunTrust Bank | 1850 US Highway 1 South, St. Augustine, FL 32084 Attn: Afsana Catron | Process Store Deposits (Retail) | 1000049142556 |
| National City Bank | 41325 West 10 Mile Rd., Novi, MI 48375 Attn: Rever Anderson | Process Store Deposits (Retail) | 982178886 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | AP controlled disbursement (with positive pay) (D56) | 152118013977 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository (D56) | 160233250275 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | All outgoing ACH and wires (D56) | 170225138859 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | CC deposits only (D56) | 170225142810 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Wholesale CC & ECP deposits (D56) | 104756690137 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | L/C funding account (D56) | 104756211348 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104756807418 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104774436497 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104756211355 |
| JP Morgan Chase (formerly Bank One, NA) | 1111 E. Wisconsin Ave., Milwaukee, WI 53201 Attn: Rena Glorioso | Showroom checking account (D56) | 640126702 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Showroom checking account (D56) | 129577849 |
| Fifth Third Bank | Merchandise Mart Plaza, Chicago, IL 60654 Attn: Denise Robinson | Showroom checking account (D56) | 7518739920 |
| Bank of America | 110 East 9th Street C-Lobby #1, Los Angeles, CA 90079 Attn: Rosa C. Valles | Showroom checking account (D56) | 03762-05448 |
| Bank of New York | 260 Madison Ave. (at 39th Street), New York, NY 10016 Attn: Beverly Harris | Showroom checking account (D56) | 630-0978736 |
| Frost National Bank | 102 North Denton Tap Road, Coppell, TX 75019 Attn: Beth Fontenot | Showroom checking account (D56) | 950003018 |
| National City Bank | 116 Allegheny Center, Pittsburgh, PA 15212-5356 Attn: Jim Carter | Showroom checking account (D56) | 658848964 |
| The Bank of Nova Scotia | 44 King Street West, Toronto, ON M5K 1H1 Canada Attn: George Constantinou | CAD lockbox, AP (D56) | 800020405914 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------------x
                                        :
In re                                   :        Chapter 11 Case No.
                                        :
LENOX SALES, INC., et al.               :        08-14679 (ALG)
                                        :
                    Debtors.            :        (Jointly Administered)
                                        :
----------------------------------------------------------------x
```

## ORDER PURSUANT TO SECTIONS 105(a), 362(d), 363(b) AND 503(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 4001(d) AND 6004(a) (I) AUTHORIZING DEBTORS TO (A) CONTINUE THEIR WORKERS' COMPENSATION PROGRAM AND THEIR INSURANCE PROGRAMS AND (B) PAY ALL OBLIGATIONS IN RESPECT THEREOF AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS

Upon the motion, dated November 24, 2008 (the "Motion"), of Lenox Sales, Inc.

and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in

possession (collectively, the "Debtors"),[1] for an order, pursuant to sections 105(a), 362(d),

363(b), and 503(b) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")

and Rules 4001, 6003 and 6004 of the Federal Rules of Bankruptcy Procedure, (i) authorizing

the Debtors to (a) continue their workers' compensation programs (the "Workers' Compensation

Programs") and their liability, product, property, and other insurance programs, including,

without limitation, all of the policies set forth on Exhibit A annexed hereto (together with the

Workers' Compensation Programs, the "Insurance Programs"), (b) pay all prepetition obligations

in respect thereof, on an uninterrupted basis, consistent with their practices in effect prior to the

commencement of the Debtors' chapter 11 cases, including the payment of all premiums, claims,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are
Lenox Sales, Inc. (3270), Lenox Group Inc. (4956), Lenox, Incorporated (8476), D 56, Inc. (0891), FL 56
Intermediate Corp. (4955), Lenox Retail, Inc. (3269), and Lenox Worldwide, LLC (7980).

deductibles, administrative expenses, and all other charges incurred, whether relating to the period prior to or after the commencement of these chapter 11 cases (collectively, "Insurance Obligations"), and (c) modify the automatic stay solely and for the limited purpose of permitting employees with claims under the Workers' Compensation Program to proceed with their claims in accordance with such program in the appropriate judicial or administrative forum; and (ii) authorizing certain banks and financial institutions (the "Banks"), including, but not limited to, the Banks listed on Exhibit B annexed hereto, to honor and process checks and transfers related to such obligations, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee for the Southern District of New York (Attn: Susan D. Golden), (ii) Paul, Hastings, Janofsky & Walker LLP, 600 Peachtree Street, N.E., 24th Floor, Atlanta, Georgia 30308 (Attn: Jesse H. Austin, III, Esq.) and Park Avenue Tower, 75 East 55th Street, First Floor, New York, New York 10022 (Attn: Leslie A. Plaskon, Esq.), as counsel for UBS AG, Stamford Branch, the administrative agent for the Debtors' prepetition secured revolving loan lenders and as counsel for the Debtors' proposed postpetition lenders, (iii) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022 (Attn: Adam C. Harris, Esq.) as counsel for The Bank of New York Mellon, the administrative and collateral agent for the Debtors' prepetition secured term loan lenders, (iv) the Debtors' 30 largest unsecured creditors (on a consolidated basis), and

(v) the Pension Benefit Guaranty Corporation, Distress Terminations, Dept. of Insurance

Supervision & Compliance, Suite 270, 1200 K Street NW, Washington, DC 20005-4026 (Attn:

Sarah Eagle, Esq.), and it appearing that no other or further notice need be provided; and the

Court having determined that the relief requested in the Motion being in the best interests of the

Debtors, their creditors, and all parties in interest; and the Court having determined that the legal

and factual bases set forth in the Motion establish just cause for the relief granted herein; and

upon all of the proceedings had before the Court and after due deliberation and sufficient cause

appearing therefor, it is hereby

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors are authorized and empowered to maintain their

Insurance Programs without interruption, on the same basis, and in accordance with the same

practices and procedures that were in effect prior to the commencement of the Debtors' chapter

11 cases; and it is further

ORDERED that the Debtors are authorized, but not required, to pay, in their sole

discretion, all Insurance Obligations that are or become payable, including, without limitation, all

premiums, claims, deductibles, excess, retrospective adjustments, administrative and brokers'

fees, and all other obligations arising under the Insurance Programs, including those Insurance

Obligations that (i) were due and payable or related to the period prior to the commencement of

these chapter 11 cases, without further order of the Court, and (ii) are or become due and payable

or related to the period after the commencement of these chapter 11 cases; and it is further

ORDERED that, pursuant to section 362(d) of the Bankruptcy Code, to the extent

any of the Debtors' employees hold claims under the Debtors' Workers' Compensation Program,

these employees are authorized, at the Debtors' discretion, to proceed with their workers'

compensation claims through and including the collection of any judgment in the appropriate judicial or administrative forum under the Workers' Compensation Program; provided, that the prosecution of such claims is in accordance with the Workers' Compensation Program and the recoveries are limited to the proceeds available under the Workers' Compensation Program; and it is further

ORDERED that the Banks, including, but not limited to those on the list annexed hereto as Exhibit B, are authorized to honor, process, and pay, to the extent of funds on deposit, any and all prepetition checks or electronic fund transfer requests issued by the Debtors in respect of any Insurance Obligation, whether pre- or post-petition; and it is further

ORDERED that any Bank, including, but not limited to, those on the list annexed hereto as Exhibit B, may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Commencement Date should be honored pursuant to this Order, and such Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein; and it is further

ORDERED that nothing in this Order or the Motion shall be construed as prejudicing the rights of the Debtors to dispute or contest the amount of or basis for any claims against the Debtors in connection with or relating to the Debtors' Insurance Programs; and it is further

ORDERED that, to the extent that any Insurance Program or any related contract or agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, neither this Order nor any payments made in accordance with this Order shall constitute the postpetition assumption of any such Insurance Program, contract, or related agreement pursuant to section 365 of the Bankruptcy Code; and it is further

ORDERED that Bankruptcy Rule 6003(b) has been satisfied; and it is further

ORDERED that notwithstanding any applicability of Rules 6004(h), 7062, or 9014 of the Bankruptcy Rules, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that notice of the Motion as provided herein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rules 4001(d) and 6004(a) are waived; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: November ___, 2008
New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

# Exhibit A

## Insurance Programs

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium | Deductible |
|---|---|---|---|---|---|
| Workers' Compensation | Liberty Insurance Corp. | WA7-64D-435745-058<br>WC7-641-435745-068 | 1/1/08 – 12/31/08 | $ 339,041 | $ 250,000 |
| General Liability | Liberty Mutual | TB2-641-435745-078 | 1/1/08 - 12/31/08 | $ 168,360 | $ 100,000 |
| Automobile | Liberty Mutual | AS2-641-435745-088 | 1/1/08 - 12/31/08 | $ 22,136 | $ 500 |
| Property | Affiliated FM | EI294 | 1/1/08 - 12/31/08 | $ 288,273 | $ 100,000 |
| Cargo / Transportation | Travelers | OC 01800089 | 1/1/08 - 12/31/08 | $ 120,828 | $ 10,000 |
| Umbrella | Chubb Insurance Company /<br>Crum & Forster | 79733346 /<br>5500120947 | 1/1/08 - 12/31/08 | $ 136,523 | - - - |
| Internet Liability | American International Specialty | 007076208 | 1/1/08 - 12/31/08 | $ 62,939 | $ 250,000 |
| Media / Advertising | National Casualty Company | LS 041211 | 12/31/07 - 12/31/08 | $ 17,558 | $ 25,000 |
| International Package | Chubb Insurance Company | 35384218 | 1/1/08 - 12/31/08 | $ 11,627 | - - - |
| D&O Liability | Great American /<br>Ironshore /<br>XL Specialty /<br>XL Specialty | DOL 5592541 /<br>IRH 008980702001 /<br>ELU 100628-07 /<br>ELU 100631-07 | 10/7/08 - 10/7/09 | $ 397,650 | $ - - - (non-indemnifiable claims)<br><br>$ 250,000 (indemnifiable / securities) |
| Fiduciary | Federal Insurance Company (Chubb) | 81377385 | 10/7/08 - 10/7/09 | $ 19,193 | $ - - - (voluntary settlement)<br><br>$ 100,000 (fiduciary settlement) |
| Commercial Crime | National Union Fire Insurance Co. (AIG) | 164 14 06 | 10/7/08 - 10/7/09 | $ 16,520 | $ 25,000 |
| Employed Lawyers | National Union Fire Insurance Co. (AIG) | 164 13 02 | 10/7/08 - 10/7/09 | $ 6,985 | $ - - - (non-indemnifiable claims)<br><br>$ 50,000 |

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium | Deductible |
|---|---|---|---|---|---|
| Special Risk | Federal Insurance Company (Chubb) | 6802334 | 10/7/07 - 10/7/10 | $ 6,398 | $ - - - |
| Employment Practices | St. Paul Mercury (Travelers) | EC 06300956 | 10/7/07 - 12/31/08 | $ 33,400 | $ 100,000 $ 250,000 (mass or class action) |
| Pollution Liability | American International | PLS1467647 | 9/1/05 - 9/1/10 | $ 27,147 | $ 50,000 |

# Exhibit B

## Bank Accounts

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Bank of America - Shanghai | 18th Floor, S. Tower, 528 Pudong Rd South Shanghai, China 200120 Attn: Nico Zhu | Shanghai Representitive Office (Lenox Worldwide, LLC) | 00010841015 |
| Canadian Bank of Commerce | 180 Laird Dr., Toronto, ON, M4G 3V7 Canada Attn: Malcolm Subit | Canadian Operating Account (Wholesale) | 5500613 |
| M & T Bank | 17301 Valley Mall Drive, Hagerstown, MD 21740 Attn: Kelly Stine | Petty Cash (Wholesale) | 2660005105 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lenox Collections - Cash Deposits (ZBA) | 2100010070766 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lenox Collections - Refunds (ZBA) | 2079950071053 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Accounts Payable (Corporate) | 2079950061542 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | OTC Deposits (Corporate) | 2000030727995 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lockbox (Corporate) | 2100012019411 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Concentration (Corporate) | 2000032079010 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Payroll (Corporate) | 2000001684180 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Master Disbursements (Corporate) | 2000028329648 |
| Wachovia Bank | 111 Westminster Street<br>Mail stop: RI1-102-16-01<br>Providence, RI  02903<br>Attn: Dan Butler, Senior VP | ACH/Wire Payments (Corporate) | 2000028330213 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Employee Credit Card Sales (Corporate) | 2000032078244 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Employee Funds (Kinston) | 2044740008287 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | OTC Deposits-Pomona (Wholesale) | 2000031708971 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | US Customs (Wholesale) | 2100011972009 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Payroll – New (Corporate) | 2079951060649 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Process Lenox Credit Card Cash and Misc Deposits such as NSF Checks (Retail) | 2000031735708 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Process Dansk DTC Transfers (Retail) | 2100012021069 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Process Store Deposits – Global (Retail) | 2000109855837 |
| National City Bank | 12010 Church St., Birch Run, MI 48415 Attn: Susan Williams | Process Store Deposits (Retail) | 967336751 |
| Capital One Bank (formerly North Fork Bank) | 140 E. Main St., Riverhead, NY 11901 Attn: Joanie Scomordella | Process Store Deposits (Retail) | 3724111517 |
| Sevier County Bank | 3260 Parkway, Pigeon Forge, TN 37863 Attn: Angela Mora | Process Store Deposits (Retail) | 27318628 |
| Northeast Georgia Bank | 30990 Hwy 441 South, Commerce, GA 30529 Attn: Dawn McCook | Process Store Deposits (Retail) | 8000032165 |
| National City Bank | 632 West Main Street, Mt. Pleasant, PA 15666 Attn: Bonnie Wisniewski | Process Store Deposits (Retail) | 658925237 |
| Queenstown Bank of Maryland | 223 Outlet Center Drive, Queenstown, MD 21658 Attn: Janet Such | Process Store Deposits (Retail) | 465196601 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| TD Banknorth (formerly Hudson United Bank) | 260 Route 32, Central Valley, NY 10917 Attn: Susan Timpone | Process Store Deposits (Retail) | 3980515531 |
| SunTrust Bank | 1850 US Highway 1 South, St. Augustine, FL 32084 Attn: Afsana Catron | Process Store Deposits (Retail) | 1000049142556 |
| National City Bank | 41325 West 10 Mile Rd., Novi, MI 48375 Attn: Rever Anderson | Process Store Deposits (Retail) | 982178886 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | AP controlled disbursement (with positive pay) (D56) | 152118013977 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository (D56) | 160233250275 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | All outgoing ACH and wires (D56) | 170225138859 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | CC deposits only (D56) | 170225142810 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Wholesale CC & ECP deposits (D56) | 104756690137 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | L/C funding account (D56) | 104756211348 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104756807418 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104774436497 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104756211355 |
| JP Morgan Chase (formerly Bank One, NA) | 1111 E. Wisconsin Ave., Milwaukee, WI 53201 Attn: Rena Glorioso | Showroom checking account (D56) | 640126702 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Showroom checking account (D56) | 129577849 |
| Fifth Third Bank | Merchandise Mart Plaza, Chicago, IL 60654 Attn: Denise Robinson | Showroom checking account (D56) | 7518739920 |
| Bank of America | 110 East 9th Street C-Lobby #1, Los Angeles, CA 90079 Attn: Rosa C. Valles | Showroom checking account (D56) | 03762-05448 |
| Bank of New York | 260 Madison Ave. (at 39th Street), New York, NY 10016 Attn: Beverly Harris | Showroom checking account (D56) | 630-0978736 |
| Frost National Bank | 102 North Denton Tap Road, Coppell, TX 75019 Attn: Beth Fontenot | Showroom checking account (D56) | 950003018 |
| National City Bank | 116 Allegheny Center, Pittsburgh, PA 15212-5356 Attn: Jim Carter | Showroom checking account (D56) | 658848964 |
| The Bank of Nova Scotia | 44 King Street West, Toronto, ON M5K 1H1 Canada Attn: George Constantinou | CAD lockbox, AP (D56) | 800020405914 |

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile:  (212) 310-8007
Harvey R. Miller, Esq.
        - and -
700 Louisiana Street, Suite 1600
Houston, Texas  77002-2784
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Alfredo R. Pérez, Esq.

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------------x
                                          :
In re                                     :     Chapter 11 Case No.
                                          :
LENOX SALES, INC., et al.                 :     08-14679 (ALG)
                                          :
           Debtors.                       :     (Jointly Administered)
                                          :
--------------------------------------------------------------x
```

**MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(a), 362(d), 363(b)**
**AND 503(b) OF THE BANKRUPTCY CODE (I) AUTHORIZING THE DEBTORS**
**TO (A) CONTINUE THEIR WORKERS' COMPENSATION PROGRAM AND**
**THEIR INSURANCE PROGRAMS AND (B) PAY ALL OBLIGATIONS IN RESPECT**
**THEREOF AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR**
**AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Lenox Sales, Inc. and its affiliated debtors in the above-referenced chapter 11

cases, as debtors and debtors in possession (collectively, the "Debtors"),[1] respectfully represent:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are
Lenox Sales, Inc. (3270), Lenox Group Inc. (4956), Lenox, Incorporated (8476), D 56, Inc. (0891), FL 56
Intermediate Corp. (4955), Lenox Retail, Inc. (3269), and Lenox Worldwide, LLC (7980).

# BACKGROUND

## General

1.      On the date hereof (the "<u>Commencement Date</u>"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Further, a motion pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") for joint administration of the Debtors' chapter 11 cases is pending before this Court.

## The Debtors' Businesses

2.      The Debtors are leading designers, marketers, distributors, wholesalers, and retailers of quality tableware, collectibles, and giftware products under the Lenox®, Dansk®, Gorham®, and Department 56® brand names.  The Debtors conduct their businesses through two main operating entities, Lenox, Incorporated ("<u>Lenox, Inc.</u>") (together with its wholly owned subsidiaries Lenox Sales, Inc. and Lenox Retail, Inc.) and D 56, Inc. ("<u>D 56</u>").

3.      Lenox, Inc. is primarily responsible for the product development and marketing of fine and casual tabletop products, including dinnerware, stemware, serveware, and stainless steel flatware, as well as ceramic, crystal and metal ornaments, jewelry, figurines, and home décor.  These products are offered under the Lenox, Dansk, and Gorham brands as well as various other licensed brands.  The Lenox brand of fine dinnerware is the most widely recognized of its kind in the U.S. market, and has been chosen as the White House china for United States Presidents for nearly a century.

4.       D 56 is a leader in the gift, collectible, and holiday decorating industry, providing the Village Series of nostalgic collectible lighted ceramic buildings and related accessories, the Snowbabies line of figurines, other lines of collectables, and giftware

5.       The Debtors sell their products through three principal marketing and sales channels: wholesale, retail, and consumer direct.  The Debtors' wholesale channel includes department stores, large specialty retailers, general merchandise chains, national chains and clubs, small independent specialty retailers, and other wholesale accounts.  The Debtors' retail sales channel includes 30 retail stores operated in 14 states.  Finally, the Debtors utilize various methods of consumer direct marketing, which is overseen by Lenox, Inc., to sell their products, including (a) traditional direct-to-consumer methods, such as media advertising, direct mail, and telemarketing, (b) catalogs, and (c) the Debtors' various Internet sites, www.lenox.com, www.dansk.com, and www.department56.com.

6.       The Debtors own or lease office, manufacturing, warehouse, and distribution facilities across the country and maintain two overseas offices for product sourcing functions in China.  In addition, the Debtors lease a number of retail stores and nine D 56 and Lenox showrooms within the United States, including two in New York City.  The Debtors' flagship New York City Lenox showroom is located on Madison Avenue near other Tabletop and Gift Brands' trade showrooms.  The Debtors currently employ approximately 1,800 employees.

7.       As of October 25, 2008, the Debtors' unaudited consolidated financial statements reflected assets totaling approximately $264 million and liabilities totaling approximately $238 million.

**JURISDICTION**

8.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**RELIEF REQUESTED**

9.      In connection with the operation of their businesses, the Debtors maintain a workers' compensation program and various general liability, property, and other insurance programs and policies (collectively, the "Insurance Programs") through several different insurance carriers (the "Insurance Carriers").  Annexed hereto as Exhibit A is a list of each of the Insurance Programs, disclosing with respect to each Insurance Program, as applicable: the Insurance Carrier, the type of coverage, the coverage period, and the aggregate annual premium due thereunder.[2]

10.     By this Motion, the Debtors request authority, pursuant to sections 105(a), 362(d), 363(b), and 503(b) of the Bankruptcy Code and Bankruptcy Rules 4001, 6003 and 6004 to (i) continue their Insurance Programs on an uninterrupted basis, (ii) honor, in the Debtors' discretion, their undisputed prepetition obligations thereunder (the "Insurance Obligations"), and (iii) modify the automatic stay solely and for the limited purpose of permitting employees with claims under the Workers' Compensation Program to proceed with their claims in accordance with such program in the appropriate judicial or administrative forum.

11.     As part of their cash management system, the Debtors maintain bank accounts at certain banks and financial institutions (the "Banks"), including, but not limited to,

---

[2] In addition to the Insurance Programs listed on Exhibit A, the Debtors maintain numerous other insurance policies and programs with respect to employee benefits, such as health, dental, disability, and life insurance.  These programs and policies are addressed in a separate motion pertaining to the Debtors' employee wage policies and benefit programs and filed contemporaneously herewith.

the Banks listed on Exhibit B annexed hereto and any other bank that is approved as part of the Debtors' cash management system. The Debtors draw upon funds in their accounts to satisfy their obligations arising from the Insurance Programs. In addition to the relief requested above, the Debtors request that the Court authorize the Banks to receive, honor, process, and pay any and all checks drawn, or electronic fund transfers requested or to be requested on the Debtors' Banks, to the extent that such checks or electronic fund transfers relate to any of the foregoing.

## BASIS FOR RELIEF REQUESTED

### The Debtors' Insurance Programs and Other Obligations

#### A. The Workers' Compensation Program

12. Under the laws of the various states in which they operate, the Debtors are required to maintain workers' compensation policies and programs to provide their employees with workers' compensation benefits for claims arising from or related to their employment with the Debtors. The Debtors maintain workers' compensation coverage through a program (the "Workers' Compensation Program") provided by Liberty Insurance Corporation ("Liberty"). The Workers' Compensation Program covers the Debtors' statutory obligations to maintain workers' compensation programs in each of the jurisdictions in which the Debtors operate (but excluding a monopolistic jurisdiction).[3]

13. Under the Workers' Compensation Program, the Debtors pay an annual premium to Liberty that is calculated based upon the Debtors' projected payroll and historic loss rates. The annual premium is paid at the inception of the policy period. The Debtors are responsible for paying a deductible under the Workers' Compensation Program of $250,000 on a per claim occurrence. Under the Workers' Compensation Program, insurance coverage is

---

[3] "Monopolistic jurisdictions" require the Debtors to provide workers' compensation coverage through specific state-run insurance pools. The monopolistic jurisdiction in which the Debtors operate is the state of Ohio.

provided by Liberty for workers' compensation claims subject to policy limits, with a per incident deductible of $250,000. The Debtors utilize the services of Wells Fargo Insurance Services ("WFIS") to administer the program. WFIS processes and pays all approved claims and also pays amounts billed directly by doctors and medical facilities. The Debtors are obligated to pay the program premium and reimburse WFIS up to $250,000 per approved claim for the loss payments WFIS makes in respect of coverage deductibles in accordance with the terms of the Workers' Compensation Program. For the period from January 1, 2008 through and including January 1, 2009, the total premium for the Workers' Compensation Program totaled $339,041. As of the Commencement Date, the Debtors have no amounts outstanding to Liberty. The Debtors have provided a Letter of Credit totaling $3,720,000 for the benefit of Liberty as collateral for the Debtors' obligation to reimburse Liberty under policies, including the Workers' Compensation Program.

14. The Debtors have maintained this policy with the Liberty since the acquisition of Lenox, Incorporated by D 56 from Brown Forman Corporation in September 2005. Prior to this period, Lenox, Incorporated maintained a policy with Liberty, and D 56 maintained a policy with Vigilant Insurance Company, a subsidiary of the Chubb Group of Insurance Companies. While these policies have been replaced with the Workers' Compensation Program through Liberty for current employees, the Debtors are responsible for claims that accrued under the legacy policies before September 2005. Currently, there are $475,000 of open claims under the legacy policies, in addition to $846,000 of open claims under the current Workers' Compensation Program. By this motion, the Debtors seek authority to pay all open claims for which they are determined to be liable, including claims arising under the legacy

policies and the current Workers' Compensation Program.[4]  The Debtors have provided a Letter

of Credit totaling $1,150,000 for the benefit of Liberty as collateral for the Debtors' obligation to

reimburse Liberty under the legacy Workers' Compensation policy.  Additionally the Debtors

have provided a Letter of Credit totaling $200,000 for the benefit of Vigilant as collateral for the

Debtors' obligation to reimburse Vigilant under the legacy Workers' Compensation policy.

Finally, the Debtors also have been required to provide additional collateral in the form of cash

deposits to both Liberty and Vigilant totaling $185,000 and $60,000 respectively.

**B.**     **Liability and Property Insurance Programs**

15.     The Debtors maintain various liability and property-related insurance

Programs, which provide the Debtors with insurance coverage for liabilities relating to, among

other things, general liability, primary property liability, automobile liability, cargo liability,

employment practices liability, directors and officers liability, crime liability, special risk, and

umbrella or excess liability insurance (collectively, the "Liability and Property Insurance

Programs").  Continuation of these policies is essential to the ongoing operation of the Debtors'

businesses.

16.     The Debtors are required to pay premiums under the Liability and

Property Insurance Programs based upon fixed rates established by the applicable Insurance

Carrier.  For example, the Debtors' primary property insurance coverage is provided by

Affiliated FM, requiring an annual premium of $288,273, while their general liability insurance

coverage is provided by Liberty Mutual, requiring an annual premium of $168,360.  These

policies have a term which began on January 1, 2008 and runs through January 1, 2009.   The

Debtors pay certain of these premiums in cash, either directly to the Insurance Carriers or to their

---

[4] As the legacy policies have expired, there are no premium obligations associated therewith.

insurance broker, while a number of the premiums under the Debtors' Liability and Property Insurance Programs are financed by a third party financing company.

17.     Specifically, six of the Debtors' policies with respect to the Liability and Property Insurance Programs are financed by Imperial A.I. Credit Companies ("AICCO") pursuant to a finance agreement with AICCO (the "AICCO Agreement").[5]  Under the AICCO Agreement, AICCO pays the premiums for each respective policy at the policy's inception (a total of $637,748). The Debtors reimbursed AICCO with an initial payment of $127,551 and thereafter paid nine monthly installments to AICCO of $58,060.  As of the Commencement Date, the Debtors have no known amounts outstanding to AICCO.

18.     The aggregate annual premium for the Liability and Property Insurance Programs is approximately $1,340,000.  As of the Commencement Date, the Debtors have fully paid all obligations in connection with policy premiums for the existing Liability and Property Insurance Programs.  In addition, the Debtors are required to pay various deductibles for claims asserted under the respective policies.  The amounts of the applicable deductibles are set forth in Exhibit A hereto.  As of the Commencement Date, the Debtor is unable to accurately estimate the aggregate outstanding amount with respect to deductibles under the Liability and Property Insurance Programs since, in the normal course of operating its business, many claims made fail to assert specific dollar damages and are ultimately resolved for nominal amounts.  Deductibles for claims relating to the period prior to the Commencement Date may continue to arise in the ordinary course of business.  Accordingly, the Debtors are seeking the Court's authorization to pay such undisputed claims, in their discretion, as they come due.

---

[5] The financed policies include property liability, cargo & transportation liability, umbrella liability, internet liability, media/advertising liability, and international package liability.

## Insurance Broker

19.     The Debtors employ an insurance broker, Wells Fargo Insurance Services (the "Insurance Broker"), to assist them with the procurement and negotiation of their Insurance Programs and the processing of claims.  In certain circumstances, the Insurance Broker remits payment to the Insurance Carriers on behalf of the Debtors.  The Insurance Broker is paid a commission by the Insurance Carriers, not by the Debtors.  Accordingly, the Debtors believe there are no amounts accrued and outstanding with respect to the Insurance Broker.

### Debtors Request Authority to (i) Continue the Insurance Programs and (ii) Pay All Obligations in Respect Thereof

20.     Pursuant to sections 105(a), 362(d), 363(b), and 503(b) of the Bankruptcy Code and Bankruptcy Rules 4001 and 6004, the Debtors seek authority to continue, in their sole discretion, the Insurance Programs on an uninterrupted basis in accordance with the same practices and procedures as were in effect prior to the Commencement Date.  Furthermore, the Debtors seek authority to pay, in their sole discretion, all undisputed premiums, deductibles, administrative fees, and other obligations arising under the Insurance Programs, as applicable, that were or are due and payable, or related to the period before or after, the Commencement Date.

21.     Pursuant to section 503(b)(1) of the Bankruptcy Code, a debtor may incur, and the court, after notice and a hearing, shall allow as administrative expenses, among other things, "the actual, necessary costs and expenses of preserving the estate."  11 U.S.C. § 503(b)(1).  In addition, pursuant to section 363(b) of the Bankruptcy Code, a debtor may, in the exercise of its sound business judgment and after notice and a hearing, use property of the estate outside of the ordinary course of business.  § 363(b).  The Debtors submit that the use of estate

funds for payment of the Insurance Obligations is permitted by sections 503(b)(1) and 363(b) of the Bankruptcy Code as necessary costs of preserving the estate.

22. Furthermore, to supplement these explicit powers, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). "Under 11 U.S.C. § 105 the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing Ionosphere Clubs, 98 B.R. at 177).

23. In a long line of well-established cases, federal courts consistently have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. See, e.g., Miltenberger v. Logansport C. & S.W. Ry. Co., 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); Dudley v. Mealey, 147 F.2d 268 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases); Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.), 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

24. The "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. See In re Lehigh &

New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize the payment of pre-petition claims if such payment was essential to the continued operation of the debtor); In re Boston & Me. Corp., 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation).  The doctrine is frequently invoked early in a chapter 11 case, particularly in connection with the payment of prepetition claims.  The rationale for the doctrine of necessity rule is consistent with the paramount goal of chapter 11: "facilitating the continued operation and rehabilitation of the debtor." Ionosphere Clubs, 98 B.R. at 176.  Accordingly, pursuant to section 105(a) of the Bankruptcy Code, this Court is empowered to grant the relief requested herein.

25.     Moreover, numerous courts in this jurisdiction have granted similar relief in other chapter 11 cases.  See, e.g., In re Steve & Barry's Manhattan LLC, et al., Case No. 08-12579 (ALG) (Bankr. S.D.N.Y. Jul. 30, 2008), (Bankr. S.D.N.Y. Jul. 11, 2008); In re Lexington Precision, et al., Case No. 08-11153 (MG) (Bankr. S.D.N.Y. Apr. 22, 2008); In re Fortunoff Fine Jewelry and Silverware, LLC, Case No. 08-10353 (JMP) (Bankr. S.D.N.Y. Feb. 29, 2008), (Bankr. S.D.N.Y. Feb. 5, 2008); In re PRC, LLC, Case No. 08-10239 (MG) (Bankr. S.D.N.Y. Jan. 25, 2008); Silicon Graphics, Inc., et al., Case No. 06-10977 (BRL)  (Bankr. S.D.N.Y May 31, 2006), (Bankr. S.D.N.Y May 10, 2006); In re Atkins Nutritionals, Inc., et al., Case No. 05-15913 (ALG) (Bankr. S.D.N.Y. Aug. 1, 2005).

**Continuing the Insurance Programs and Paying All Obligations in
Respect Thereof Is Necessary to Preserve the Value of the Debtors' Estates**

26.     The nature of the Debtors' businesses and the extent of their operations make it essential for the Debtors to maintain their Insurance Programs on an uninterrupted basis. The nonpayment of any premiums, deductibles, or related fees under one of the Insurance

Programs could result in one or more of the Insurance Carriers declining to renew the Debtors' insurance policies or refusing to enter into new insurance agreements with the Debtors in the future. If the Insurance Programs lapse without renewal, the Debtors could be exposed to substantial liability for personal and/or property damages to the detriment of all parties in interest. Furthermore, the Debtors would then be required to obtain replacement policies on an expedited basis at a significant cost to the estates.

27.     Moreover, the Insurance Programs are vital to all aspects of the Debtors' operations. Applicable state law mandates that the Debtors maintain workers' compensation coverage for their employees. Failure by the Debtors to pay the premiums associated with their Workers' Compensation Programs would jeopardize their coverage and expose the Debtors to substantial liability in fines by various state workers' compensation boards.

28.     In addition, the risk that eligible workers' compensation claimants will not receive timely payment for prepetition employment-related injuries could have a devastating effect on the financial well-being and morale of the Debtors' current employees. Departures by employees at this critical time may result in a severe disruption of the Debtors' businesses with a substantially adverse impact on the Debtors, the value of their assets and their businesses. The retention of the Debtors' qualified and dedicated senior management also is linked to the continued effectiveness of the directors' and officers' liability insurance policies.

29.     Finally, pursuant to the guidelines established by the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), the Debtors are obligated to remain current with respect to their primary Insurance Programs. Therefore, the continuation of the Insurance Programs, on an uninterrupted basis, and the payment of all undisputed prepetition and postpetition Insurance Obligations arising under the Insurance

Programs, are essential to the preservation of the Debtors' businesses and the value of the Debtors' estates for all creditors. Accordingly, the Debtors are seeking the Court's authorization to continue the Insurance Programs and related policies as such practices, programs, and policies were in effect as of the Commencement Date and authorize, but not direct, the Debtors to pay any undisputed prepetition claims arising under the Insurance Program as they come due.

30. To the extent any Insurance Program or related agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtors do not, at this time, seek to assume any such contract. Accordingly, if the Court authorizes the payments described above, such payments should not be deemed to constitute a postpetition assumption or adoption of the programs, policies, or agreements as executory contracts pursuant to section 365 of the Bankruptcy Code. The Debtors are in the process of reviewing these matters and reserve all of their rights under the Bankruptcy Code with respect thereto. Moreover, authorization to pay all amounts on account of the Insurance Obligations shall not affect the Debtors' right to contest the amount or validity of these obligations.

**The Automatic Stay Should Be Waived for Workers' Compensation Claims**

31. Section 362(a) of the Bankruptcy Code, commonly known as the "automatic stay," operates to stay

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1). Section 362, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." § 362(d)(1).

32.     To the extent the Debtors' employees hold valid workers' compensation claims, the Debtors seek authorization under section 362(d) of the Bankruptcy Code to permit these employees to proceed with their claims in the appropriate judicial or administrative forum. The Debtors believe cause exists to modify the automatic stay because prohibiting the Debtors' employees from proceeding with their claims could have a detrimental effect on the financial well-being and morale of such employees and lead to their departure. As discussed above, such departures could cause a severe disruption in the Debtors' businesses to the detriment of all parties in interest.

33.     To this end, and solely with respect to workers' compensation claims covered under the Workers' Compensation Programs, the Debtors seek to modify the automatic stay as it relates to workers' compensation claims; provided, however, that such claims are pursued in accordance with the Workers' Compensation Program and recoveries, if any, are limited to the proceeds from the applicable Workers' Compensation Program. All other claims, including any claims relating to matters covered by other Insurance Programs, will remain subject to the automatic stay. To effectuate the aforementioned modification of the automatic stay, the Debtors request that the Court waive the stay of a judgment under Bankruptcy Rule 7062 and the requirements under Bankruptcy Rule 9014 relating to contested matters with respect to claims under the Workers' Compensation Programs.

34.     Pursuant to this Motion, the Debtors do not seek a waiver, termination, or modification of the automatic stay with respect to any other claims or matters.

**Applicable Banks Should Be Authorized to Honor and
Pay Checks Issued and Make Other Transfers to Pay Insurance Obligations**

35.     As a result of the commencement of the Debtors' chapter 11 cases, and in the absence of an order of the Court providing otherwise, the Banks may dishonor or reject

Debtors' checks and electronic fund transfers with respect to the Insurance Obligations. Therefore, the Debtors request that the Court authorize the Banks listed on Exhibit B annexed hereto to, and any other bank the Debtors are authorized to do business with under the Cash Management Motion[6] to process, honor, and pay all prepetition and postpetition checks issued or to be issued, and electronic fund transfers requested or to be requested, by the Debtors with respect to their Insurance Obligations. The Debtors also seek authority to issue new postpetition checks or effect new electronic fund transfers with respect to the Insurance Obligations to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected.

36. The Debtors represent that each of these checks or transfers is or will be drawn on accounts authorized by the Court under the Cash Management Motion, and can be readily identified as relating directly to payments under the Insurance Programs. Accordingly, the Debtors believe that prepetition checks and transfers other than those relating to the Insurance Programs will not be honored inadvertently.

37. Furthermore, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the stay of the order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## **NOTICE**

38. No trustee, examiner, or statutory creditors' committee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion on (i) the Office of the

---

[6] Contemporaneously herewith the Debtors filed the Motion for an Order Pursuant to Sections 105(a), 345(b), 363(b), 363(c) and 364(a) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004 (A) Authorizing the Debtors to (i) Continue Using Existing Centralized Cash Management System, (ii) Honor Certain Prepetition Obligations Related to the Use of the Cash Management System, and (iii) Maintain Existing Bank Accounts and Business Forms; and (B) Extending the Time to Comply With Section 345(b) of the Bankruptcy Code (the "Cash Management Motion").

United States Trustee for the Southern District of New York (Attn: Susan D. Golden), (ii) Paul, Hastings, Janofsky & Walker LLP, 600 Peachtree Street, N.E., 24th Floor, Atlanta, Georgia 30308 (Attn: Jesse H. Austin, III, Esq.) and Park Avenue Tower, 75 East 55th Street, First Floor, New York, New York 10022 (Attn: Leslie A. Plaskon, Esq.), as counsel for UBS AG, Stamford Branch, the administrative agent for the Debtors' prepetition secured revolving loan lenders and as counsel for the Debtors' proposed postpetition lenders, (iii) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022 (Attn: Adam C. Harris, Esq.) as counsel for The Bank of New York Mellon, the administrative and collateral agent for the Debtors' prepetition secured term loan lenders, (iv) the Debtors' 30 largest unsecured creditors (on a consolidated basis), and (v) the Pension Benefit Guaranty Corporation, Distress Terminations, Dept. of Insurance Supervision & Compliance, Suite 270, 1200 K Street NW, Washington, DC 20005-4026 (Attn: Sarah Eagle, Esq.).  In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided.

39. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just and appropriate.

Dated: November 24, 2008
        New York, New York

Respectfully submitted,

By: /s/ Alfredo R. Pérez
        Alfredo R. Pérez

Harvey R. Miller, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
        - and -
Alfredo R. Pérez, Esq.
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002-2784
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Attorneys for Debtors and Debtors in Possession

## Exhibit A

## Insurance Programs

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium | Deductible |
|---|---|---|---|---|---|
| Workers' Compensation | Liberty Insurance Corp. | WA7-64D-435745-058 <br> WC7-641-435745-068 | 1/1/08 – 12/31/08 | $ 339,041 | $ 250,000 |
| General Liability | Liberty Mutual | TB2-641-435745-078 | 1/1/08 - 12/31/08 | $ 168,360 | $ 100,000 |
| Automobile | Liberty Mutual | AS2-641-435745-088 | 1/1/08 - 12/31/08 | $ 22,136 | $ 500 |
| Property | Affiliated FM | EI294 | 1/1/08 - 12/31/08 | $ 288,273 | $ 100,000 |
| Cargo / Transportation | Travelers | OC 01800089 | 1/1/08 - 12/31/08 | $ 120,828 | $ 10,000 |
| Umbrella | Chubb Insurance Company / Crum & Forster | 79733346 / 5500120947 | 1/1/08 - 12/31/08 | $ 136,523 | - - - |
| Internet Liability | American International Specialty | 007076208 | 1/1/08 - 12/31/08 | $ 62,939 | $ 250,000 |
| Media / Advertising | National Casualty Company | LS 041211 | 12/31/07 - 12/31/08 | $ 17,558 | $ 25,000 |
| International Package | Chubb Insurance Company | 35384218 | 1/1/08 - 12/31/08 | $ 11,627 | - - - |
| D&O Liability | Great American / Ironshore / XL Specialty / XL Specialty | DOL 5592541 / IRH 008980702001 / ELU 100628-07 / ELU 100631-07 | 10/7/08 - 10/7/09 | $ 397,650 | $ - - - (non-indemnifiable claims) <br> $ 250,000 (indemnifiable / securities) |
| Fiduciary | Federal Insurance Company (Chubb) | 81377385 | 10/7/08 - 10/7/09 | $ 19,193 | $ - - - (voluntary settlement) <br> $ 100,000 (fiduciary settlement) |
| Commercial Crime | National Union Fire Insurance Co. (AIG) | 164 14 06 | 10/7/08 - 10/7/09 | $ 16,520 | $ 25,000 |
| Employed Lawyers | National Union Fire Insurance Co. (AIG) | 164 13 02 | 10/7/08 - 10/7/09 | $ 6,985 | $ - - - (non-indemnifiable claims) <br> $ 50,000 |

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium | Deductible |
|---|---|---|---|---|---|
| Special Risk | Federal Insurance Company (Chubb) | 6802334 | 10/7/07 - 10/7/10 | $ 6,398 | $ - - - |
| Employment Practices | St. Paul Mercury (Travelers) | EC 06300956 | 10/7/07 - 12/31/08 | $ 33,400 | $ 100,000<br>$ 250,000 (mass or class action) |
| Pollution Liability | American International | PLS1467647 | 9/1/05 - 9/1/10 | $ 27,147 | $ 50,000 |

# Exhibit B

## Bank Accounts

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Bank of America - Shanghai | 18th Floor, S. Tower, 528 Pudong Rd South Shanghai, China 200120 Attn: Nico Zhu | Shanghai Representitive Office (Lenox Worldwide, LLC) | 00010841015 |
| Canadian Bank of Commerce | 180 Laird Dr., Toronto, ON, M4G 3V7 Canada Attn: Malcolm Subit | Canadian Operating Account (Wholesale) | 5500613 |
| M & T Bank | 17301 Valley Mall Drive, Hagerstown, MD 21740 Attn: Kelly Stine | Petty Cash (Wholesale) | 2660005105 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lenox Collections - Cash Deposits (ZBA) | 2100010070766 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lenox Collections - Refunds (ZBA) | 2079950071053 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Accounts Payable (Corporate) | 2079950061542 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | OTC Deposits (Corporate) | 2000030727995 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lockbox (Corporate) | 2100012019411 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Concentration (Corporate) | 2000032079010 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Payroll (Corporate) | 2000001684180 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Master Disbursements (Corporate) | 2000028329648 |
| Wachovia Bank | 111 Westminster Street<br>Mail stop: RI1-102-16-01<br>Providence, RI 02903<br>Attn: Dan Butler, Senior VP | ACH/Wire Payments (Corporate) | 2000028330213 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Employee Credit Card Sales (Corporate) | 2000032078244 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Employee Funds (Kinston) | 2044740008287 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | OTC Deposits-Pomona (Wholesale) | 2000031708971 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | US Customs (Wholesale) | 2100011972009 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Payroll – New (Corporate) | 2079951060649 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Process Lenox Credit Card Cash and Misc Deposits such as NSF Checks (Retail) | 2000031735708 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Process Dansk DTC Transfers (Retail) | 2100012021069 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Process Store Deposits – Global (Retail) | 2000109855837 |
| National City Bank | 12010 Church St.,<br>Birch Run, MI 48415<br>Attn: Susan Williams | Process Store Deposits (Retail) | 967336751 |
| Capital One Bank (formerly North Fork Bank) | 140 E. Main St.,<br>Riverhead, NY 11901<br>Attn: Joanie Scomordella | Process Store Deposits (Retail) | 3724111517 |
| Sevier County Bank | 3260 Parkway,<br>Pigeon Forge, TN 37863<br>Attn: Angela Mora | Process Store Deposits (Retail) | 27318628 |
| Northeast Georgia Bank | 30990 Hwy 441 South,<br>Commerce, GA 30529<br>Attn: Dawn McCook | Process Store Deposits (Retail) | 8000032165 |
| National City Bank | 632 West Main Street,<br>Mt. Pleasant, PA 15666<br>Attn: Bonnie Wisniewski | Process Store Deposits (Retail) | 658925237 |
| Queenstown Bank of Maryland | 223 Outlet Center Drive,<br>Queenstown, MD 21658<br>Attn: Janet Such | Process Store Deposits (Retail) | 465196601 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| TD Banknorth (formerly Hudson United Bank) | 260 Route 32, Central Valley, NY 10917 Attn: Susan Timpone | Process Store Deposits (Retail) | 3980515531 |
| SunTrust Bank | 1850 US Highway 1 South, St. Augustine, FL 32084 Attn: Afsana Catron | Process Store Deposits (Retail) | 1000049142556 |
| National City Bank | 41325 West 10 Mile Rd., Novi, MI 48375 Attn: Rever Anderson | Process Store Deposits (Retail) | 982178886 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | AP controlled disbursement (with positive pay) (D56) | 152118013977 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository (D56) | 160233250275 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | All outgoing ACH and wires (D56) | 170225138859 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | CC deposits only (D56) | 170225142810 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Wholesale CC & ECP deposits (D56) | 104756690137 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | L/C funding account (D56) | 104756211348 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104756807418 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104774436497 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104756211355 |
| JP Morgan Chase (formerly Bank One, NA) | 1111 E. Wisconsin Ave., Milwaukee, WI 53201 Attn: Rena Glorioso | Showroom checking account (D56) | 640126702 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Showroom checking account (D56) | 129577849 |
| Fifth Third Bank | Merchandise Mart Plaza, Chicago, IL 60654 Attn: Denise Robinson | Showroom checking account (D56) | 7518739920 |
| Bank of America | 110 East 9th Street C-Lobby #1, Los Angeles, CA 90079 Attn: Rosa C. Valles | Showroom checking account (D56) | 03762-05448 |
| Bank of New York | 260 Madison Ave. (at 39th Street), New York, NY 10016 Attn: Beverly Harris | Showroom checking account (D56) | 630-0978736 |
| Frost National Bank | 102 North Denton Tap Road, Coppell, TX 75019 Attn: Beth Fontenot | Showroom checking account (D56) | 950003018 |
| National City Bank | 116 Allegheny Center, Pittsburgh, PA 15212-5356 Attn: Jim Carter | Showroom checking account (D56) | 658848964 |
| The Bank of Nova Scotia | 44 King Street West, Toronto, ON M5K 1H1 Canada Attn: George Constantinou | CAD lockbox, AP (D56) | 800020405914 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                            :
In re                                       :          Chapter 11 Case No.
                                            :
LENOX SALES, INC., *et al.*                 :          08-14679 (ALG)
                                            :
                    Debtors.                :          (Jointly Administered)
                                            :
------------------------------------------------------------x
```

### ORDER PURSUANT TO SECTIONS 105(a), 362(d), 363(b) AND 503(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 4001(d) AND 6004(a) (I) AUTHORIZING DEBTORS TO (A) CONTINUE THEIR WORKERS' COMPENSATION PROGRAM AND THEIR INSURANCE PROGRAMS AND (B) PAY ALL OBLIGATIONS IN RESPECT THEREOF AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND <u>PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS</u>

Upon the motion, dated November 24, 2008 (the "<u>Motion</u>"), of Lenox Sales, Inc.

and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in

possession (collectively, the "<u>Debtors</u>"),[1] for an order, pursuant to sections 105(a), 362(d),

363(b), and 503(b) of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>")

and Rules 4001, 6003 and 6004 of the Federal Rules of Bankruptcy Procedure, (i) authorizing

the Debtors to (a) continue their workers' compensation programs (the "<u>Workers' Compensation

Programs</u>") and their liability, product, property, and other insurance programs, including,

without limitation, all of the policies set forth on Exhibit A annexed hereto (together with the

Workers' Compensation Programs, the "<u>Insurance Programs</u>"), (b) pay all prepetition obligations

in respect thereof, on an uninterrupted basis, consistent with their practices in effect prior to the

commencement of the Debtors' chapter 11 cases, including the payment of all premiums, claims,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Lenox Sales, Inc. (3270), Lenox Group Inc. (4956), Lenox, Incorporated (8476), D 56, Inc. (0891), FL 56 Intermediate Corp. (4955), Lenox Retail, Inc. (3269), and Lenox Worldwide, LLC (7980).

deductibles, administrative expenses, and all other charges incurred, whether relating to the period prior to or after the commencement of these chapter 11 cases (collectively, "Insurance Obligations"), and (c) modify the automatic stay solely and for the limited purpose of permitting employees with claims under the Workers' Compensation Program to proceed with their claims in accordance with such program in the appropriate judicial or administrative forum; and (ii) authorizing certain banks and financial institutions (the "Banks"), including, but not limited to, the Banks listed on Exhibit B annexed hereto, to honor and process checks and transfers related to such obligations, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee for the Southern District of New York (Attn: Susan D. Golden), (ii) Paul, Hastings, Janofsky & Walker LLP, 600 Peachtree Street, N.E., 24th Floor, Atlanta, Georgia 30308 (Attn: Jesse H. Austin, III, Esq.) and Park Avenue Tower, 75 East 55th Street, First Floor, New York, New York 10022 (Attn: Leslie A. Plaskon, Esq.), as counsel for UBS AG, Stamford Branch, the administrative agent for the Debtors' prepetition secured revolving loan lenders and as counsel for the Debtors' proposed postpetition lenders, (iii) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022 (Attn: Adam C. Harris, Esq.) as counsel for The Bank of New York Mellon, the administrative and collateral agent for the Debtors' prepetition secured term loan lenders, (iv) the Debtors' 30 largest unsecured creditors (on a consolidated basis), and

(v) the Pension Benefit Guaranty Corporation, Distress Terminations, Dept. of Insurance

Supervision & Compliance, Suite 270, 1200 K Street NW, Washington, DC 20005-4026 (Attn:

Sarah Eagle, Esq.), and it appearing that no other or further notice need be provided; and the

Court having determined that the relief requested in the Motion being in the best interests of the

Debtors, their creditors, and all parties in interest; and the Court having determined that the legal

and factual bases set forth in the Motion establish just cause for the relief granted herein; and

upon all of the proceedings had before the Court and after due deliberation and sufficient cause

appearing therefor, it is hereby

      ORDERED that the Motion is granted; and it is further

      ORDERED that the Debtors are authorized and empowered to maintain their

Insurance Programs without interruption, on the same basis, and in accordance with the same

practices and procedures that were in effect prior to the commencement of the Debtors' chapter

11 cases; and it is further

      ORDERED that the Debtors are authorized, but not required, to pay, in their sole

discretion, all Insurance Obligations that are or become payable, including, without limitation, all

premiums, claims, deductibles, excess, retrospective adjustments, administrative and brokers'

fees, and all other obligations arising under the Insurance Programs, including those Insurance

Obligations that (i) were due and payable or related to the period prior to the commencement of

these chapter 11 cases, without further order of the Court, and (ii) are or become due and payable

or related to the period after the commencement of these chapter 11 cases; and it is further

      ORDERED that, pursuant to section 362(d) of the Bankruptcy Code, to the extent

any of the Debtors' employees hold claims under the Debtors' Workers' Compensation Program,

these employees are authorized, at the Debtors' discretion, to proceed with their workers'

compensation claims through and including the collection of any judgment in the appropriate judicial or administrative forum under the Workers' Compensation Program; provided, that the prosecution of such claims is in accordance with the Workers' Compensation Program and the recoveries are limited to the proceeds available under the Workers' Compensation Program; and it is further

ORDERED that the Banks, including, but not limited to those on the list annexed hereto as Exhibit B, are authorized to honor, process, and pay, to the extent of funds on deposit, any and all prepetition checks or electronic fund transfer requests issued by the Debtors in respect of any Insurance Obligation, whether pre- or post-petition; and it is further

ORDERED that any Bank, including, but not limited to, those on the list annexed hereto as Exhibit B, may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Commencement Date should be honored pursuant to this Order, and such Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein; and it is further

ORDERED that nothing in this Order or the Motion shall be construed as prejudicing the rights of the Debtors to dispute or contest the amount of or basis for any claims against the Debtors in connection with or relating to the Debtors' Insurance Programs; and it is further

ORDERED that, to the extent that any Insurance Program or any related contract or agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, neither this Order nor any payments made in accordance with this Order shall constitute the postpetition assumption of any such Insurance Program, contract, or related agreement pursuant to section 365 of the Bankruptcy Code; and it is further

ORDERED that Bankruptcy Rule 6003(b) has been satisfied; and it is further

ORDERED that notwithstanding any applicability of Rules 6004(h), 7062, or 9014 of the Bankruptcy Rules, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that notice of the Motion as provided herein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rules 4001(d) and 6004(a) are waived; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: November ___, 2008
New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

# Exhibit A

## Insurance Programs

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium | Deductible |
|---|---|---|---|---|---|
| Workers' Compensation | Liberty Insurance Corp. | WA7-64D-435745-058 WC7-641-435745-068 | 1/1/08 – 12/31/08 | $ 339,041 | $ 250,000 |
| General Liability | Liberty Mutual | TB2-641-435745-078 | 1/1/08 - 12/31/08 | $ 168,360 | $ 100,000 |
| Automobile | Liberty Mutual | AS2-641-435745-088 | 1/1/08 - 12/31/08 | $ 22,136 | $ 500 |
| Property | Affiliated FM | EI294 | 1/1/08 - 12/31/08 | $ 288,273 | $ 100,000 |
| Cargo / Transportation | Travelers | OC 01800089 | 1/1/08 - 12/31/08 | $ 120,828 | $ 10,000 |
| Umbrella | Chubb Insurance Company / Crum & Forster | 79733346 / 5500120947 | 1/1/08 - 12/31/08 | $ 136,523 | - - - |
| Internet Liability | American International Specialty | 007076208 | 1/1/08 - 12/31/08 | $ 62,939 | $ 250,000 |
| Media / Advertising | National Casualty Company | LS 041211 | 12/31/07 - 12/31/08 | $ 17,558 | $ 25,000 |
| International Package | Chubb Insurance Company | 35384218 | 1/1/08 - 12/31/08 | $ 11,627 | - - - |
| D&O Liability | Great American / Ironshore / XL Specialty / XL Specialty | DOL 5592541 / IRH 008980702001 / ELU 100628-07 / ELU 100631-07 | 10/7/08 - 10/7/09 | $ 397,650 | $ - - - (non-indemnifiable claims) $ 250,000 (indemnifiable / securities) |
| Fiduciary | Federal Insurance Company (Chubb) | 81377385 | 10/7/08 - 10/7/09 | $ 19,193 | $ - - - (voluntary settlement) $ 100,000 (fiduciary settlement) |
| Commercial Crime | National Union Fire Insurance Co. (AIG) | 164 14 06 | 10/7/08 - 10/7/09 | $ 16,520 | $ 25,000 |
| Employed Lawyers | National Union Fire Insurance Co. (AIG) | 164 13 02 | 10/7/08 - 10/7/09 | $ 6,985 | $ - - - (non-indemnifiable claims) $ 50,000 |

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium | Deductible |
|---|---|---|---|---|---|
| Special Risk | Federal Insurance Company (Chubb) | 6802334 | 10/7/07 - 10/7/10 | $ 6,398 | $ - - - |
| Employment Practices | St. Paul Mercury (Travelers) | EC 06300956 | 10/7/07 - 12/31/08 | $ 33,400 | $ 100,000 <br> $ 250,000 (mass or class action) |
| Pollution Liability | American International | PLS1467647 | 9/1/05 - 9/1/10 | $ 27,147 | $ 50,000 |

NY2:\1930395\15\15D$315!.DOC\58519.0003

**Exhibit B**

**Bank Accounts**

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Bank of America - Shanghai | 18th Floor, S. Tower, 528 Pudong Rd South Shanghai, China 200120 Attn: Nico Zhu | Shanghai Representitive Office (Lenox Worldwide, LLC) | 00010841015 |
| Canadian Bank of Commerce | 180 Laird Dr., Toronto, ON, M4G 3V7 Canada Attn: Malcolm Subit | Canadian Operating Account (Wholesale) | 5500613 |
| M & T Bank | 17301 Valley Mall Drive, Hagerstown, MD 21740 Attn: Kelly Stine | Petty Cash (Wholesale) | 2660005105 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lenox Collections - Cash Deposits (ZBA) | 2100010070766 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lenox Collections - Refunds (ZBA) | 2079950071053 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Accounts Payable (Corporate) | 2079950061542 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | OTC Deposits (Corporate) | 2000030727995 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lockbox (Corporate) | 2100012019411 |

| Bank Name | Address | Account Type | Account Number |
|-----------|---------|--------------|----------------|
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Concentration (Corporate) | 2000032079010 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Payroll (Corporate) | 2000001684180 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Master Disbursements (Corporate) | 2000028329648 |
| Wachovia Bank | 111 Westminster Street<br>Mail stop: RI1-102-16-01<br>Providence, RI 02903<br>Attn: Dan Butler, Senior VP | ACH/Wire Payments (Corporate) | 2000028330213 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Employee Credit Card Sales (Corporate) | 2000032078244 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Employee Funds (Kinston) | 2044740008287 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | OTC Deposits-Pomona (Wholesale) | 2000031708971 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | US Customs (Wholesale) | 2100011972009 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Payroll – New (Corporate) | 2079951060649 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Process Lenox Credit Card Cash and Misc Deposits such as NSF Checks (Retail) | 2000031735708 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Process Dansk DTC Transfers (Retail) | 2100012021069 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Process Store Deposits – Global (Retail) | 2000109855837 |
| National City Bank | 12010 Church St.,<br>Birch Run, MI 48415<br>Attn: Susan Williams | Process Store Deposits (Retail) | 967336751 |
| Capital One Bank (formerly North Fork Bank) | 140 E. Main St.,<br>Riverhead, NY 11901<br>Attn: Joanie Scomordella | Process Store Deposits (Retail) | 3724111517 |
| Sevier County Bank | 3260 Parkway,<br>Pigeon Forge, TN 37863<br>Attn: Angela Mora | Process Store Deposits (Retail) | 27318628 |
| Northeast Georgia Bank | 30990 Hwy 441 South,<br>Commerce, GA 30529<br>Attn: Dawn McCook | Process Store Deposits (Retail) | 8000032165 |
| National City Bank | 632 West Main Street,<br>Mt. Pleasant, PA 15666<br>Attn: Bonnie Wisniewski | Process Store Deposits (Retail) | 658925237 |
| Queenstown Bank of Maryland | 223 Outlet Center Drive,<br>Queenstown, MD 21658<br>Attn: Janet Such | Process Store Deposits (Retail) | 465196601 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| TD Banknorth (formerly Hudson United Bank) | 260 Route 32, Central Valley, NY 10917 Attn: Susan Timpone | Process Store Deposits (Retail) | 3980515531 |
| SunTrust Bank | 1850 US Highway 1 South, St. Augustine, FL 32084 Attn: Afsana Catron | Process Store Deposits (Retail) | 1000049142556 |
| National City Bank | 41325 West 10 Mile Rd., Novi, MI 48375 Attn: Rever Anderson | Process Store Deposits (Retail) | 982178886 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | AP controlled disbursement (with positive pay) (D56) | 152118013977 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository (D56) | 160233250275 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | All outgoing ACH and wires (D56) | 170225138859 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | CC deposits only (D56) | 170225142810 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Wholesale CC & ECP deposits (D56) | 104756690137 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | L/C funding account (D56) | 104756211348 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104756807418 |

| Bank Name | Address | Account Type | Account Number |
|-----------|---------|--------------|----------------|
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104774436497 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104756211355 |
| JP Morgan Chase (formerly Bank One, NA) | 1111 E. Wisconsin Ave., Milwaukee, WI 53201 Attn: Rena Glorioso | Showroom checking account (D56) | 640126702 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Showroom checking account (D56) | 129577849 |
| Fifth Third Bank | Merchandise Mart Plaza, Chicago, IL 60654 Attn: Denise Robinson | Showroom checking account (D56) | 7518739920 |
| Bank of America | 110 East 9th Street C-Lobby #1, Los Angeles, CA 90079 Attn: Rosa C. Valles | Showroom checking account (D56) | 03762-05448 |
| Bank of New York | 260 Madison Ave. (at 39th Street), New York, NY 10016 Attn: Beverly Harris | Showroom checking account (D56) | 630-0978736 |
| Frost National Bank | 102 North Denton Tap Road, Coppell, TX 75019 Attn: Beth Fontenot | Showroom checking account (D56) | 950003018 |
| National City Bank | 116 Allegheny Center, Pittsburgh, PA 15212-5356 Attn: Jim Carter | Showroom checking account (D56) | 658848964 |
| The Bank of Nova Scotia | 44 King Street West, Toronto, ON M5K 1H1 Canada Attn: George Constantinou | CAD lockbox, AP (D56) | 800020405914 |

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller, Esq.
    - and -
700 Louisiana Street, Suite 1600
Houston, Texas 77002-2784
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez, Esq.

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                    :
In re                               :      Chapter 11 Case No.
                                    :
LENOX SALES, INC., et al.           :      08-14679 (ALG)
                                    :
          Debtors.                  :      (Jointly Administered)
                                    :
------------------------------------------------------------x
```

**MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(a), 362(d), 363(b) AND 503(b) OF THE BANKRUPTCY CODE (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE THEIR WORKERS' COMPENSATION PROGRAM AND THEIR INSURANCE PROGRAMS AND (B) PAY ALL OBLIGATIONS IN RESPECT THEREOF AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR <u>AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS</u>**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

        Lenox Sales, Inc. and its affiliated debtors in the above-referenced chapter 11

cases, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"),[1] respectfully represent:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Lenox Sales, Inc. (3270), Lenox Group Inc. (4956), Lenox, Incorporated (8476), D 56, Inc. (0891), FL 56 Intermediate Corp. (4955), Lenox Retail, Inc. (3269), and Lenox Worldwide, LLC (7980).

## BACKGROUND

### General

1. On the date hereof (the "Commencement Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Further, a motion pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for joint administration of the Debtors' chapter 11 cases is pending before this Court.

### The Debtors' Businesses

2. The Debtors are leading designers, marketers, distributors, wholesalers, and retailers of quality tableware, collectibles, and giftware products under the Lenox®, Dansk®, Gorham®, and Department 56® brand names. The Debtors conduct their businesses through two main operating entities, Lenox, Incorporated ("Lenox, Inc.") (together with its wholly owned subsidiaries Lenox Sales, Inc. and Lenox Retail, Inc.) and D 56, Inc. ("D 56").

3. Lenox, Inc. is primarily responsible for the product development and marketing of fine and casual tabletop products, including dinnerware, stemware, serveware, and stainless steel flatware, as well as ceramic, crystal and metal ornaments, jewelry, figurines, and home décor. These products are offered under the Lenox, Dansk, and Gorham brands as well as various other licensed brands. The Lenox brand of fine dinnerware is the most widely recognized of its kind in the U.S. market, and has been chosen as the White House china for United States Presidents for nearly a century.

4.     D 56 is a leader in the gift, collectible, and holiday decorating industry, providing the Village Series of nostalgic collectible lighted ceramic buildings and related accessories, the Snowbabies line of figurines, other lines of collectables, and giftware

5.     The Debtors sell their products through three principal marketing and sales channels: wholesale, retail, and consumer direct.  The Debtors' wholesale channel includes department stores, large specialty retailers, general merchandise chains, national chains and clubs, small independent specialty retailers, and other wholesale accounts.  The Debtors' retail sales channel includes 30 retail stores operated in 14 states.  Finally, the Debtors utilize various methods of consumer direct marketing, which is overseen by Lenox, Inc., to sell their products, including (a) traditional direct-to-consumer methods, such as media advertising, direct mail, and telemarketing, (b) catalogs, and (c) the Debtors' various Internet sites, www.lenox.com, www.dansk.com, and www.department56.com.

6.     The Debtors own or lease office, manufacturing, warehouse, and distribution facilities across the country and maintain two overseas offices for product sourcing functions in China.  In addition, the Debtors lease a number of retail stores and nine D 56 and Lenox showrooms within the United States, including two in New York City.  The Debtors' flagship New York City Lenox showroom is located on Madison Avenue near other Tabletop and Gift Brands' trade showrooms.  The Debtors currently employ approximately 1,800 employees.

7.     As of October 25, 2008, the Debtors' unaudited consolidated financial statements reflected assets totaling approximately $264 million and liabilities totaling approximately $238 million.

## JURISDICTION

8.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

9.      In connection with the operation of their businesses, the Debtors maintain a workers' compensation program and various general liability, property, and other insurance programs and policies (collectively, the "Insurance Programs") through several different insurance carriers (the "Insurance Carriers").  Annexed hereto as Exhibit A is a list of each of the Insurance Programs, disclosing with respect to each Insurance Program, as applicable: the Insurance Carrier, the type of coverage, the coverage period, and the aggregate annual premium due thereunder.[2]

10.      By this Motion, the Debtors request authority, pursuant to sections 105(a), 362(d), 363(b), and 503(b) of the Bankruptcy Code and Bankruptcy Rules 4001, 6003 and 6004 to (i) continue their Insurance Programs on an uninterrupted basis, (ii) honor, in the Debtors' discretion, their undisputed prepetition obligations thereunder (the "Insurance Obligations"), and (iii) modify the automatic stay solely and for the limited purpose of permitting employees with claims under the Workers' Compensation Program to proceed with their claims in accordance with such program in the appropriate judicial or administrative forum.

11.      As part of their cash management system, the Debtors maintain bank accounts at certain banks and financial institutions (the "Banks"), including, but not limited to,

---

[2] In addition to the Insurance Programs listed on Exhibit A, the Debtors maintain numerous other insurance policies and programs with respect to employee benefits, such as health, dental, disability, and life insurance.  These programs and policies are addressed in a separate motion pertaining to the Debtors' employee wage policies and benefit programs and filed contemporaneously herewith.

the Banks listed on Exhibit B annexed hereto and any other bank that is approved as part of the Debtors' cash management system. The Debtors draw upon funds in their accounts to satisfy their obligations arising from the Insurance Programs. In addition to the relief requested above, the Debtors request that the Court authorize the Banks to receive, honor, process, and pay any and all checks drawn, or electronic fund transfers requested or to be requested on the Debtors' Banks, to the extent that such checks or electronic fund transfers relate to any of the foregoing.

## BASIS FOR RELIEF REQUESTED

### The Debtors' Insurance Programs and Other Obligations

### A. The Workers' Compensation Program

12.   Under the laws of the various states in which they operate, the Debtors are required to maintain workers' compensation policies and programs to provide their employees with workers' compensation benefits for claims arising from or related to their employment with the Debtors. The Debtors maintain workers' compensation coverage through a program (the "Workers' Compensation Program") provided by Liberty Insurance Corporation ("Liberty"). The Workers' Compensation Program covers the Debtors' statutory obligations to maintain workers' compensation programs in each of the jurisdictions in which the Debtors operate (but excluding a monopolistic jurisdiction).[3]

13.   Under the Workers' Compensation Program, the Debtors pay an annual premium to Liberty that is calculated based upon the Debtors' projected payroll and historic loss rates. The annual premium is paid at the inception of the policy period. The Debtors are responsible for paying a deductible under the Workers' Compensation Program of $250,000 on a per claim occurrence. Under the Workers' Compensation Program, insurance coverage is

---

[3] "Monopolistic jurisdictions" require the Debtors to provide workers' compensation coverage through specific state-run insurance pools. The monopolistic jurisdiction in which the Debtors operate is the state of Ohio.

provided by Liberty for workers' compensation claims subject to policy limits, with a per incident deductible of $250,000. The Debtors utilize the services of Wells Fargo Insurance Services ("WFIS") to administer the program. WFIS processes and pays all approved claims and also pays amounts billed directly by doctors and medical facilities. The Debtors are obligated to pay the program premium and reimburse WFIS up to $250,000 per approved claim for the loss payments WFIS makes in respect of coverage deductibles in accordance with the terms of the Workers' Compensation Program. For the period from January 1, 2008 through and including January 1, 2009, the total premium for the Workers' Compensation Program totaled $339,041. As of the Commencement Date, the Debtors have no amounts outstanding to Liberty. The Debtors have provided a Letter of Credit totaling $3,720,000 for the benefit of Liberty as collateral for the Debtors' obligation to reimburse Liberty under policies, including the Workers' Compensation Program.

14.     The Debtors have maintained this policy with the Liberty since the acquisition of Lenox, Incorporated by D 56 from Brown Forman Corporation in September 2005. Prior to this period, Lenox, Incorporated maintained a policy with Liberty, and D 56 maintained a policy with Vigilant Insurance Company, a subsidiary of the Chubb Group of Insurance Companies. While these policies have been replaced with the Workers' Compensation Program through Liberty for current employees, the Debtors are responsible for claims that accrued under the legacy policies before September 2005. Currently, there are $475,000 of open claims under the legacy policies, in addition to $846,000 of open claims under the current Workers' Compensation Program. By this motion, the Debtors seek authority to pay all open claims for which they are determined to be liable, including claims arising under the legacy

policies and the current Workers' Compensation Program.[4]  The Debtors have provided a Letter

of Credit totaling $1,150,000 for the benefit of Liberty as collateral for the Debtors' obligation to

reimburse Liberty under the legacy Workers' Compensation policy.  Additionally the Debtors

have provided a Letter of Credit totaling $200,000 for the benefit of Vigilant as collateral for the

Debtors' obligation to reimburse Vigilant under the legacy Workers' Compensation policy.

Finally, the Debtors also have been required to provide additional collateral in the form of cash

deposits to both Liberty and Vigilant totaling $185,000 and $60,000 respectively.

**B.**     **Liability and Property Insurance Programs**

15.     The Debtors maintain various liability and property-related insurance

Programs, which provide the Debtors with insurance coverage for liabilities relating to, among

other things, general liability, primary property liability, automobile liability, cargo liability,

employment practices liability, directors and officers liability, crime liability, special risk, and

umbrella or excess liability insurance (collectively, the "Liability and Property Insurance

Programs").  Continuation of these policies is essential to the ongoing operation of the Debtors'

businesses.

16.     The Debtors are required to pay premiums under the Liability and

Property Insurance Programs based upon fixed rates established by the applicable Insurance

Carrier.  For example, the Debtors' primary property insurance coverage is provided by

Affiliated FM, requiring an annual premium of $288,273, while their general liability insurance

coverage is provided by Liberty Mutual, requiring an annual premium of $168,360.  These

policies have a term which began on January 1, 2008 and runs through January 1, 2009.   The

Debtors pay certain of these premiums in cash, either directly to the Insurance Carriers or to their

---

[4] As the legacy policies have expired, there are no premium obligations associated therewith.

insurance broker, while a number of the premiums under the Debtors' Liability and Property Insurance Programs are financed by a third party financing company.

17.     Specifically, six of the Debtors' policies with respect to the Liability and Property Insurance Programs are financed by Imperial A.I. Credit Companies ("AICCO") pursuant to a finance agreement with AICCO (the "AICCO Agreement").[5]  Under the AICCO Agreement, AICCO pays the premiums for each respective policy at the policy's inception (a total of $637,748). The Debtors reimbursed AICCO with an initial payment of $127,551 and thereafter paid nine monthly installments to AICCO of $58,060.  As of the Commencement Date, the Debtors have no known amounts outstanding to AICCO.

18.     The aggregate annual premium for the Liability and Property Insurance Programs is approximately $1,340,000.  As of the Commencement Date, the Debtors have fully paid all obligations in connection with policy premiums for the existing Liability and Property Insurance Programs.  In addition, the Debtors are required to pay various deductibles for claims asserted under the respective policies.  The amounts of the applicable deductibles are set forth in Exhibit A hereto.  As of the Commencement Date, the Debtor is unable to accurately estimate the aggregate outstanding amount with respect to deductibles under the Liability and Property Insurance Programs since, in the normal course of operating its business, many claims made fail to assert specific dollar damages and are ultimately resolved for nominal amounts.  Deductibles for claims relating to the period prior to the Commencement Date may continue to arise in the ordinary course of business.  Accordingly, the Debtors are seeking the Court's authorization to pay such undisputed claims, in their discretion, as they come due.

---

[5] The financed policies include property liability, cargo & transportation liability, umbrella liability, internet liability, media/advertising liability, and international package liability.

## Insurance Broker

19. The Debtors employ an insurance broker, Wells Fargo Insurance Services (the "Insurance Broker"), to assist them with the procurement and negotiation of their Insurance Programs and the processing of claims. In certain circumstances, the Insurance Broker remits payment to the Insurance Carriers on behalf of the Debtors. The Insurance Broker is paid a commission by the Insurance Carriers, not by the Debtors. Accordingly, the Debtors believe there are no amounts accrued and outstanding with respect to the Insurance Broker.

## Debtors Request Authority to (i) Continue the Insurance Programs and (ii) Pay All Obligations in Respect Thereof

20. Pursuant to sections 105(a), 362(d), 363(b), and 503(b) of the Bankruptcy Code and Bankruptcy Rules 4001 and 6004, the Debtors seek authority to continue, in their sole discretion, the Insurance Programs on an uninterrupted basis in accordance with the same practices and procedures as were in effect prior to the Commencement Date. Furthermore, the Debtors seek authority to pay, in their sole discretion, all undisputed premiums, deductibles, administrative fees, and other obligations arising under the Insurance Programs, as applicable, that were or are due and payable, or related to the period before or after, the Commencement Date.

21. Pursuant to section 503(b)(1) of the Bankruptcy Code, a debtor may incur, and the court, after notice and a hearing, shall allow as administrative expenses, among other things, "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1). In addition, pursuant to section 363(b) of the Bankruptcy Code, a debtor may, in the exercise of its sound business judgment and after notice and a hearing, use property of the estate outside of the ordinary course of business. § 363(b). The Debtors submit that the use of estate

funds for payment of the Insurance Obligations is permitted by sections 503(b)(1) and 363(b) of the Bankruptcy Code as necessary costs of preserving the estate.

22.     Furthermore, to supplement these explicit powers, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). "Under 11 U.S.C. § 105 the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing Ionosphere Clubs, 98 B.R. at 177).

23.     In a long line of well-established cases, federal courts consistently have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. See, e.g., Miltenberger v. Logansport C. & S.W. Ry. Co., 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); Dudley v. Mealey, 147 F.2d 268 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases); Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.), 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

24.     The "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. See In re Lehigh &

New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize the payment of pre-petition claims if such payment was essential to the continued operation of the debtor); In re Boston & Me. Corp., 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation).  The doctrine is frequently invoked early in a chapter 11 case, particularly in connection with the payment of prepetition claims.  The rationale for the doctrine of necessity rule is consistent with the paramount goal of chapter 11: "facilitating the continued operation and rehabilitation of the debtor." Ionosphere Clubs, 98 B.R. at 176.  Accordingly, pursuant to section 105(a) of the Bankruptcy Code, this Court is empowered to grant the relief requested herein.

25.     Moreover, numerous courts in this jurisdiction have granted similar relief in other chapter 11 cases.  See, e.g., In re Steve & Barry's Manhattan LLC, et al., Case No. 08-12579 (ALG) (Bankr. S.D.N.Y. Jul. 30, 2008), (Bankr. S.D.N.Y. Jul. 11, 2008); In re Lexington Precision, et al., Case No. 08-11153 (MG) (Bankr. S.D.N.Y. Apr. 22, 2008); In re Fortunoff Fine Jewelry and Silverware, LLC, Case No. 08-10353 (JMP) (Bankr. S.D.N.Y. Feb. 29, 2008), (Bankr. S.D.N.Y. Feb. 5, 2008); In re PRC, LLC, Case No. 08-10239 (MG) (Bankr. S.D.N.Y. Jan. 25, 2008); Silicon Graphics, Inc., et al., Case No. 06-10977 (BRL)  (Bankr. S.D.N.Y May 31, 2006), (Bankr. S.D.N.Y May 10, 2006); In re Atkins Nutritionals, Inc., et al., Case No. 05-15913 (ALG) (Bankr. S.D.N.Y. Aug. 1, 2005).

**Continuing the Insurance Programs and Paying All Obligations in Respect Thereof Is Necessary to Preserve the Value of the Debtors' Estates**

26.     The nature of the Debtors' businesses and the extent of their operations make it essential for the Debtors to maintain their Insurance Programs on an uninterrupted basis. The nonpayment of any premiums, deductibles, or related fees under one of the Insurance

Programs could result in one or more of the Insurance Carriers declining to renew the Debtors' insurance policies or refusing to enter into new insurance agreements with the Debtors in the future. If the Insurance Programs lapse without renewal, the Debtors could be exposed to substantial liability for personal and/or property damages to the detriment of all parties in interest. Furthermore, the Debtors would then be required to obtain replacement policies on an expedited basis at a significant cost to the estates.

27. Moreover, the Insurance Programs are vital to all aspects of the Debtors' operations. Applicable state law mandates that the Debtors maintain workers' compensation coverage for their employees. Failure by the Debtors to pay the premiums associated with their Workers' Compensation Programs would jeopardize their coverage and expose the Debtors to substantial liability in fines by various state workers' compensation boards.

28. In addition, the risk that eligible workers' compensation claimants will not receive timely payment for prepetition employment-related injuries could have a devastating effect on the financial well-being and morale of the Debtors' current employees. Departures by employees at this critical time may result in a severe disruption of the Debtors' businesses with a substantially adverse impact on the Debtors, the value of their assets and their businesses. The retention of the Debtors' qualified and dedicated senior management also is linked to the continued effectiveness of the directors' and officers' liability insurance policies.

29. Finally, pursuant to the guidelines established by the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), the Debtors are obligated to remain current with respect to their primary Insurance Programs. Therefore, the continuation of the Insurance Programs, on an uninterrupted basis, and the payment of all undisputed prepetition and postpetition Insurance Obligations arising under the Insurance

Programs, are essential to the preservation of the Debtors' businesses and the value of the Debtors' estates for all creditors. Accordingly, the Debtors are seeking the Court's authorization to continue the Insurance Programs and related policies as such practices, programs, and policies were in effect as of the Commencement Date and authorize, but not direct, the Debtors to pay any undisputed prepetition claims arising under the Insurance Program as they come due.

30.     To the extent any Insurance Program or related agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtors do not, at this time, seek to assume any such contract. Accordingly, if the Court authorizes the payments described above, such payments should not be deemed to constitute a postpetition assumption or adoption of the programs, policies, or agreements as executory contracts pursuant to section 365 of the Bankruptcy Code. The Debtors are in the process of reviewing these matters and reserve all of their rights under the Bankruptcy Code with respect thereto. Moreover, authorization to pay all amounts on account of the Insurance Obligations shall not affect the Debtors' right to contest the amount or validity of these obligations.

### The Automatic Stay Should Be Waived for Workers' Compensation Claims

31.     Section 362(a) of the Bankruptcy Code, commonly known as the "automatic stay," operates to stay

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1). Section 362, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." § 362(d)(1).

32.    To the extent the Debtors' employees hold valid workers' compensation claims, the Debtors seek authorization under section 362(d) of the Bankruptcy Code to permit these employees to proceed with their claims in the appropriate judicial or administrative forum. The Debtors believe cause exists to modify the automatic stay because prohibiting the Debtors' employees from proceeding with their claims could have a detrimental effect on the financial well-being and morale of such employees and lead to their departure.  As discussed above, such departures could cause a severe disruption in the Debtors' businesses to the detriment of all parties in interest.

33.    To this end, and solely with respect to workers' compensation claims covered under the Workers' Compensation Programs, the Debtors seek to modify the automatic stay as it relates to workers' compensation claims; provided, however, that such claims are pursued in accordance with the Workers' Compensation Program and recoveries, if any, are limited to the proceeds from the applicable Workers' Compensation Program.  All other claims, including any claims relating to matters covered by other Insurance Programs, will remain subject to the automatic stay.  To effectuate the aforementioned modification of the automatic stay, the Debtors request that the Court waive the stay of a judgment under Bankruptcy Rule 7062 and the requirements under Bankruptcy Rule 9014 relating to contested matters with respect to claims under the Workers' Compensation Programs.

34.    Pursuant to this Motion, the Debtors do not seek a waiver, termination, or modification of the automatic stay with respect to any other claims or matters.

### Applicable Banks Should Be Authorized to Honor and Pay Checks Issued and Make Other Transfers to Pay Insurance Obligations

35.    As a result of the commencement of the Debtors' chapter 11 cases, and in the absence of an order of the Court providing otherwise, the Banks may dishonor or reject

Debtors' checks and electronic fund transfers with respect to the Insurance Obligations.

Therefore, the Debtors request that the Court authorize the Banks listed on Exhibit B annexed

hereto to, and any other bank the Debtors are authorized to do business with under the Cash

Management Motion[6] to process, honor, and pay all prepetition and postpetition checks issued or

to be issued, and electronic fund transfers requested or to be requested, by the Debtors with

respect to their Insurance Obligations. The Debtors also seek authority to issue new postpetition

checks or effect new electronic fund transfers with respect to the Insurance Obligations to

replace any prepetition checks or electronic fund transfer requests that may be dishonored or

rejected.

36.     The Debtors represent that each of these checks or transfers is or will be

drawn on accounts authorized by the Court under the Cash Management Motion, and can be

readily identified as relating directly to payments under the Insurance Programs. Accordingly,

the Debtors believe that prepetition checks and transfers other than those relating to the

Insurance Programs will not be honored inadvertently.

37.     Furthermore, the Debtors seek a waiver of the notice requirements under

Bankruptcy Rule 6004(a) and the stay of the order authorizing the use, sale, or lease of property

under Bankruptcy Rule 6004(h).

### NOTICE

38.     No trustee, examiner, or statutory creditors' committee has been appointed

in these chapter 11 cases. The Debtors have served notice of this Motion on (i) the Office of the

---

[6] Contemporaneously herewith the Debtors filed the Motion for an Order Pursuant to Sections 105(a), 345(b), 363(b), 363(c) and 364(a) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004 (A) Authorizing the Debtors to (i) Continue Using Existing Centralized Cash Management System, (ii) Honor Certain Prepetition Obligations Related to the Use of the Cash Management System, and (iii) Maintain Existing Bank Accounts and Business Forms; and (B) Extending the Time to Comply With Section 345(b) of the Bankruptcy Code (the "Cash Management Motion").

United States Trustee for the Southern District of New York (Attn: Susan D. Golden), (ii) Paul, Hastings, Janofsky & Walker LLP, 600 Peachtree Street, N.E., 24th Floor, Atlanta, Georgia 30308 (Attn: Jesse H. Austin, III, Esq.) and Park Avenue Tower, 75 East 55th Street, First Floor, New York, New York 10022 (Attn: Leslie A. Plaskon, Esq.), as counsel for UBS AG, Stamford Branch, the administrative agent for the Debtors' prepetition secured revolving loan lenders and as counsel for the Debtors' proposed postpetition lenders, (iii) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022 (Attn: Adam C. Harris, Esq.) as counsel for The Bank of New York Mellon, the administrative and collateral agent for the Debtors' prepetition secured term loan lenders, (iv) the Debtors' 30 largest unsecured creditors (on a consolidated basis), and (v) the Pension Benefit Guaranty Corporation, Distress Terminations, Dept. of Insurance Supervision & Compliance, Suite 270, 1200 K Street NW, Washington, DC 20005-4026 (Attn: Sarah Eagle, Esq.). In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided.

39.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just and appropriate.

Dated: November 24, 2008
New York, New York

Respectfully submitted,

By: /s/ Alfredo R. Pérez
Alfredo R. Pérez

Harvey R. Miller, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
- and -
Alfredo R. Pérez, Esq.
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002-2784
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511

Attorneys for Debtors and Debtors in Possession

# Exhibit A

## Insurance Programs

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium | Deductible |
|---|---|---|---|---|---|
| Workers' Compensation | Liberty Insurance Corp. | WA7-64D-435745-058<br>WC7-641-435745-068 | 1/1/08 – 12/31/08 | $ 339,041 | $ 250,000 |
| General Liability | Liberty Mutual | TB2-641-435745-078 | 1/1/08 - 12/31/08 | $ 168,360 | $ 100,000 |
| Automobile | Liberty Mutual | AS2-641-435745-088 | 1/1/08 - 12/31/08 | $ 22,136 | $ 500 |
| Property | Affiliated FM | EI294 | 1/1/08 - 12/31/08 | $ 288,273 | $ 100,000 |
| Cargo / Transportation | Travelers | OC 01800089 | 1/1/08 - 12/31/08 | $ 120,828 | $ 10,000 |
| Umbrella | Chubb Insurance Company /<br>Crum & Forster | 79733346 /<br>5500120947 | 1/1/08 - 12/31/08 | $ 136,523 | - - - |
| Internet Liability | American International Specialty | 007076208 | 1/1/08 - 12/31/08 | $ 62,939 | $ 250,000 |
| Media / Advertising | National Casualty Company | LS 041211 | 12/31/07 - 12/31/08 | $ 17,558 | $ 25,000 |
| International Package | Chubb Insurance Company | 35384218 | 1/1/08 - 12/31/08 | $ 11,627 | - - - |
| D&O Liability | Great American /<br>Ironshore /<br>XL Specialty /<br>XL Specialty | DOL 5592541 /<br>IRH 008980702001 /<br>ELU 100628-07 /<br>ELU 100631-07 | 10/7/08 - 10/7/09 | $ 397,650 | $ - - - (non-indemnifiable claims)<br>$ 250,000 (indemnifiable / securities) |
| Fiduciary | Federal Insurance Company (Chubb) | 81377385 | 10/7/08 - 10/7/09 | $ 19,193 | $ - - - (voluntary settlement)<br>$ 100,000 (fiduciary settlement) |
| Commercial Crime | National Union Fire Insurance Co. (AIG) | 164 14 06 | 10/7/08 - 10/7/09 | $ 16,520 | $ 25,000 |
| Employed Lawyers | National Union Fire Insurance Co. (AIG) | 164 13 02 | 10/7/08 - 10/7/09 | $ 6,985 | $ - - - (non-indemnifiable claims)<br>$ 50,000 |

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium | Deductible |
|---|---|---|---|---|---|
| Special Risk | Federal Insurance Company (Chubb) | 6802334 | 10/7/07 - 10/7/10 | $ 6,398 | $ - - - |
| Employment Practices | St. Paul Mercury (Travelers) | EC 06300956 | 10/7/07 - 12/31/08 | $ 33,400 | $ 100,000<br>$ 250,000 (mass or class action) |
| Pollution Liability | American International | PLS1467647 | 9/1/05 - 9/1/10 | $ 27,147 | $ 50,000 |

## Exhibit B

## Bank Accounts

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Bank of America - Shanghai | 18th Floor, S. Tower, 528 Pudong Rd South Shanghai, China 200120 Attn: Nico Zhu | Shanghai Representitive Office (Lenox Worldwide, LLC) | 00010841015 |
| Canadian Bank of Commerce | 180 Laird Dr., Toronto, ON, M4G 3V7 Canada Attn: Malcolm Subit | Canadian Operating Account (Wholesale) | 5500613 |
| M & T Bank | 17301 Valley Mall Drive, Hagerstown, MD 21740 Attn: Kelly Stine | Petty Cash (Wholesale) | 2660005105 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lenox Collections - Cash Deposits (ZBA) | 2100010070766 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lenox Collections - Refunds (ZBA) | 2079950071053 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Accounts Payable (Corporate) | 2079950061542 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | OTC Deposits (Corporate) | 2000030727995 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lockbox (Corporate) | 2100012019411 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Concentration (Corporate) | 2000032079010 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Payroll (Corporate) | 2000001684180 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Master Disbursements (Corporate) | 2000028329648 |
| Wachovia Bank | 111 Westminster Street<br>Mail stop: RI1-102-16-01<br>Providence, RI 02903<br>Attn: Dan Butler, Senior VP | ACH/Wire Payments (Corporate) | 2000028330213 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Employee Credit Card Sales (Corporate) | 2000032078244 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Employee Funds (Kinston) | 2044740008287 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | OTC Deposits-Pomona (Wholesale) | 2000031708971 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | US Customs (Wholesale) | 2100011972009 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Payroll – New (Corporate) | 2079951060649 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Process Lenox Credit Card Cash and Misc Deposits such as NSF Checks (Retail) | 2000031735708 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Process Dansk DTC Transfers (Retail) | 2100012021069 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Process Store Deposits – Global (Retail) | 2000109855837 |
| National City Bank | 12010 Church St., Birch Run, MI 48415 Attn: Susan Williams | Process Store Deposits (Retail) | 967336751 |
| Capital One Bank (formerly North Fork Bank) | 140 E. Main St., Riverhead, NY 11901 Attn: Joanie Scomordella | Process Store Deposits (Retail) | 3724111517 |
| Sevier County Bank | 3260 Parkway, Pigeon Forge, TN 37863 Attn: Angela Mora | Process Store Deposits (Retail) | 27318628 |
| Northeast Georgia Bank | 30990 Hwy 441 South, Commerce, GA 30529 Attn: Dawn McCook | Process Store Deposits (Retail) | 8000032165 |
| National City Bank | 632 West Main Street, Mt. Pleasant, PA 15666 Attn: Bonnie Wisniewski | Process Store Deposits (Retail) | 658925237 |
| Queenstown Bank of Maryland | 223 Outlet Center Drive, Queenstown, MD 21658 Attn: Janet Such | Process Store Deposits (Retail) | 465196601 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| TD Banknorth (formerly Hudson United Bank) | 260 Route 32, Central Valley, NY 10917 Attn: Susan Timpone | Process Store Deposits (Retail) | 3980515531 |
| SunTrust Bank | 1850 US Highway 1 South, St. Augustine, FL 32084 Attn: Afsana Catron | Process Store Deposits (Retail) | 1000049142556 |
| National City Bank | 41325 West 10 Mile Rd., Novi, MI 48375 Attn: Rever Anderson | Process Store Deposits (Retail) | 982178886 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | AP controlled disbursement (with positive pay) (D56) | 152118013977 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository (D56) | 160233250275 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | All outgoing ACH and wires (D56) | 170225138859 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | CC deposits only (D56) | 170225142810 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Wholesale CC & ECP deposits (D56) | 104756690137 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | L/C funding account (D56) | 104756211348 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104756807418 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104774436497 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104756211355 |
| JP Morgan Chase (formerly Bank One, NA) | 1111 E. Wisconsin Ave., Milwaukee, WI 53201 Attn: Rena Glorioso | Showroom checking account (D56) | 640126702 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Showroom checking account (D56) | 129577849 |
| Fifth Third Bank | Merchandise Mart Plaza, Chicago, IL 60654 Attn: Denise Robinson | Showroom checking account (D56) | 7518739920 |
| Bank of America | 110 East 9th Street C-Lobby #1, Los Angeles, CA 90079 Attn: Rosa C. Valles | Showroom checking account (D56) | 03762-05448 |
| Bank of New York | 260 Madison Ave. (at 39th Street), New York, NY 10016 Attn: Beverly Harris | Showroom checking account (D56) | 630-0978736 |
| Frost National Bank | 102 North Denton Tap Road, Coppell, TX 75019 Attn: Beth Fontenot | Showroom checking account (D56) | 950003018 |
| National City Bank | 116 Allegheny Center, Pittsburgh, PA 15212-5356 Attn: Jim Carter | Showroom checking account (D56) | 658848964 |
| The Bank of Nova Scotia | 44 King Street West, Toronto, ON M5K 1H1 Canada Attn: George Constantinou | CAD lockbox, AP (D56) | 800020405914 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------------x
                                          :
In re                                     :        Chapter 11 Case No.
                                          :
LENOX SALES, INC., et al.                 :        08-14679 (ALG)
                                          :
                Debtors.                  :        (Jointly Administered)
                                          :
--------------------------------------------------------------x
```

### ORDER PURSUANT TO SECTIONS 105(a), 362(d), 363(b) AND 503(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 4001(d) AND 6004(a) (I) AUTHORIZING DEBTORS TO (A) CONTINUE THEIR WORKERS' COMPENSATION PROGRAM AND THEIR INSURANCE PROGRAMS AND (B) PAY ALL OBLIGATIONS IN RESPECT THEREOF AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND <u>PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS</u>

Upon the motion, dated November 24, 2008 (the "<u>Motion</u>"), of Lenox Sales, Inc.

and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in

possession (collectively, the "<u>Debtors</u>"),[1] for an order, pursuant to sections 105(a), 362(d),

363(b), and 503(b) of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>")

and Rules 4001, 6003 and 6004 of the Federal Rules of Bankruptcy Procedure, (i) authorizing

the Debtors to (a) continue their workers' compensation programs (the "<u>Workers' Compensation</u>

<u>Programs</u>") and their liability, product, property, and other insurance programs, including,

without limitation, all of the policies set forth on Exhibit A annexed hereto (together with the

Workers' Compensation Programs, the "<u>Insurance Programs</u>"), (b) pay all prepetition obligations

in respect thereof, on an uninterrupted basis, consistent with their practices in effect prior to the

commencement of the Debtors' chapter 11 cases, including the payment of all premiums, claims,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Lenox Sales, Inc. (3270), Lenox Group Inc. (4956), Lenox, Incorporated (8476), D 56, Inc. (0891), FL 56 Intermediate Corp. (4955), Lenox Retail, Inc. (3269), and Lenox Worldwide, LLC (7980).

deductibles, administrative expenses, and all other charges incurred, whether relating to the

period prior to or after the commencement of these chapter 11 cases (collectively, "Insurance

Obligations"), and (c) modify the automatic stay solely and for the limited purpose of permitting

employees with claims under the Workers' Compensation Program to proceed with their claims

in accordance with such program in the appropriate judicial or administrative forum; and (ii)

authorizing certain banks and financial institutions (the "Banks"), including, but not limited to,

the Banks listed on Exhibit B annexed hereto, to honor and process checks and transfers related

to such obligations, all as more fully set forth in the Motion; and the Court having jurisdiction to

consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and

the Standing Order of Referral of Cases to Bankruptcy Judges of the District Court for the

Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of

the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C.

§ 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Motion having been provided to (i) the Office of the United States

Trustee for the Southern District of New York (Attn: Susan D. Golden), (ii) Paul, Hastings,

Janofsky & Walker LLP, 600 Peachtree Street, N.E., 24th Floor, Atlanta, Georgia 30308 (Attn:

Jesse H. Austin, III, Esq.) and Park Avenue Tower, 75 East 55th Street, First Floor, New York,

New York 10022 (Attn: Leslie A. Plaskon, Esq.), as counsel for UBS AG, Stamford Branch, the

administrative agent for the Debtors' prepetition secured revolving loan lenders and as counsel

for the Debtors' proposed postpetition lenders, (iii) Schulte Roth & Zabel LLP, 919 Third

Avenue, New York, New York 10022 (Attn: Adam C. Harris, Esq.) as counsel for The Bank of

New York Mellon, the administrative and collateral agent for the Debtors' prepetition secured

term loan lenders, (iv) the Debtors' 30 largest unsecured creditors (on a consolidated basis), and

(v) the Pension Benefit Guaranty Corporation, Distress Terminations, Dept. of Insurance

Supervision & Compliance, Suite 270, 1200 K Street NW, Washington, DC 20005-4026 (Attn:

Sarah Eagle, Esq.), and it appearing that no other or further notice need be provided; and the

Court having determined that the relief requested in the Motion being in the best interests of the

Debtors, their creditors, and all parties in interest; and the Court having determined that the legal

and factual bases set forth in the Motion establish just cause for the relief granted herein; and

upon all of the proceedings had before the Court and after due deliberation and sufficient cause

appearing therefor, it is hereby

      ORDERED that the Motion is granted; and it is further

      ORDERED that the Debtors are authorized and empowered to maintain their

Insurance Programs without interruption, on the same basis, and in accordance with the same

practices and procedures that were in effect prior to the commencement of the Debtors' chapter

11 cases; and it is further

      ORDERED that the Debtors are authorized, but not required, to pay, in their sole

discretion, all Insurance Obligations that are or become payable, including, without limitation, all

premiums, claims, deductibles, excess, retrospective adjustments, administrative and brokers'

fees, and all other obligations arising under the Insurance Programs, including those Insurance

Obligations that (i) were due and payable or related to the period prior to the commencement of

these chapter 11 cases, without further order of the Court, and (ii) are or become due and payable

or related to the period after the commencement of these chapter 11 cases; and it is further

      ORDERED that, pursuant to section 362(d) of the Bankruptcy Code, to the extent

any of the Debtors' employees hold claims under the Debtors' Workers' Compensation Program,

these employees are authorized, at the Debtors' discretion, to proceed with their workers'

compensation claims through and including the collection of any judgment in the appropriate judicial or administrative forum under the Workers' Compensation Program; provided, that the prosecution of such claims is in accordance with the Workers' Compensation Program and the recoveries are limited to the proceeds available under the Workers' Compensation Program; and it is further

ORDERED that the Banks, including, but not limited to those on the list annexed hereto as Exhibit B, are authorized to honor, process, and pay, to the extent of funds on deposit, any and all prepetition checks or electronic fund transfer requests issued by the Debtors in respect of any Insurance Obligation, whether pre- or post-petition; and it is further

ORDERED that any Bank, including, but not limited to, those on the list annexed hereto as Exhibit B, may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Commencement Date should be honored pursuant to this Order, and such Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein; and it is further

ORDERED that nothing in this Order or the Motion shall be construed as prejudicing the rights of the Debtors to dispute or contest the amount of or basis for any claims against the Debtors in connection with or relating to the Debtors' Insurance Programs; and it is further

ORDERED that, to the extent that any Insurance Program or any related contract or agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, neither this Order nor any payments made in accordance with this Order shall constitute the postpetition assumption of any such Insurance Program, contract, or related agreement pursuant to section 365 of the Bankruptcy Code; and it is further

ORDERED that Bankruptcy Rule 6003(b) has been satisfied; and it is further

ORDERED that notwithstanding any applicability of Rules 6004(h), 7062, or 9014 of the Bankruptcy Rules, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that notice of the Motion as provided herein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rules 4001(d) and 6004(a) are waived; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: November ___, 2008
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

# Exhibit A

## Insurance Programs

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium | Deductible |
|---|---|---|---|---|---|
| Workers' Compensation | Liberty Insurance Corp. | WA7-64D-435745-058 WC7-641-435745-068 | 1/1/08 – 12/31/08 | $ 339,041 | $ 250,000 |
| General Liability | Liberty Mutual | TB2-641-435745-078 | 1/1/08 - 12/31/08 | $ 168,360 | $ 100,000 |
| Automobile | Liberty Mutual | AS2-641-435745-088 | 1/1/08 - 12/31/08 | $ 22,136 | $ 500 |
| Property | Affiliated FM | EI294 | 1/1/08 - 12/31/08 | $ 288,273 | $ 100,000 |
| Cargo / Transportation | Travelers | OC 01800089 | 1/1/08 - 12/31/08 | $ 120,828 | $ 10,000 |
| Umbrella | Chubb Insurance Company / Crum & Forster | 79733346 / 5500120947 | 1/1/08 - 12/31/08 | $ 136,523 | - - - |
| Internet Liability | American International Specialty | 007076208 | 1/1/08 - 12/31/08 | $ 62,939 | $ 250,000 |
| Media / Advertising | National Casualty Company | LS 041211 | 12/31/07 - 12/31/08 | $ 17,558 | $ 25,000 |
| International Package | Chubb Insurance Company | 35384218 | 1/1/08 - 12/31/08 | $ 11,627 | - - - |
| D&O Liability | Great American / Ironshore / XL Specialty / XL Specialty | DOL 5592541 / IRH 008980702001 / ELU 100628-07 / ELU 100631-07 | 10/7/08 - 10/7/09 | $ 397,650 | $ - - - (non-indemnifiable claims) $ 250,000 (indemnifiable / securities) |
| Fiduciary | Federal Insurance Company (Chubb) | 81377385 | 10/7/08 - 10/7/09 | $ 19,193 | $ - - - (voluntary settlement) $ 100,000 (fiduciary settlement) |
| Commercial Crime | National Union Fire Insurance Co. (AIG) | 164 14 06 | 10/7/08 - 10/7/09 | $ 16,520 | $ 25,000 |
| Employed Lawyers | National Union Fire Insurance Co. (AIG) | 164 13 02 | 10/7/08 - 10/7/09 | $ 6,985 | $ - - - (non-indemnifiable claims) $ 50,000 |

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium | Deductible |
|---|---|---|---|---|---|
| Special Risk | Federal Insurance Company (Chubb) | 6802334 | 10/7/07 - 10/7/10 | $ 6,398 | $ - - - |
| Employment Practices | St. Paul Mercury (Travelers) | EC 06300956 | 10/7/07 - 12/31/08 | $ 33,400 | $ 100,000 <br> $ 250,000 (mass or class action) |
| Pollution Liability | American International | PLS1467647 | 9/1/05 - 9/1/10 | $ 27,147 | $ 50,000 |

NY2:\1930395\15\15D$315!.DOC\58519.0003

# Exhibit B

## Bank Accounts

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Bank of America - Shanghai | 18th Floor, S. Tower, 528 Pudong Rd South Shanghai, China 200120 Attn: Nico Zhu | Shanghai Representitive Office (Lenox Worldwide, LLC) | 00010841015 |
| Canadian Bank of Commerce | 180 Laird Dr., Toronto, ON, M4G 3V7 Canada Attn: Malcolm Subit | Canadian Operating Account (Wholesale) | 5500613 |
| M & T Bank | 17301 Valley Mall Drive, Hagerstown, MD 21740 Attn: Kelly Stine | Petty Cash (Wholesale) | 2660005105 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lenox Collections - Cash Deposits (ZBA) | 2100010070766 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lenox Collections - Refunds (ZBA) | 2079950071053 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Accounts Payable (Corporate) | 2079950061542 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | OTC Deposits (Corporate) | 2000030727995 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lockbox (Corporate) | 2100012019411 |

| Bank Name | Address | Account Type | Account Number |
|-----------|---------|--------------|----------------|
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Concentration (Corporate) | 2000032079010 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Payroll (Corporate) | 2000001684180 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Master Disbursements (Corporate) | 2000028329648 |
| Wachovia Bank | 111 Westminster Street Mail stop: RI1-102-16-01 Providence, RI 02903 Attn: Dan Butler, Senior VP | ACH/Wire Payments (Corporate) | 2000028330213 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Employee Credit Card Sales (Corporate) | 2000032078244 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Employee Funds (Kinston) | 2044740008287 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | OTC Deposits-Pomona (Wholesale) | 2000031708971 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | US Customs (Wholesale) | 2100011972009 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Payroll – New (Corporate) | 2079951060649 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Process Lenox Credit Card Cash and Misc Deposits such as NSF Checks (Retail) | 2000031735708 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Process Dansk DTC Transfers (Retail) | 2100012021069 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Process Store Deposits – Global (Retail) | 2000109855837 |
| National City Bank | 12010 Church St.,<br>Birch Run, MI 48415<br>Attn: Susan Williams | Process Store Deposits (Retail) | 967336751 |
| Capital One Bank (formerly North Fork Bank) | 140 E. Main St.,<br>Riverhead, NY 11901<br>Attn: Joanie Scomordella | Process Store Deposits (Retail) | 3724111517 |
| Sevier County Bank | 3260 Parkway,<br>Pigeon Forge, TN 37863<br>Attn: Angela Mora | Process Store Deposits (Retail) | 27318628 |
| Northeast Georgia Bank | 30990 Hwy 441 South,<br>Commerce, GA 30529<br>Attn: Dawn McCook | Process Store Deposits (Retail) | 8000032165 |
| National City Bank | 632 West Main Street,<br>Mt. Pleasant, PA 15666<br>Attn: Bonnie Wisniewski | Process Store Deposits (Retail) | 658925237 |
| Queenstown Bank of Maryland | 223 Outlet Center Drive,<br>Queenstown, MD 21658<br>Attn: Janet Such | Process Store Deposits (Retail) | 465196601 |

| Bank Name | Address | Account Type | Account Number |
|-----------|---------|--------------|----------------|
| TD Banknorth (formerly Hudson United Bank) | 260 Route 32, Central Valley, NY 10917 Attn: Susan Timpone | Process Store Deposits (Retail) | 3980515531 |
| SunTrust Bank | 1850 US Highway 1 South, St. Augustine, FL 32084 Attn: Afsana Catron | Process Store Deposits (Retail) | 1000049142556 |
| National City Bank | 41325 West 10 Mile Rd., Novi, MI 48375 Attn: Rever Anderson | Process Store Deposits (Retail) | 982178886 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | AP controlled disbursement (with positive pay) (D56) | 152118013977 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository (D56) | 160233250275 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | All outgoing ACH and wires (D56) | 170225138859 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | CC deposits only (D56) | 170225142810 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Wholesale CC & ECP deposits (D56) | 104756690137 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | L/C funding account (D56) | 104756211348 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104756807418 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104774436497 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104756211355 |
| JP Morgan Chase (formerly Bank One, NA) | 1111 E. Wisconsin Ave., Milwaukee, WI 53201 Attn: Rena Glorioso | Showroom checking account (D56) | 640126702 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Showroom checking account (D56) | 129577849 |
| Fifth Third Bank | Merchandise Mart Plaza, Chicago, IL 60654 Attn: Denise Robinson | Showroom checking account (D56) | 7518739920 |
| Bank of America | 110 East 9th Street C-Lobby #1, Los Angeles, CA 90079 Attn: Rosa C. Valles | Showroom checking account (D56) | 03762-05448 |
| Bank of New York | 260 Madison Ave. (at 39th Street), New York, NY 10016 Attn: Beverly Harris | Showroom checking account (D56) | 630-0978736 |
| Frost National Bank | 102 North Denton Tap Road, Coppell, TX 75019 Attn: Beth Fontenot | Showroom checking account (D56) | 950003018 |
| National City Bank | 116 Allegheny Center, Pittsburgh, PA 15212-5356 Attn: Jim Carter | Showroom checking account (D56) | 658848964 |
| The Bank of Nova Scotia | 44 King Street West, Toronto, ON M5K 1H1 Canada Attn: George Constantinou | CAD lockbox, AP (D56) | 800020405914 |

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller, Esq.
    - and -
700 Louisiana Street, Suite 1600
Houston, Texas 77002-2784
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez, Esq.

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                    :
```
**In re**                          :        **Chapter 11 Case No.**
                                 :
**LENOX SALES, INC.,** *et al.*        :        **08-14679 (ALG)**
                                 :
        **Debtors.**               :        **(Jointly Administered)**
                                 :
```
------------------------------------------------------------x
```

## MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(a), 362(d), 363(b) AND 503(b) OF THE BANKRUPTCY CODE (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE THEIR WORKERS' COMPENSATION PROGRAM AND THEIR INSURANCE PROGRAMS AND (B) PAY ALL OBLIGATIONS IN RESPECT THEREOF AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

        Lenox Sales, Inc. and its affiliated debtors in the above-referenced chapter 11

cases, as debtors and debtors in possession (collectively, the "Debtors"),[1] respectfully represent:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Lenox Sales, Inc. (3270), Lenox Group Inc. (4956), Lenox, Incorporated (8476), D 56, Inc. (0891), FL 56 Intermediate Corp. (4955), Lenox Retail, Inc. (3269), and Lenox Worldwide, LLC (7980).

# BACKGROUND

## General

1.      On the date hereof (the "<u>Commencement Date</u>"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Further, a motion pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") for joint administration of the Debtors' chapter 11 cases is pending before this Court.

## The Debtors' Businesses

2.      The Debtors are leading designers, marketers, distributors, wholesalers, and retailers of quality tableware, collectibles, and giftware products under the Lenox®, Dansk®, Gorham®, and Department 56® brand names.  The Debtors conduct their businesses through two main operating entities, Lenox, Incorporated ("<u>Lenox, Inc.</u>") (together with its wholly owned subsidiaries Lenox Sales, Inc. and Lenox Retail, Inc.) and D 56, Inc. ("<u>D 56</u>").

3.      Lenox, Inc. is primarily responsible for the product development and marketing of fine and casual tabletop products, including dinnerware, stemware, serveware, and stainless steel flatware, as well as ceramic, crystal and metal ornaments, jewelry, figurines, and home décor.  These products are offered under the Lenox, Dansk, and Gorham brands as well as various other licensed brands.  The Lenox brand of fine dinnerware is the most widely recognized of its kind in the U.S. market, and has been chosen as the White House china for United States Presidents for nearly a century.

4.    D 56 is a leader in the gift, collectible, and holiday decorating industry, providing the Village Series of nostalgic collectible lighted ceramic buildings and related accessories, the Snowbabies line of figurines, other lines of collectables, and giftware

5.    The Debtors sell their products through three principal marketing and sales channels: wholesale, retail, and consumer direct.  The Debtors' wholesale channel includes department stores, large specialty retailers, general merchandise chains, national chains and clubs, small independent specialty retailers, and other wholesale accounts.  The Debtors' retail sales channel includes 30 retail stores operated in 14 states.  Finally, the Debtors utilize various methods of consumer direct marketing, which is overseen by Lenox, Inc., to sell their products, including (a) traditional direct-to-consumer methods, such as media advertising, direct mail, and telemarketing, (b) catalogs, and (c) the Debtors' various Internet sites, www.lenox.com, www.dansk.com, and www.department56.com.

6.    The Debtors own or lease office, manufacturing, warehouse, and distribution facilities across the country and maintain two overseas offices for product sourcing functions in China.  In addition, the Debtors lease a number of retail stores and nine D 56 and Lenox showrooms within the United States, including two in New York City.  The Debtors' flagship New York City Lenox showroom is located on Madison Avenue near other Tabletop and Gift Brands' trade showrooms.  The Debtors currently employ approximately 1,800 employees.

7.    As of October 25, 2008, the Debtors' unaudited consolidated financial statements reflected assets totaling approximately $264 million and liabilities totaling approximately $238 million.

## JURISDICTION

8.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

9.     In connection with the operation of their businesses, the Debtors maintain a workers' compensation program and various general liability, property, and other insurance programs and policies (collectively, the "Insurance Programs") through several different insurance carriers (the "Insurance Carriers"). Annexed hereto as Exhibit A is a list of each of the Insurance Programs, disclosing with respect to each Insurance Program, as applicable: the Insurance Carrier, the type of coverage, the coverage period, and the aggregate annual premium due thereunder.[2]

10.     By this Motion, the Debtors request authority, pursuant to sections 105(a), 362(d), 363(b), and 503(b) of the Bankruptcy Code and Bankruptcy Rules 4001, 6003 and 6004 to (i) continue their Insurance Programs on an uninterrupted basis, (ii) honor, in the Debtors' discretion, their undisputed prepetition obligations thereunder (the "Insurance Obligations"), and (iii) modify the automatic stay solely and for the limited purpose of permitting employees with claims under the Workers' Compensation Program to proceed with their claims in accordance with such program in the appropriate judicial or administrative forum.

11.     As part of their cash management system, the Debtors maintain bank accounts at certain banks and financial institutions (the "Banks"), including, but not limited to,

---

[2] In addition to the Insurance Programs listed on Exhibit A, the Debtors maintain numerous other insurance policies and programs with respect to employee benefits, such as health, dental, disability, and life insurance. These programs and policies are addressed in a separate motion pertaining to the Debtors' employee wage policies and benefit programs and filed contemporaneously herewith.

the Banks listed on Exhibit B annexed hereto and any other bank that is approved as part of the Debtors' cash management system. The Debtors draw upon funds in their accounts to satisfy their obligations arising from the Insurance Programs. In addition to the relief requested above, the Debtors request that the Court authorize the Banks to receive, honor, process, and pay any and all checks drawn, or electronic fund transfers requested or to be requested on the Debtors' Banks, to the extent that such checks or electronic fund transfers relate to any of the foregoing.

## BASIS FOR RELIEF REQUESTED

### The Debtors' Insurance Programs and Other Obligations

### A. The Workers' Compensation Program

12.     Under the laws of the various states in which they operate, the Debtors are required to maintain workers' compensation policies and programs to provide their employees with workers' compensation benefits for claims arising from or related to their employment with the Debtors. The Debtors maintain workers' compensation coverage through a program (the "Workers' Compensation Program") provided by Liberty Insurance Corporation ("Liberty"). The Workers' Compensation Program covers the Debtors' statutory obligations to maintain workers' compensation programs in each of the jurisdictions in which the Debtors operate (but excluding a monopolistic jurisdiction).[3]

13.     Under the Workers' Compensation Program, the Debtors pay an annual premium to Liberty that is calculated based upon the Debtors' projected payroll and historic loss rates. The annual premium is paid at the inception of the policy period. The Debtors are responsible for paying a deductible under the Workers' Compensation Program of $250,000 on a per claim occurrence. Under the Workers' Compensation Program, insurance coverage is

---

[3] "Monopolistic jurisdictions" require the Debtors to provide workers' compensation coverage through specific state-run insurance pools. The monopolistic jurisdiction in which the Debtors operate is the state of Ohio.

provided by Liberty for workers' compensation claims subject to policy limits, with a per incident deductible of $250,000. The Debtors utilize the services of Wells Fargo Insurance Services ("WFIS") to administer the program. WFIS processes and pays all approved claims and also pays amounts billed directly by doctors and medical facilities. The Debtors are obligated to pay the program premium and reimburse WFIS up to $250,000 per approved claim for the loss payments WFIS makes in respect of coverage deductibles in accordance with the terms of the Workers' Compensation Program. For the period from January 1, 2008 through and including January 1, 2009, the total premium for the Workers' Compensation Program totaled $339,041. As of the Commencement Date, the Debtors have no amounts outstanding to Liberty. The Debtors have provided a Letter of Credit totaling $3,720,000 for the benefit of Liberty as collateral for the Debtors' obligation to reimburse Liberty under policies, including the Workers' Compensation Program.

14.     The Debtors have maintained this policy with the Liberty since the acquisition of Lenox, Incorporated by D 56 from Brown Forman Corporation in September 2005. Prior to this period, Lenox, Incorporated maintained a policy with Liberty, and D 56 maintained a policy with Vigilant Insurance Company, a subsidiary of the Chubb Group of Insurance Companies. While these policies have been replaced with the Workers' Compensation Program through Liberty for current employees, the Debtors are responsible for claims that accrued under the legacy policies before September 2005. Currently, there are $475,000 of open claims under the legacy policies, in addition to $846,000 of open claims under the current Workers' Compensation Program. By this motion, the Debtors seek authority to pay all open claims for which they are determined to be liable, including claims arising under the legacy

policies and the current Workers' Compensation Program.[4]  The Debtors have provided a Letter

of Credit totaling $1,150,000 for the benefit of Liberty as collateral for the Debtors' obligation to

reimburse Liberty under the legacy Workers' Compensation policy.  Additionally the Debtors

have provided a Letter of Credit totaling $200,000 for the benefit of Vigilant as collateral for the

Debtors' obligation to reimburse Vigilant under the legacy Workers' Compensation policy.

Finally, the Debtors also have been required to provide additional collateral in the form of cash

deposits to both Liberty and Vigilant totaling $185,000 and $60,000 respectively.

**B.**      <u>Liability and Property Insurance Programs</u>

       15.      The Debtors maintain various liability and property-related insurance

Programs, which provide the Debtors with insurance coverage for liabilities relating to, among

other things, general liability, primary property liability, automobile liability, cargo liability,

employment practices liability, directors and officers liability, crime liability, special risk, and

umbrella or excess liability insurance (collectively, the "<u>Liability and Property Insurance</u>

<u>Programs</u>").  Continuation of these policies is essential to the ongoing operation of the Debtors'

businesses.

       16.      The Debtors are required to pay premiums under the Liability and

Property Insurance Programs based upon fixed rates established by the applicable Insurance

Carrier.  For example, the Debtors' primary property insurance coverage is provided by

Affiliated FM, requiring an annual premium of $288,273, while their general liability insurance

coverage is provided by Liberty Mutual, requiring an annual premium of $168,360.  These

policies have a term which began on January 1, 2008 and runs through January 1, 2009.   The

Debtors pay certain of these premiums in cash, either directly to the Insurance Carriers or to their

---

[4] As the legacy policies have expired, there are no premium obligations associated therewith.

insurance broker, while a number of the premiums under the Debtors' Liability and Property Insurance Programs are financed by a third party financing company.

17.     Specifically, six of the Debtors' policies with respect to the Liability and Property Insurance Programs are financed by Imperial A.I. Credit Companies ("AICCO") pursuant to a finance agreement with AICCO (the "AICCO Agreement").[5]  Under the AICCO Agreement, AICCO pays the premiums for each respective policy at the policy's inception (a total of $637,748). The Debtors reimbursed AICCO with an initial payment of $127,551 and thereafter paid nine monthly installments to AICCO of $58,060.  As of the Commencement Date, the Debtors have no known amounts outstanding to AICCO.

18.     The aggregate annual premium for the Liability and Property Insurance Programs is approximately $1,340,000.  As of the Commencement Date, the Debtors have fully paid all obligations in connection with policy premiums for the existing Liability and Property Insurance Programs.  In addition, the Debtors are required to pay various deductibles for claims asserted under the respective policies.  The amounts of the applicable deductibles are set forth in Exhibit A hereto.  As of the Commencement Date, the Debtor is unable to accurately estimate the aggregate outstanding amount with respect to deductibles under the Liability and Property Insurance Programs since, in the normal course of operating its business, many claims made fail to assert specific dollar damages and are ultimately resolved for nominal amounts.  Deductibles for claims relating to the period prior to the Commencement Date may continue to arise in the ordinary course of business.  Accordingly, the Debtors are seeking the Court's authorization to pay such undisputed claims, in their discretion, as they come due.

---

[5] The financed policies include property liability, cargo & transportation liability, umbrella liability, internet liability, media/advertising liability, and international package liability.

**Insurance Broker**

19.     The Debtors employ an insurance broker, Wells Fargo Insurance Services (the "Insurance Broker"), to assist them with the procurement and negotiation of their Insurance Programs and the processing of claims.  In certain circumstances, the Insurance Broker remits payment to the Insurance Carriers on behalf of the Debtors.  The Insurance Broker is paid a commission by the Insurance Carriers, not by the Debtors.  Accordingly, the Debtors believe there are no amounts accrued and outstanding with respect to the Insurance Broker.

**Debtors Request Authority to (i) Continue the**
**Insurance Programs and (ii) Pay All Obligations in Respect Thereof**

20.     Pursuant to sections 105(a), 362(d), 363(b), and 503(b) of the Bankruptcy Code and Bankruptcy Rules 4001 and 6004, the Debtors seek authority to continue, in their sole discretion, the Insurance Programs on an uninterrupted basis in accordance with the same practices and procedures as were in effect prior to the Commencement Date.  Furthermore, the Debtors seek authority to pay, in their sole discretion, all undisputed premiums, deductibles, administrative fees, and other obligations arising under the Insurance Programs, as applicable, that were or are due and payable, or related to the period before or after, the Commencement Date.

21.     Pursuant to section 503(b)(1) of the Bankruptcy Code, a debtor may incur, and the court, after notice and a hearing, shall allow as administrative expenses, among other things, "the actual, necessary costs and expenses of preserving the estate."  11 U.S.C. § 503(b)(1).  In addition, pursuant to section 363(b) of the Bankruptcy Code, a debtor may, in the exercise of its sound business judgment and after notice and a hearing, use property of the estate outside of the ordinary course of business.  § 363(b).  The Debtors submit that the use of estate

funds for payment of the Insurance Obligations is permitted by sections 503(b)(1) and 363(b) of the Bankruptcy Code as necessary costs of preserving the estate.

22.     Furthermore, to supplement these explicit powers, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). "Under 11 U.S.C. § 105 the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing Ionosphere Clubs, 98 B.R. at 177).

23.     In a long line of well-established cases, federal courts consistently have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. See, e.g., Miltenberger v. Logansport C. & S.W. Ry. Co., 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); Dudley v. Mealey, 147 F.2d 268 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases); Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.), 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

24.     The "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. See In re Lehigh &

New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize the payment of pre-petition claims if such payment was essential to the continued operation of the debtor); In re Boston & Me. Corp., 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation). The doctrine is frequently invoked early in a chapter 11 case, particularly in connection with the payment of prepetition claims. The rationale for the doctrine of necessity rule is consistent with the paramount goal of chapter 11: "facilitating the continued operation and rehabilitation of the debtor." Ionosphere Clubs, 98 B.R. at 176. Accordingly, pursuant to section 105(a) of the Bankruptcy Code, this Court is empowered to grant the relief requested herein.

25. Moreover, numerous courts in this jurisdiction have granted similar relief in other chapter 11 cases. See, e.g., In re Steve & Barry's Manhattan LLC, et al., Case No. 08-12579 (ALG) (Bankr. S.D.N.Y. Jul. 30, 2008), (Bankr. S.D.N.Y. Jul. 11, 2008); In re Lexington Precision, et al., Case No. 08-11153 (MG) (Bankr. S.D.N.Y. Apr. 22, 2008); In re Fortunoff Fine Jewelry and Silverware, LLC, Case No. 08-10353 (JMP) (Bankr. S.D.N.Y. Feb. 29, 2008), (Bankr. S.D.N.Y. Feb. 5, 2008); In re PRC, LLC, Case No. 08-10239 (MG) (Bankr. S.D.N.Y. Jan. 25, 2008); Silicon Graphics, Inc., et al., Case No. 06-10977 (BRL) (Bankr. S.D.N.Y May 31, 2006), (Bankr. S.D.N.Y May 10, 2006); In re Atkins Nutritionals, Inc., et al., Case No. 05-15913 (ALG) (Bankr. S.D.N.Y. Aug. 1, 2005).

**Continuing the Insurance Programs and Paying All Obligations in**
**Respect Thereof Is Necessary to Preserve the Value of the Debtors' Estates**

26. The nature of the Debtors' businesses and the extent of their operations make it essential for the Debtors to maintain their Insurance Programs on an uninterrupted basis. The nonpayment of any premiums, deductibles, or related fees under one of the Insurance

Programs could result in one or more of the Insurance Carriers declining to renew the Debtors' insurance policies or refusing to enter into new insurance agreements with the Debtors in the future. If the Insurance Programs lapse without renewal, the Debtors could be exposed to substantial liability for personal and/or property damages to the detriment of all parties in interest. Furthermore, the Debtors would then be required to obtain replacement policies on an expedited basis at a significant cost to the estates.

27. Moreover, the Insurance Programs are vital to all aspects of the Debtors' operations. Applicable state law mandates that the Debtors maintain workers' compensation coverage for their employees. Failure by the Debtors to pay the premiums associated with their Workers' Compensation Programs would jeopardize their coverage and expose the Debtors to substantial liability in fines by various state workers' compensation boards.

28. In addition, the risk that eligible workers' compensation claimants will not receive timely payment for prepetition employment-related injuries could have a devastating effect on the financial well-being and morale of the Debtors' current employees. Departures by employees at this critical time may result in a severe disruption of the Debtors' businesses with a substantially adverse impact on the Debtors, the value of their assets and their businesses. The retention of the Debtors' qualified and dedicated senior management also is linked to the continued effectiveness of the directors' and officers' liability insurance policies.

29. Finally, pursuant to the guidelines established by the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), the Debtors are obligated to remain current with respect to their primary Insurance Programs. Therefore, the continuation of the Insurance Programs, on an uninterrupted basis, and the payment of all undisputed prepetition and postpetition Insurance Obligations arising under the Insurance

Programs, are essential to the preservation of the Debtors' businesses and the value of the Debtors' estates for all creditors. Accordingly, the Debtors are seeking the Court's authorization to continue the Insurance Programs and related policies as such practices, programs, and policies were in effect as of the Commencement Date and authorize, but not direct, the Debtors to pay any undisputed prepetition claims arising under the Insurance Program as they come due.

30. To the extent any Insurance Program or related agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtors do not, at this time, seek to assume any such contract. Accordingly, if the Court authorizes the payments described above, such payments should not be deemed to constitute a postpetition assumption or adoption of the programs, policies, or agreements as executory contracts pursuant to section 365 of the Bankruptcy Code. The Debtors are in the process of reviewing these matters and reserve all of their rights under the Bankruptcy Code with respect thereto. Moreover, authorization to pay all amounts on account of the Insurance Obligations shall not affect the Debtors' right to contest the amount or validity of these obligations.

**The Automatic Stay Should Be Waived for Workers' Compensation Claims**

31. Section 362(a) of the Bankruptcy Code, commonly known as the "automatic stay," operates to stay

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1). Section 362, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." § 362(d)(1).

32.     To the extent the Debtors' employees hold valid workers' compensation claims, the Debtors seek authorization under section 362(d) of the Bankruptcy Code to permit these employees to proceed with their claims in the appropriate judicial or administrative forum. The Debtors believe cause exists to modify the automatic stay because prohibiting the Debtors' employees from proceeding with their claims could have a detrimental effect on the financial well-being and morale of such employees and lead to their departure.  As discussed above, such departures could cause a severe disruption in the Debtors' businesses to the detriment of all parties in interest.

33.     To this end, and solely with respect to workers' compensation claims covered under the Workers' Compensation Programs, the Debtors seek to modify the automatic stay as it relates to workers' compensation claims; provided, however, that such claims are pursued in accordance with the Workers' Compensation Program and recoveries, if any, are limited to the proceeds from the applicable Workers' Compensation Program.  All other claims, including any claims relating to matters covered by other Insurance Programs, will remain subject to the automatic stay.  To effectuate the aforementioned modification of the automatic stay, the Debtors request that the Court waive the stay of a judgment under Bankruptcy Rule 7062 and the requirements under Bankruptcy Rule 9014 relating to contested matters with respect to claims under the Workers' Compensation Programs.

34.     Pursuant to this Motion, the Debtors do not seek a waiver, termination, or modification of the automatic stay with respect to any other claims or matters.

### Applicable Banks Should Be Authorized to Honor and Pay Checks Issued and Make Other Transfers to Pay Insurance Obligations

35.     As a result of the commencement of the Debtors' chapter 11 cases, and in the absence of an order of the Court providing otherwise, the Banks may dishonor or reject

Debtors' checks and electronic fund transfers with respect to the Insurance Obligations.

Therefore, the Debtors request that the Court authorize the Banks listed on Exhibit B annexed

hereto to, and any other bank the Debtors are authorized to do business with under the Cash

Management Motion[6] to process, honor, and pay all prepetition and postpetition checks issued or

to be issued, and electronic fund transfers requested or to be requested, by the Debtors with

respect to their Insurance Obligations.  The Debtors also seek authority to issue new postpetition

checks or effect new electronic fund transfers with respect to the Insurance Obligations to

replace any prepetition checks or electronic fund transfer requests that may be dishonored or

rejected.

36.     The Debtors represent that each of these checks or transfers is or will be

drawn on accounts authorized by the Court under the Cash Management Motion, and can be

readily identified as relating directly to payments under the Insurance Programs.  Accordingly,

the Debtors believe that prepetition checks and transfers other than those relating to the

Insurance Programs will not be honored inadvertently.

37.     Furthermore, the Debtors seek a waiver of the notice requirements under

Bankruptcy Rule 6004(a) and the stay of the order authorizing the use, sale, or lease of property

under Bankruptcy Rule 6004(h).

### NOTICE

38.     No trustee, examiner, or statutory creditors' committee has been appointed

in these chapter 11 cases.  The Debtors have served notice of this Motion on (i) the Office of the

---

[6] Contemporaneously herewith the Debtors filed the Motion for an Order Pursuant to Sections 105(a), 345(b), 363(b), 363(c) and 364(a) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004 (A) Authorizing the Debtors to (i) Continue Using Existing Centralized Cash Management System, (ii) Honor Certain Prepetition Obligations Related to the Use of the Cash Management System, and (iii) Maintain Existing Bank Accounts and Business Forms; and (B) Extending the Time to Comply With Section 345(b) of the Bankruptcy Code (the "Cash Management Motion").

United States Trustee for the Southern District of New York (Attn: Susan D. Golden), (ii) Paul, Hastings, Janofsky & Walker LLP, 600 Peachtree Street, N.E., 24th Floor, Atlanta, Georgia 30308 (Attn: Jesse H. Austin, III, Esq.) and Park Avenue Tower, 75 East 55th Street, First Floor, New York, New York 10022 (Attn: Leslie A. Plaskon, Esq.), as counsel for UBS AG, Stamford Branch, the administrative agent for the Debtors' prepetition secured revolving loan lenders and as counsel for the Debtors' proposed postpetition lenders, (iii) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022 (Attn: Adam C. Harris, Esq.) as counsel for The Bank of New York Mellon, the administrative and collateral agent for the Debtors' prepetition secured term loan lenders, (iv) the Debtors' 30 largest unsecured creditors (on a consolidated basis), and (v) the Pension Benefit Guaranty Corporation, Distress Terminations, Dept. of Insurance Supervision & Compliance, Suite 270, 1200 K Street NW, Washington, DC 20005-4026 (Attn: Sarah Eagle, Esq.). In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided.

39. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just and appropriate.

Dated: November 24, 2008
      New York, New York

Respectfully submitted,

By: /s/ Alfredo R. Pérez_____
     Alfredo R. Pérez

Harvey R. Miller, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
     - and -
Alfredo R. Pérez, Esq.
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002-2784
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Attorneys for Debtors and Debtors in Possession

## Exhibit A

## Insurance Programs

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium | Deductible |
|---|---|---|---|---|---|
| Workers' Compensation | Liberty Insurance Corp. | WA7-64D-435745-058<br>WC7-641-435745-068 | 1/1/08 – 12/31/08 | $ 339,041 | $ 250,000 |
| General Liability | Liberty Mutual | TB2-641-435745-078 | 1/1/08 - 12/31/08 | $ 168,360 | $ 100,000 |
| Automobile | Liberty Mutual | AS2-641-435745-088 | 1/1/08 - 12/31/08 | $ 22,136 | $ 500 |
| Property | Affiliated FM | EI294 | 1/1/08 - 12/31/08 | $ 288,273 | $ 100,000 |
| Cargo / Transportation | Travelers | OC 01800089 | 1/1/08 - 12/31/08 | $ 120,828 | $ 10,000 |
| Umbrella | Chubb Insurance Company /<br>Crum & Forster | 79733346 /<br>5500120947 | 1/1/08 - 12/31/08 | $ 136,523 | - - - |
| Internet Liability | American International Specialty | 007076208 | 1/1/08 - 12/31/08 | $ 62,939 | $ 250,000 |
| Media / Advertising | National Casualty Company | LS 041211 | 12/31/07 - 12/31/08 | $ 17,558 | $ 25,000 |
| International Package | Chubb Insurance Company | 35384218 | 1/1/08 - 12/31/08 | $ 11,627 | - - - |
| D&O Liability | Great American /<br>Ironshore /<br>XL Specialty /<br>XL Specialty | DOL 5592541 /<br>IRH 008980702001 /<br>ELU 100628-07 /<br>ELU 100631-07 | 10/7/08 - 10/7/09 | $ 397,650 | $ - - - (non-indemnifiable claims)<br>$ 250,000 (indemnifiable / securities) |
| Fiduciary | Federal Insurance Company (Chubb) | 81377385 | 10/7/08 - 10/7/09 | $ 19,193 | $ - - - (voluntary settlement)<br>$ 100,000 (fiduciary settlement) |
| Commercial Crime | National Union Fire Insurance Co. (AIG) | 164 14 06 | 10/7/08 - 10/7/09 | $ 16,520 | $ 25,000 |
| Employed Lawyers | National Union Fire Insurance Co. (AIG) | 164 13 02 | 10/7/08 - 10/7/09 | $ 6,985 | $ - - - (non-indemnifiable claims)<br>$ 50,000 |

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium | Deductible |
|---|---|---|---|---|---|
| Special Risk | Federal Insurance Company (Chubb) | 6802334 | 10/7/07 - 10/7/10 | $ 6,398 | $ - - - |
| Employment Practices | St. Paul Mercury (Travelers) | EC 06300956 | 10/7/07 - 12/31/08 | $ 33,400 | $ 100,000<br>$ 250,000 (mass or class action) |
| Pollution Liability | American International | PLS1467647 | 9/1/05 - 9/1/10 | $ 27,147 | $ 50,000 |

# Exhibit B

## Bank Accounts

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Bank of America - Shanghai | 18th Floor, S. Tower, 528 Pudong Rd South Shanghai, China 200120 Attn: Nico Zhu | Shanghai Representitive Office (Lenox Worldwide, LLC) | 00010841015 |
| Canadian Bank of Commerce | 180 Laird Dr., Toronto, ON, M4G 3V7 Canada Attn: Malcolm Subit | Canadian Operating Account (Wholesale) | 5500613 |
| M & T Bank | 17301 Valley Mall Drive, Hagerstown, MD 21740 Attn: Kelly Stine | Petty Cash (Wholesale) | 2660005105 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lenox Collections - Cash Deposits (ZBA) | 2100010070766 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lenox Collections - Refunds (ZBA) | 2079950071053 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Accounts Payable (Corporate) | 2079950061542 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | OTC Deposits (Corporate) | 2000030727995 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lockbox (Corporate) | 2100012019411 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Concentration (Corporate) | 2000032079010 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Payroll (Corporate) | 2000001684180 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Master Disbursements (Corporate) | 2000028329648 |
| Wachovia Bank | 111 Westminster Street<br>Mail stop: RI1-102-16-01<br>Providence, RI 02903<br>Attn: Dan Butler, Senior VP | ACH/Wire Payments (Corporate) | 2000028330213 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Employee Credit Card Sales (Corporate) | 2000032078244 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Employee Funds (Kinston) | 2044740008287 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | OTC Deposits-Pomona (Wholesale) | 2000031708971 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | US Customs (Wholesale) | 2100011972009 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Payroll – New (Corporate) | 2079951060649 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Process Lenox Credit Card Cash and Misc Deposits such as NSF Checks (Retail) | 2000031735708 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Process Dansk DTC Transfers (Retail) | 2100012021069 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Process Store Deposits – Global (Retail) | 2000109855837 |
| National City Bank | 12010 Church St.,<br>Birch Run, MI 48415<br>Attn: Susan Williams | Process Store Deposits (Retail) | 967336751 |
| Capital One Bank (formerly North Fork Bank) | 140 E. Main St.,<br>Riverhead, NY 11901<br>Attn: Joanie Scomordella | Process Store Deposits (Retail) | 3724111517 |
| Sevier County Bank | 3260 Parkway,<br>Pigeon Forge, TN 37863<br>Attn: Angela Mora | Process Store Deposits (Retail) | 27318628 |
| Northeast Georgia Bank | 30990 Hwy 441 South,<br>Commerce, GA 30529<br>Attn: Dawn McCook | Process Store Deposits (Retail) | 8000032165 |
| National City Bank | 632 West Main Street,<br>Mt. Pleasant, PA 15666<br>Attn: Bonnie Wisniewski | Process Store Deposits (Retail) | 658925237 |
| Queenstown Bank of Maryland | 223 Outlet Center Drive,<br>Queenstown, MD 21658<br>Attn: Janet Such | Process Store Deposits (Retail) | 465196601 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| TD Banknorth (formerly Hudson United Bank) | 260 Route 32, Central Valley, NY 10917 Attn: Susan Timpone | Process Store Deposits (Retail) | 3980515531 |
| SunTrust Bank | 1850 US Highway 1 South, St. Augustine, FL 32084 Attn: Afsana Catron | Process Store Deposits (Retail) | 1000049142556 |
| National City Bank | 41325 West 10 Mile Rd., Novi, MI 48375 Attn: Rever Anderson | Process Store Deposits (Retail) | 982178886 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | AP controlled disbursement (with positive pay) (D56) | 152118013977 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository (D56) | 160233250275 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | All outgoing ACH and wires (D56) | 170225138859 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | CC deposits only (D56) | 170225142810 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Wholesale CC & ECP deposits (D56) | 104756690137 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | L/C funding account (D56) | 104756211348 |
| US Bank Minneapolis | 800 Nicolett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104756807418 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104774436497 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104756211355 |
| JP Morgan Chase (formerly Bank One, NA) | 1111 E. Wisconsin Ave., Milwaukee, WI 53201 Attn: Rena Glorioso | Showroom checking account (D56) | 640126702 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Showroom checking account (D56) | 129577849 |
| Fifth Third Bank | Merchandise Mart Plaza, Chicago, IL 60654 Attn: Denise Robinson | Showroom checking account (D56) | 7518739920 |
| Bank of America | 110 East 9th Street C-Lobby #1, Los Angeles, CA 90079 Attn: Rosa C. Valles | Showroom checking account (D56) | 03762-05448 |
| Bank of New York | 260 Madison Ave. (at 39th Street), New York, NY 10016 Attn: Beverly Harris | Showroom checking account (D56) | 630-0978736 |
| Frost National Bank | 102 North Denton Tap Road, Coppell, TX 75019 Attn: Beth Fontenot | Showroom checking account (D56) | 950003018 |
| National City Bank | 116 Allegheny Center, Pittsburgh, PA 15212-5356 Attn: Jim Carter | Showroom checking account (D56) | 658848964 |
| The Bank of Nova Scotia | 44 King Street West, Toronto, ON M5K 1H1 Canada Attn: George Constantinou | CAD lockbox, AP (D56) | 800020405914 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------x
                                          :
In re                                     :          Chapter 11 Case No.
                                          :
LENOX SALES, INC., et al.                 :          08-14679 (ALG)
                                          :
                    Debtors.              :          (Jointly Administered)
                                          :
----------------------------------------------------------x
```

## ORDER PURSUANT TO SECTIONS 105(a), 362(d), 363(b) AND 503(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 4001(d) AND 6004(a) (I) AUTHORIZING DEBTORS TO (A) CONTINUE THEIR WORKERS' COMPENSATION PROGRAM AND THEIR INSURANCE PROGRAMS AND (B) PAY ALL OBLIGATIONS IN RESPECT THEREOF AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS

Upon the motion, dated November 24, 2008 (the "Motion"), of Lenox Sales, Inc. and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"),[1] for an order, pursuant to sections 105(a), 362(d), 363(b), and 503(b) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 4001, 6003 and 6004 of the Federal Rules of Bankruptcy Procedure, (i) authorizing the Debtors to (a) continue their workers' compensation programs (the "Workers' Compensation Programs") and their liability, product, property, and other insurance programs, including, without limitation, all of the policies set forth on Exhibit A annexed hereto (together with the Workers' Compensation Programs, the "Insurance Programs"), (b) pay all prepetition obligations in respect thereof, on an uninterrupted basis, consistent with their practices in effect prior to the commencement of the Debtors' chapter 11 cases, including the payment of all premiums, claims,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Lenox Sales, Inc. (3270), Lenox Group Inc. (4956), Lenox, Incorporated (8476), D 56, Inc. (0891), FL 56 Intermediate Corp. (4955), Lenox Retail, Inc. (3269), and Lenox Worldwide, LLC (7980).

deductibles, administrative expenses, and all other charges incurred, whether relating to the period prior to or after the commencement of these chapter 11 cases (collectively, "Insurance Obligations"), and (c) modify the automatic stay solely and for the limited purpose of permitting employees with claims under the Workers' Compensation Program to proceed with their claims in accordance with such program in the appropriate judicial or administrative forum; and (ii) authorizing certain banks and financial institutions (the "Banks"), including, but not limited to, the Banks listed on Exhibit B annexed hereto, to honor and process checks and transfers related to such obligations, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee for the Southern District of New York (Attn: Susan D. Golden), (ii) Paul, Hastings, Janofsky & Walker LLP, 600 Peachtree Street, N.E., 24th Floor, Atlanta, Georgia 30308 (Attn: Jesse H. Austin, III, Esq.) and Park Avenue Tower, 75 East 55th Street, First Floor, New York, New York 10022 (Attn: Leslie A. Plaskon, Esq.), as counsel for UBS AG, Stamford Branch, the administrative agent for the Debtors' prepetition secured revolving loan lenders and as counsel for the Debtors' proposed postpetition lenders, (iii) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022 (Attn: Adam C. Harris, Esq.) as counsel for The Bank of New York Mellon, the administrative and collateral agent for the Debtors' prepetition secured term loan lenders, (iv) the Debtors' 30 largest unsecured creditors (on a consolidated basis), and

(v) the Pension Benefit Guaranty Corporation, Distress Terminations, Dept. of Insurance

Supervision & Compliance, Suite 270, 1200 K Street NW, Washington, DC 20005-4026 (Attn:

Sarah Eagle, Esq.), and it appearing that no other or further notice need be provided; and the

Court having determined that the relief requested in the Motion being in the best interests of the

Debtors, their creditors, and all parties in interest; and the Court having determined that the legal

and factual bases set forth in the Motion establish just cause for the relief granted herein; and

upon all of the proceedings had before the Court and after due deliberation and sufficient cause

appearing therefor, it is hereby

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors are authorized and empowered to maintain their

Insurance Programs without interruption, on the same basis, and in accordance with the same

practices and procedures that were in effect prior to the commencement of the Debtors' chapter

11 cases; and it is further

ORDERED that the Debtors are authorized, but not required, to pay, in their sole

discretion, all Insurance Obligations that are or become payable, including, without limitation, all

premiums, claims, deductibles, excess, retrospective adjustments, administrative and brokers'

fees, and all other obligations arising under the Insurance Programs, including those Insurance

Obligations that (i) were due and payable or related to the period prior to the commencement of

these chapter 11 cases, without further order of the Court, and (ii) are or become due and payable

or related to the period after the commencement of these chapter 11 cases; and it is further

ORDERED that, pursuant to section 362(d) of the Bankruptcy Code, to the extent

any of the Debtors' employees hold claims under the Debtors' Workers' Compensation Program,

these employees are authorized, at the Debtors' discretion, to proceed with their workers'

compensation claims through and including the collection of any judgment in the appropriate judicial or administrative forum under the Workers' Compensation Program; provided, that the prosecution of such claims is in accordance with the Workers' Compensation Program and the recoveries are limited to the proceeds available under the Workers' Compensation Program; and it is further

ORDERED that the Banks, including, but not limited to those on the list annexed hereto as Exhibit B, are authorized to honor, process, and pay, to the extent of funds on deposit, any and all prepetition checks or electronic fund transfer requests issued by the Debtors in respect of any Insurance Obligation, whether pre- or post-petition; and it is further

ORDERED that any Bank, including, but not limited to, those on the list annexed hereto as Exhibit B, may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Commencement Date should be honored pursuant to this Order, and such Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein; and it is further

ORDERED that nothing in this Order or the Motion shall be construed as prejudicing the rights of the Debtors to dispute or contest the amount of or basis for any claims against the Debtors in connection with or relating to the Debtors' Insurance Programs; and it is further

ORDERED that, to the extent that any Insurance Program or any related contract or agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, neither this Order nor any payments made in accordance with this Order shall constitute the postpetition assumption of any such Insurance Program, contract, or related agreement pursuant to section 365 of the Bankruptcy Code; and it is further

ORDERED that Bankruptcy Rule 6003(b) has been satisfied; and it is further

ORDERED that notwithstanding any applicability of Rules 6004(h), 7062, or 9014 of the Bankruptcy Rules, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that notice of the Motion as provided herein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rules 4001(d) and 6004(a) are waived; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: November ___, 2008
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

## Insurance Programs

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium | Deductible |
|---|---|---|---|---|---|
| Workers' Compensation | Liberty Insurance Corp. | WA7-64D-435745-058<br>WC7-641-435745-068 | 1/1/08 – 12/31/08 | $ 339,041 | $ 250,000 |
| General Liability | Liberty Mutual | TB2-641-435745-078 | 1/1/08 - 12/31/08 | $ 168,360 | $ 100,000 |
| Automobile | Liberty Mutual | AS2-641-435745-088 | 1/1/08 - 12/31/08 | $ 22,136 | $ 500 |
| Property | Affiliated FM | EI294 | 1/1/08 - 12/31/08 | $ 288,273 | $ 100,000 |
| Cargo / Transportation | Travelers | OC 01800089 | 1/1/08 - 12/31/08 | $ 120,828 | $ 10,000 |
| Umbrella | Chubb Insurance Company /<br>Crum & Forster | 79733346 /<br>5500120947 | 1/1/08 - 12/31/08 | $ 136,523 | - - - |
| Internet Liability | American International Specialty | 007076208 | 1/1/08 - 12/31/08 | $ 62,939 | $ 250,000 |
| Media / Advertising | National Casualty Company | LS 041211 | 12/31/07 - 12/31/08 | $ 17,558 | $ 25,000 |
| International Package | Chubb Insurance Company | 35384218 | 1/1/08 - 12/31/08 | $ 11,627 | - - - |
| D&O Liability | Great American /<br>Ironshore /<br>XL Specialty /<br>XL Specialty | DOL 5592541 /<br>IRH 008980702001 /<br>ELU 100628-07 /<br>ELU 100631-07 | 10/7/08 - 10/7/09 | $ 397,650 | $ - - - (non-indemnifiable claims)<br>$ 250,000 (indemnifiable / securities) |
| Fiduciary | Federal Insurance Company (Chubb) | 81377385 | 10/7/08 - 10/7/09 | $ 19,193 | $ - - - (voluntary settlement)<br>$ 100,000 (fiduciary settlement) |
| Commercial Crime | National Union Fire Insurance Co. (AIG) | 164 14 06 | 10/7/08 - 10/7/09 | $ 16,520 | $ 25,000 |
| Employed Lawyers | National Union Fire Insurance Co. (AIG) | 164 13 02 | 10/7/08 - 10/7/09 | $ 6,985 | $ - - - (non-indemnifiable claims)<br>$ 50,000 |

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium | Deductible |
|---|---|---|---|---|---|
| Special Risk | Federal Insurance Company (Chubb) | 6802334 | 10/7/07 - 10/7/10 | $ 6,398 | $ - - - |
| Employment Practices | St. Paul Mercury (Travelers) | EC 06300956 | 10/7/07 - 12/31/08 | $ 33,400 | $ 100,000<br>$ 250,000 (mass or class action) |
| Pollution Liability | American International | PLS1467647 | 9/1/05 - 9/1/10 | $ 27,147 | $ 50,000 |

NY2:\1930395\15\15D$315!.DOC\58519.0003

## Exhibit B

## Bank Accounts

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Bank of America - Shanghai | 18th Floor, S. Tower, 528 Pudong Rd South Shanghai, China 200120 Attn: Nico Zhu | Shanghai Representitive Office (Lenox Worldwide, LLC) | 00010841015 |
| Canadian Bank of Commerce | 180 Laird Dr., Toronto, ON, M4G 3V7 Canada Attn: Malcolm Subit | Canadian Operating Account (Wholesale) | 5500613 |
| M & T Bank | 17301 Valley Mall Drive, Hagerstown, MD 21740 Attn: Kelly Stine | Petty Cash (Wholesale) | 2660005105 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lenox Collections - Cash Deposits (ZBA) | 2100010070766 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lenox Collections - Refunds (ZBA) | 2079950071053 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Accounts Payable (Corporate) | 2079950061542 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | OTC Deposits (Corporate) | 2000030727995 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Lockbox (Corporate) | 2100012019411 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Concentration (Corporate) | 2000032079010 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Payroll (Corporate) | 2000001684180 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Master Disbursements (Corporate) | 2000028329648 |
| Wachovia Bank | 111 Westminster Street<br>Mail stop: RI1-102-16-01<br>Providence, RI 02903<br>Attn: Dan Butler, Senior VP | ACH/Wire Payments (Corporate) | 2000028330213 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Employee Credit Card Sales (Corporate) | 2000032078244 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Employee Funds (Kinston) | 2044740008287 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | OTC Deposits-Pomona (Wholesale) | 2000031708971 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | US Customs (Wholesale) | 2100011972009 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Payroll – New (Corporate) | 2079951060649 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Process Lenox Credit Card Cash and Misc Deposits such as NSF Checks (Retail) | 2000031735708 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Process Dansk DTC Transfers (Retail) | 2100012021069 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146<br>Charlotte, NC 28262<br>Attn: Kolissa Brost | Process Store Deposits – Global (Retail) | 2000109855837 |
| National City Bank | 12010 Church St.,<br>Birch Run, MI 48415<br>Attn: Susan Williams | Process Store Deposits (Retail) | 967336751 |
| Capital One Bank (formerly North Fork Bank) | 140 E. Main St.,<br>Riverhead, NY 11901<br>Attn: Joanie Scomordella | Process Store Deposits (Retail) | 3724111517 |
| Sevier County Bank | 3260 Parkway,<br>Pigeon Forge, TN 37863<br>Attn: Angela Mora | Process Store Deposits (Retail) | 27318628 |
| Northeast Georgia Bank | 30990 Hwy 441 South,<br>Commerce, GA 30529<br>Attn: Dawn McCook | Process Store Deposits (Retail) | 8000032165 |
| National City Bank | 632 West Main Street,<br>Mt. Pleasant, PA 15666<br>Attn: Bonnie Wisniewski | Process Store Deposits (Retail) | 658925237 |
| Queenstown Bank of Maryland | 223 Outlet Center Drive,<br>Queenstown, MD 21658<br>Attn: Janet Such | Process Store Deposits (Retail) | 465196601 |

| Bank Name | Address | Account Type | Account Number |
|---|---|---|---|
| TD Banknorth (formerly Hudson United Bank) | 260 Route 32, Central Valley, NY 10917 Attn: Susan Timpone | Process Store Deposits (Retail) | 3980515531 |
| SunTrust Bank | 1850 US Highway 1 South, St. Augustine, FL 32084 Attn: Afsana Catron | Process Store Deposits (Retail) | 1000049142556 |
| National City Bank | 41325 West 10 Mile Rd., Novi, MI 48375 Attn: Rever Anderson | Process Store Deposits (Retail) | 982178886 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | AP controlled disbursement (with positive pay) (D56) | 152118013977 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository (D56) | 160233250275 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | All outgoing ACH and wires (D56) | 170225138859 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | CC deposits only (D56) | 170225142810 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Wholesale CC & ECP deposits (D56) | 104756690137 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | L/C funding account (D56) | 104756211348 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104756807418 |

| Bank Name | Address | Account Type | Account Number |
|-----------|---------|--------------|----------------|
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104774436497 |
| US Bank Minneapolis | 800 Nicollett Mall, Minneapolis, MN 55402 Attn: Dee Hein, VP Treasury Mgt. | Depository for retail store (D56) | 104756211355 |
| JP Morgan Chase (formerly Bank One, NA) | 1111 E. Wisconsin Ave., Milwaukee, WI 53201 Attn: Rena Glorioso | Showroom checking account (D56) | 640126702 |
| Wachovia Bank | 1525 West WT Harris Blvd., NC 1146 Charlotte, NC 28262 Attn: Kolissa Brost | Showroom checking account (D56) | 129577849 |
| Fifth Third Bank | Merchandise Mart Plaza, Chicago, IL 60654 Attn: Denise Robinson | Showroom checking account (D56) | 7518739920 |
| Bank of America | 110 East 9th Street C-Lobby #1, Los Angeles, CA 90079 Attn: Rosa C. Valles | Showroom checking account (D56) | 03762-05448 |
| Bank of New York | 260 Madison Ave. (at 39th Street), New York, NY 10016 Attn: Beverly Harris | Showroom checking account (D56) | 630-0978736 |
| Frost National Bank | 102 North Denton Tap Road, Coppell, TX 75019 Attn: Beth Fontenot | Showroom checking account (D56) | 950003018 |
| National City Bank | 116 Allegheny Center, Pittsburgh, PA 15212-5356 Attn: Jim Carter | Showroom checking account (D56) | 658848964 |
| The Bank of Nova Scotia | 44 King Street West, Toronto, ON M5K 1H1 Canada Attn: George Constantinou | CAD lockbox, AP (D56) | 800020405914 |