**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                  :
In re                                             :     **Chapter 11 Case No.**
                                                  :
**LENOX SALES, INC.,** *et al.*                   :     **08-14679-ALG**
                                                  :
          **Debtors.**                            :     **(Jointly Administered)**
                                                  :
-------------------------------------------------------------x

### FINAL ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (II) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES

This matter is before the Court on the motion filed by Lenox Sales, Inc. and the

other debtors and debtors-in-possession (collectively, the "Debtors"[1]) in the above captioned

chapter 11 cases (collectively, the "Cases") dated October 20, 2008 (the "Motion") requesting

entry of an Order[2]:

(1)     for authorization and approval, pursuant to sections 105, 361, 362, and

364 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, and

9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for D 56, Inc.,

Lenox Retail, Inc. and Lenox, Incorporated, each as Borrowers, to obtain postpetition financing

up to the principal amount of $85,000,000 (inclusive of a $15,000,000 sublimit for Letters of

Credit) (the "DIP Facility"), and for the Guarantors to guarantee the payment of Borrowers'

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Lenox Sales, Inc. (3270), Lenox Group Inc. (4956), Lenox, Incorporated (8476), D 56, Inc. (0891), FL 56 Intermediate Corp. (4955), Lenox Retail, Inc. (3269), and Lenox Worldwide, LLC (7980).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Facility Agreement.

obligations thereunder and under this Order, including, without limitation, principal, accrued interest, unpaid fees and expenses, and all other Obligations and amounts due from time to time under the documents referred to below (collectively, the "Postpetition Indebtedness"), from UBS AG, Stamford Branch ("UBS AG") as Administrative Agent (the "DIP Administrative Agent"), UBS Securities LLC as lead arranger (the "Arranger"), JPMorgan Chase Bank, N.A. (the "DIP Collateral Agent", and with the DIP Administrative Agent and Arranger, collectively the "DIP Facility Agent"), and Issuing Bank, together with the other lenders, each in their lender capacity, collectively, the "DIP Facility Lenders") to (A) fund, among other things, ongoing working capital, general corporate, letters of credit and other financing needs of the Debtors, (B) pay certain transaction fees, and other costs and expenses of administration of the Cases, (C) provide the Revolver Agent and Revolver Lenders (each as defined below) and Term Loan Agent and Term Loan Lenders (each as defined below) Adequate Protection (as defined below), and (D) pay fees and expenses (including, without limitation, reasonable attorneys' fees and expenses) owed to the DIP Facility Agent and the DIP Facility Lenders under the DIP Facility and the other DIP Facility Documents (as defined below);

(2)     authorizing and empowering Borrower and Guarantors to execute and enter into the DIP Facility Documents and to perform such other and further acts as may be required in connection with the DIP Facility Documents;

(3)     requesting, pursuant to section 364(c) and (d) of the Bankruptcy Code, that the financing under the DIP Facility:

a.     have priority over any and all administrative expenses, including, without limitation, the kind specified in sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other consensual or non-consensual lien, levy or

attachment, whether incurred in the Cases or any successor case, which allowed super-priority claims of the DIP Facility Agent and DIP Facility Lenders shall be payable from and have recourse to all prepetition and postpetition property (other than proceeds of any claims or actions under Chapter 5 of the Bankruptcy Code, other than those brought pursuant to Section 549 of the Bankruptcy Code, (collectively, the "Avoidance Actions")) of the Debtors, except for the Carve-Out (as defined below), as provided for herein (the "DIP Facility Superpriority Claim"); and

b.  be deemed immediately secured by valid, binding, continuing, enforceable, fully perfected and unavoidable first priority senior priming security interests in, and liens upon, all prepetition and postpetition assets (including the Revolver Priority Collateral (as defined below), but excluding the Term Loan Priority Collateral (as defined below)) of the Debtors and Guarantors, whether now existing or hereafter acquired, and a junior priority security interest in all assets (specifically including the Term Loan Priority Collateral) otherwise encumbered by Revolver Permitted Prior Liens (as defined below) (collectively, the "DIP Facility Liens"), and to the extent not otherwise included, all proceeds, tort claims, insurance claims, and other rights to payments not otherwise included in the foregoing and products of the foregoing and all accessions to, substitutions and replacements for, and rents and profits of, each of the foregoing (excluding any Avoidance Actions and proceeds thereof) (collectively, the "Collateral"), as provided for by section 364(c) and (d) of the Bankruptcy Code subject only to (i) the Carve-Out as provided for herein, and (ii) Revolver Permitted Prior Liens in the Collateral; and

(4)  seeking the Court's authorization pursuant to sections 361(a), 363(c), and 364(d)(1) of the Bankruptcy Code to authorize use of Cash Collateral (as defined under section 363 of the Bankruptcy Code) and provide adequate protection to the Prepetition Secured Parties on account of their claims under the Revolver Credit Facility and Term Loan Credit Facility

(each as defined below), from such use of Cash Collateral and the terms of the financing being granted herein.

Pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1), due and sufficient notice under the circumstances of the Motion, the interim hearing held on November 25, 2008 (the "Interim Hearing"), the Order entered on November 25, 2008 (the "Interim Order") and this final hearing held on December 15, 2008 (the "Final Hearing") was provided by the Debtors as set forth in paragraph J below, and Court having held the Interim Hearing and Final Hearing; and upon consideration of all the pleadings filed with this Court; and any objections to the relief requested in the Motion that have not been resolved are hereby overruled; and upon the record made by the Debtors at the Interim Hearing and Final Hearing and the Declaration of Fred Spivak Pursuant to Local Bankruptcy Rule 1007-2, and after due deliberation and consideration and good and sufficient cause appearing therefor;

IT IS HEREBY FOUND:

A.    On November 23, 2008 (the "Commencement Date"), the Debtors each commenced in this Court a case under chapter 11 of the Bankruptcy Code.  The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On December 2, 2008, the U.S. Trustee appointed an official committee of unsecured creditors (the "Committee") in the Cases.

B.    Concurrently with the filing of the Motion, the Debtors filed a motion seeking joint administration of the Cases.  No request for the appointment of a trustee or examiner has been made in these Cases.

C.     This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     Without prejudice to the rights of any non-debtor party in interest as provided in paragraph 6 herein, the Debtors acknowledge, agree and stipulate that:

(i)     Pursuant to that certain Amended and Restated Revolving Credit Agreement dated as of April 20, 2007 by and among D 56, Inc., Lenox Retail, Inc. and Lenox Incorporated and certain of their subsidiaries, UBS AG, Stamford Branch, as administrative agent (the "Revolver Administrative Agent"), JPMorgan Chase Bank, N.A. as collateral agent (the "Revolver Collateral Agent", and together with the Revolver Administrative Agent, the "Revolver Agent") and the financial institutions from time to time parties thereto (collectively, the "Revolver Lenders") (as amended, supplemented, waived and otherwise modified from time to time, the "Revolver Credit Agreement" and together with all "Credit Documents" (as defined in the Revolver Credit Agreement) and all other agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, the "Revolver Financing Documents"), the Revolver Lenders made loans and advances to, issued letters of credit for and/or provided other financial accommodations to or for the benefit of the Debtors from time to time;

(ii)     Pursuant to the Revolver Financing Documents, the Debtors were, as of the Commencement Date, jointly and severally indebted to the Revolver Agent and the Revolver Lenders on account of the Revolver Indebtedness (as defined below) exclusive of accrued but unpaid interest, costs, fees and expenses, in the approximate principal amount of (i) $72,112,454.33 (inclusive of  $7,579,382.85 in outstanding Letters of Credit).  For purposes of this Order, the term "Revolver Indebtedness" shall mean and include, without duplication, any

and all amounts owing or outstanding under the Revolver Financing Documents (including, without limitation, all "Obligations" as defined in the Revolver Credit Agreement), and all interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the applicable provisions of the Revolver Financing Documents), and any and all obligations and liabilities, contingent or otherwise, owed in respect of the letters of credit or other obligations outstanding thereunder;

(iii)     Pursuant to the Revolver Financing Documents, the Debtors granted to and/or for the benefit of the Revolver Agent and Revolver Lenders continuing pledges, liens and security interests (the "Revolver Liens") to secure the Revolver Indebtedness and any guarantees thereof, in and upon substantially all of the Debtors' property and assets whether real or personal, tangible or intangible and wherever located, whether now or hereafter existing or acquired, and all the proceeds, products, offspring, rents and profits thereof (the "Prepetition Collateral"); and

(iv)     As of the Commencement Date and immediately prior to giving effect to the Interim Order, (a) the Revolver Financing Documents are valid and binding agreements and obligations of the Debtors, and the Revolver Liens (i) constitute valid, binding, enforceable and perfected priority security interests and Liens, subject only to the Liens permitted under the Revolver Credit Agreement (including the Term Loan Agent's Liens in the Term Loan Priority Collateral), but only to the extent such permitted senior Liens are valid, enforceable, non-avoidable Liens and security interests that are perfected prior to the Commencement Date (or perfected after the Commencement Date to the extent permitted by Section 546(b) of the Bankruptcy Code), which are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable

non-bankruptcy law and which are senior in priority to the Revolver Liens under applicable law and after giving effect to any applicable subordination or intercreditor agreements (such liens, the "Revolver Permitted Prior Liens"), and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (b) the Revolver Indebtedness constitutes the legal, valid and binding obligation of the Debtors, enforceable in accordance with its terms, (i) no objection, offset, defense or counterclaim of any kind or nature to the Revolver Indebtedness exists, and (ii) the Revolver Indebtedness, and any amounts paid at any time to Revolver Agent or any Revolver Lender on account thereof or with respect thereto, are not subject to avoidance, reduction, disallowance, impairment, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(v)    The Debtors have waived, discharged and released any right they may have to challenge any of the Revolver Indebtedness and the security for those obligations, and to assert any offsets, defenses, claims, objections, challenges, causes of action and/or choses of action against the Revolver Agent and Revolver Lenders and/or any of their respective affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors and employees.

E.    Without prejudice to the rights of any non-debtor party in interest as provided in paragraph 6 herein, the Debtors acknowledge, agree and stipulate that:

(i)    Pursuant to that certain Amended and Restated Term Loan Credit Agreement dated as of April 20, 2007 by and among D 56, Inc., Lenox Retail, Inc. and Lenox Incorporated and certain of their subsidiaries, The Bank of New York Mellon, as successor

administrative agent and successor collateral agent[3] (collectively, the "Term Loan Agent" and together with the Revolver Agent, the "Prepetition Agents") and the financial institutions from time to time parties thereto (collectively, the "Term Loan Lenders", and together with the Revolver Lenders, the "Prepetition Lenders") (as amended, supplemented, waived and otherwise modified from time to time, the "Term Loan Credit Agreement" and together with all "Credit Documents" (as defined in the Term Loan Credit Agreement) and all other agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, the "Term Loan Financing Documents"), the Term Loan Lenders made loans and advances to and/or provided other financial accommodations to or for the benefit of the Debtors from time to time;

(ii)    Pursuant to the Term Loan Financing Documents, the Debtors were, as of the Commencement Date, jointly and severally indebted to the Term Loan Agent and the Term Loan Lenders on account of the Term Loan Indebtedness (as defined below) exclusive of accrued but unpaid interest, costs, fees and expenses, in the approximate principal amount of $98,700,000.  For purposes of this Order, the term "Term Loan Indebtedness" shall mean and include, without duplication, any and all amounts owing or outstanding under the Term Loan Financing Documents (including, without limitation, all "Obligations" as defined in the Term Loan Credit Agreement), and all interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the

---

[3] Prior to the Commencement Date, UBS AG Stamford Branch resigned as the administrative agent and collateral agent under the Term Loan Credit Agreement.  On December 1, 2008 pursuant to that certain Assignment and Amendment Agreement, The Bank of New York Mellon was appointed as the successor administrative agent and collateral agent for the Term Loan Lenders under the Term Loan Credit Agreement.

applicable provisions of the Term Loan Financing Documents), and any and all obligations and liabilities, contingent or otherwise outstanding thereunder;

(iii)    Pursuant to the Term Loan Financing Documents, the Debtors granted to and/or for the benefit of the Term Loan Agent and Term Loan Lenders and continuing pledges, liens and security interests (the "Term Loan Liens", together with the Revolver Liens, the "Prepetition Liens") to secure the Term Loan Indebtedness and any guarantees thereof in and to the Prepetition Collateral; and

(iv)    As of the Commencement Date and immediately prior to giving effect to the Interim Order, (a) the Term Loan Financing Documents are valid and binding agreements and obligations of the Debtors, and the Term Loan Liens (i) constitute valid, binding, enforceable and perfected priority security interests and Liens, subject only to the Liens permitted under the Term Loan Credit Agreement (including the Revolver Agent's Liens in the Revolver Priority Collateral), but only to the extent such permitted senior Liens are valid, enforceable, non-avoidable Liens and security interests that are perfected prior to the Commencement Date (or perfected after the Commencement Date to the extent permitted by Section 546(b) of the Bankruptcy Code), which are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non bankruptcy law and which are senior in priority to the Term Loan Liens under applicable law and after giving effect to any applicable subordination or intercreditor agreements (such liens, the "Term Loan Permitted Prior Liens", together with the Revolver Permitted Prior Liens, the "Permitted Prior Liens"), and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (b) the Term Loan Indebtedness constitutes the legal, valid and binding obligation of the Debtors, enforceable in accordance with its terms, (i) no objection, offset, defense or

counterclaim of any kind or nature to the Term Loan Indebtedness exists, and (ii) subject to the

Intercreditor Agreement, the Term Loan Indebtedness, and any amounts paid at any time to Term

Loan Agent or any Term Loan Lender on account thereof or with respect thereto, are not subject

to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy

Code or applicable non-bankruptcy law.

(v)    The Debtors have waived, discharged and released any right they

may have to challenge any of the Term Loan Indebtedness and the security for those obligations,

and to assert any offsets, defenses, claims, objections, challenges, causes of action and/or choses

of action against the Term Loan Agent and Term Loan Lenders and/or any of their respective

affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors and

employees..

F.    Pursuant to that certain Amended and Restated Intercreditor Agreement

dated as of April 20, 2007 (as amended, supplemented, restated or otherwise modified prior to

the Commencement Date, the "Intercreditor Agreement"), the Debtors, the Revolver Agent and

the Term Loan Agent are parties to an intercreditor arrangement that governs the respective

rights, obligations and priorities of the Revolver Lenders and the Term Loan Lenders with

respect to their interests in the Collateral.  Under the Intercreditor Agreement, the Term Loan

Agent, on behalf of the Term Loan Lenders, holds a first priority security interest in all Collateral

consisting of copyrights, trademarks, customer lists, patents, real estate, machinery and

equipment as well as any and all proceeds of the foregoing (the "Term Loan Priority Collateral")

and the Revolver Agent, on behalf of the Revolver Lenders, holds a second lien interest on such

Term Loan Priority Collateral.  Further, the Revolver Agent, on behalf of the Revolver Lenders,

holds a first lien interest on all Collateral other than the Term Loan Priority Collateral (the

"Revolver Priority Collateral") and the Term Loan Agent, on behalf of the Term Loan Lenders,

holds a second lien interest on all the Revolver Priority Collateral.  The Intercreditor Agreement shall remain in full force and effect and be enforceable according to its terms, provided, however, that for purposes of the Intercreditor Agreement, the DIP Facility shall be deemed a refinancing of the Revolver Indebtedness and the DIP Facility Agent and DIP Facility Lenders shall be entitled to all the benefits and subject to all conditions of the Intercreditor Agreement.

G.    The Debtors' businesses have a need to obtain the DIP Facility and use Cash Collateral in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational, financial and general corporate needs.  The access of the Debtors to sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations (including letters of credit and other credit support) and use of Cash Collateral is vital to the preservation and maintenance of the going concern values of the Debtors and to the success of these Cases.  Without such credit and use of Cash Collateral, the Debtors would not be able to operate their businesses and the Debtors' estates would be irreparably harmed.

H.    The Debtors are unable to obtain sufficient financing from sources other than the DIP Facility Lenders on terms more favorable than under the DIP Facility and all the documents and instruments delivered pursuant thereto or in connection therewith (inclusive of the DIP Facility Agreement, the "DIP Facility Documents").  The Debtors have been unable to obtain sufficient unsecured credit solely under section 503(b) (1) of the Bankruptcy Code as an administrative expense.  New credit is unavailable to the Debtors without (i) providing the DIP Administrative Agent for the benefit of the DIP Facility Lenders (a) the DIP Facility Superpriority Claims and (b) the DIP Facility Liens as provided herein and in the DIP Facility

Documents and (ii) without concurrently providing for the Adequate Protection to the Prepetition Secured Parties on the terms and conditions as set forth herein.

I.       The DIP Facility Agent, DIP Facility Lenders and Prepetition Secured Parties have indicated a willingness to agree and consent to, and as applicable, provide financing to the Debtors and permit the use of Cash Collateral by the Debtors subject to, (i) the entry of this Order, (ii) the terms and conditions of the DIP Facility Agreement, and (iii) findings by the Court that such postpetition financing and use of Cash Collateral is essential to the Debtors' estates, that the terms of such financing and use of Cash Collateral were negotiated in good faith and at arm's length, and that the DIP Facility Agent's and/or the DIP Facility Lenders' DIP Facility Liens and Superpriority Claims, and other protections granted pursuant to this Order and the DIP Facility Documents will not be affected by any subsequent reversal, modification, vacatur, or amendment of this Order or any other order, as provided in section 364(e) of the Bankruptcy Code.  Each of the DIP Facility Agent, DIP Facility Lenders and Prepetition Secured Parties has acted in good faith in, as applicable, negotiating, consenting to and in agreeing to provide the postpetition financing arrangements and use of Cash Collateral (or otherwise not opposing such use) contemplated by this Order and the other DIP Facility Documents and the reliance of each of the DIP Facility Agent, DIP Facility Lenders and Prepetition Secured Parties on the assurances referred to above is in good faith.

J.       Notice of the Motion, Interim Order and the proposed entry of this Order has been provided to: (i) the thirty (30) largest creditors listed in the Debtors' consolidated list of creditors (excluding insiders), (ii) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), (iii) counsel to the DIP Facility Agent, (iv) counsel to the Revolver Agent, (v) counsel to the Term Loan Agent and Term Loan Lenders, (vi) each of the financial institutions listed in the Debtors' Motion for an Order, Pursuant to Sections 105(a),

345(b), 363(c) and 364(a) of the Bankruptcy Code Authorizing the Debtors to (I) Continue to Use Existing Cash Management System, (II) Maintain Existing Bank Accounts and Business Forms, And (III) Waive Requirements of Section 345(b) of the Bankruptcy Code, (vii) all known parties asserting a lien against the Collateral, (viii) landlords of the Debtors, (ix) counsel to the Committee and (x) any other party that has filed a request for notice pursuant to Bankruptcy Rule 2002 or are required to receive notice under the Bankruptcy Rules, ((i) through (x), the "Notice Parties"). The requisite notice of the Motion and the relief requested thereby and this Order has been provided in accordance with Bankruptcy Rule 4001, which notice is sufficient for all purposes under the Bankruptcy Code, including, without limitation, sections 102(1) and 364 of the Bankruptcy Code, and no other notice need be provided for entry of this Order.

K.       The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b) (2) and 4001(c) (2). Absent entry of this Order, the Debtors' businesses, properties and estates will be harmed.

L.       The ability of the Debtors to finance their respective operations and the availability to the Debtors of sufficient working capital and other financial and general corporate liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations, including letters of credit and credit support, and use of Cash Collateral is in the best interests of the Debtors and their respective creditors and estates. The interim financing and use of Cash Collateral authorized hereunder is vital to avoid harm to the Debtors' businesses, properties and estates and to allow the orderly continuation of the Debtors' businesses.

M.       Based upon the record presented by the Debtors to this Court: (i) the terms of the DIP Facility and use of Cash Collateral are the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duty, and are supported by reasonably equivalent value and fair consideration; and

(ii) the DIP Facility and use of Cash Collateral has been negotiated in good faith and at arm's length among the Debtors and the DIP Facility Agent, the DIP Facility Lenders and the Prepetition Secured Parties, and any credit extended, letters of credit issued, loans made, credit support provided and other financial accommodations extended to the Debtors by the DIP Facility Lenders and use of Cash Collateral by the Debtors shall be deemed to have been extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

N.      The consent of the Prepetition Secured Parties granted herein is expressly limited to (i) the Debtors' use of Cash Collateral solely on the terms and conditions set forth in this Order and (ii) the postpetition financing being provided by the DIP Facility Agent and DIP Facility Lenders as contemplated by this Order and the DIP Facility Agreement.  Nothing in this Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Prepetition Secured Parties are or will be adequately protected with respect to any non-consensual use of Cash Collateral or priming of the Revolver Liens.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.      Disposition.  The Motion is granted as set forth in this Order.  Any objections that have not previously been withdrawn are hereby overruled.  This Order shall immediately become effective upon its entry.

2.      Authorization to Borrow.  Under that certain Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement (as amended, modified or revised from time to time, the "DIP Facility Agreement") by and among the Borrowers, the Guarantors, the DIP Facility Agent, and the DIP Facility Lenders, the Borrower is authorized to borrow under the DIP Facility from the DIP Facility Lenders pursuant to the terms and conditions of the DIP

Facility Agreement and use such Advances and proceeds in accordance with the terms of the DIP Facility Agreement and this Order. The DIP Facility Documents shall constitute legal, valid, and binding obligations of the Debtors and Guarantors party thereto, enforceable against Lenox and each Guarantor in accordance with their terms.

3.    <u>DIP Facility Superpriority Claims</u>. For all of the Debtors' Obligations and Postpetition Indebtedness arising under the DIP Facility and the DIP Facility Documents, the DIP Facility Lenders and the DIP Facility Agent are granted, pursuant to section 364(c)(1) of the Bankruptcy Code, subject only to the Carve-Out, the allowed DIP Facility Superpriority Claims which claims shall be payable from and have recourse to, in addition to the Collateral, any unencumbered prepetition or postpetition property of the Debtors whether now existing or hereafter acquired; provided however, the DIP Facility Superpriority Claims shall not be payable from proceeds of any Avoidance Actions. The DIP Facility Superpriority Claims shall be deemed legal, valid, binding, enforceable, and perfected claims, not subject to subordination, impairment or avoidance, for all purposes in the Cases and any successor case.

4.    <u>DIP Facility Liens</u>. As security for the repayment of the Postpetition Indebtedness, pursuant to sections 364(c)(2), (c)(3), and (d) of the Bankruptcy Code, the DIP Administrative Agent, on behalf of itself and the DIP Facility Lenders, is hereby granted (without the necessity of the execution by the Debtors or the filing or recordation of mortgages, security agreements, lock box agreements, financing statements, or otherwise) the DIP Facility Liens on and in the Collateral and all proceeds thereof, which liens are valid, binding, enforceable and fully perfected as of the date hereof, not subject to subordination (except as provided in the Intercreditor Agreement), impairment or avoidance, for all purposes in the Cases and any successor case. Upon entry of the Interim Order all possessory collateral held by the Revolver Administrative Agent was deemed to have been transferred to the DIP Administrative

Agent and all lockbox, blocked account and similar agreements shall be deemed assigned to the

DIP Administrative Agent, on behalf of the DIP Facility Lenders and shall be junior in priority to

in the Collateral encumbered by the Revolver Permitted Prior Liens; provided however, the

Intercreditor Agreement shall govern the respective rights of the DIP Administrative Agent's and

Term Loan Agent's interests in the Collateral (including, without limitation, with respect to the

timing and manner of the disposition of any such Collateral).

      5.    <u>Carve-Out</u>.  Subject to the terms and conditions contained in this

paragraph, the DIP Facility Liens, DIP Facility Superpriority Claim, the Adequate Protection and

liens and claims held by the Prepetition Secured Parties shall be subject to the following:

(i) unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C.

§ 1930(a); (ii) allowed professional fees and expenses of the Debtors and the Committee (but

excluding any transaction, restructuring, completion, success or similar fees) (the "<u>Professional</u>

<u>Fees</u>") and Committee member expenses, incurred to the extent consistent with the DIP Budget,

but unpaid, prior to delivery of a notice of an Event of Default (such Professional Fees, the

"<u>Accrued Claims</u>" and such notice, the "<u>Carve-Out Notice</u>"); (iii) Professional Fees incurred

subsequent to delivery of the Carve-Out Notice to the extent consistent with the DIP Budget in

an aggregate amount not to exceed $2,000,000 and (iv) the approved professional fees and

expenses incurred by any court appointed Chapter 7 Trustee up to an aggregate amount of

$50,000 (collectively, (i)–(iv), the "<u>Carve-Out</u>").  The Carve-Out shall exist at all times, but only

be triggered and payable upon (i) the occurrence of an Event of Default under the DIP Loan

Documents and the DIP Administrative Agent's delivery of a Carve-Out Notice to the Debtors,

counsel for the Debtors, and counsel to any Committee or (ii) the Maturity Date.

Notwithstanding anything herein to the contrary, no Prepetition Collateral, Collateral, proceeds

thereof, or Cash Collateral, or any portion of the Carve-Out or DIP Financing shall include,

apply to, or be available for any fees or expenses incurred by any party, including the Debtors or

the Committee, in connection with (i) the initiation or prosecution of any claims, causes of

action, adversary proceedings, or other litigation against the DIP Facility Agent or any of the

DIP Facility Lenders, including, without limitation, challenging the amount, validity, extent,

perfection, priority, characterization, or enforceability of, or asserting any defense, counterclaim,

or offset to the Postpetition Indebtedness, the DIP Facility Superpriority Claim, or the security

interests and DIP Facility Liens of the DIP Administrative Agent in respect thereof, (ii) asserting

any claims or causes of action, including, without limitation, claims or actions to hinder or delay

the DIP Facility Agent's, any DIP Facility Lender's any Prepetition Secured Party's assertion,

enforcement or realization on the Collateral in accordance with the DIP Facility Documents or

this Order or any Avoidance Actions against the DIP Facility Agent, any DIP Facility Lender, or

any Prepetition Secured Party, or (iii) the initiation or prosecution of any claims, causes of

action, adversary proceedings, or other litigation against any of the Prepetition Secured Parties,

including, without limitation, challenging the amount, validity, extent, perfection, priority, or

enforceability of, or asserting any defense, counterclaim, or offset to the Prepetition

Indebtedness, or the Adequate Protection granted herein; provided however, up to the amount of

$250,000 shall be permitted to be used by professionals of the Committee to investigate the liens,

claims and interests of the Prepetition Secured Parties.  The foregoing shall not be construed as

consent to the allowance of any fees and expenses referred to above and shall not affect the right

of the Debtors, the DIP Facility Agent, the DIP Facility Lenders, the Prepetition Secured Parties,

the Committee, the U.S. Trustee, or other parties in interest to object to the allowance and

payment of such amounts.  Payment of any portion of the Carve-Out shall not, and shall not be

deemed to, (i) reduce any Debtor's obligations owed to any of the DIP Agent, DIP Lenders,

Prepetition Agents, and/or Prepetition Secured Parties or (ii) subordinate, modify, alter or

otherwise affect any of the liens and security interests of such parties in the Collateral or Prepetition Collateral (or their respective claims against the Debtors).

6.    <u>Investigation Rights</u>.  Notwithstanding anything herein to the contrary, including the Debtors' stipulations and releases herein solely as they relate to the Prepetition Secured Parties, the Committee, if appointed, and all non-debtor parties in interest (including any trustee appointed or elected in the cases prior to the Investigation Termination Date (as defined below)) shall have until February 6, 2009 (subject to extension by the Debtors, Committee and applicable Revolver Agent or Term Loan Agent or order of the Court) (the "<u>Investigation Termination Date</u>")[4] to investigate the validity, perfection, and enforceability of the Revolver Liens, Term Loan Liens and the amount and allowability of the Revolver Indebtedness, or Term Loan Indebtedness or to assert any other claims or causes of action against any of Prepetition Secured Parties.  The Committee is hereby granted standing and the authority to file a Challenge (as defined below) on behalf of the Debtors' estates raising any and all claims and defenses without further motion seeking authority to bring such action and without further order of this Court.   If the Committee, or any non-debtor party in interest hereafter vested with authority by the Court, determines that there may be a challenge by the Investigation Termination Date, upon three (3) days' written notice (by e-mail or otherwise) to the Debtors and the respective Revolver Agent or Term Loan Agent, such Committee or other non-debtor party in interest hereafter vested with authority by the Court shall be permitted to file and prosecute an objection or claim related thereto (each, a "<u>Challenge</u>"), and shall have only until the Investigation Termination Date to file such objection or otherwise initiate an appropriate action or adversary proceeding (including a motion seeking authority to file an action) on behalf of the Debtors' estates setting

---

[4]  Until the occurrence of the respective Investigation Termination Date as set forth herein, the Debtors' stipulations and releases herein shall not be binding upon the Committee and any non-debtor parties in interest.

forth the basis of any such challenge, claim or cause of action.  If a party does not file a Challenge on or before the Investigation Termination Date (or such other later date as extended by the written consent of the Debtors and the Revolver Agent or the Term Loan Agent, as applicable), then the agreements, acknowledgements, releases and stipulations contained in paragraphs D and E of this Order shall be irrevocably binding on all other parties, the estates, Committee and all parties in interest (including without limitation a receiver, administrator, or trustee appointed in any of the Cases or any successor case or in any jurisdiction) without further action by any party or this Court and the Committee and any other party in interest (including without limitation a receiver, administrator, or trustee appointed in any of the Cases or any successor case or in any jurisdiction) shall thereafter be forever barred from bringing any Challenge with respect to the Prepetition Secured Parties. If any complaint is timely filed on or before the applicable termination date (or any amendment to such complaint as may be allowed thereafter), all other claims and actions against the Prepetition Secured Parties not expressly asserted in such complaint or amended complaint shall be deemed, immediately and without further notice, motion or application to, order of, or hearing before, this Court, to have been forever relinquished, discharged, released and waived.  Nothing in this Order (a) confers standing on any party (other than the Committee) to file or prosecute such claims and actions described herein or (b) precludes any Prepetition Secured Party from seeking allowance of all or any portion of the Revolver Indebtedness or Term Loan Indebtedness prior to the occurrence of the Investigation Termination Date.

7.    <u>Limitation on Additional Surcharges</u>.  So long as the DIP Agent, DIP Lenders and Prepetition Secured Parties are providing financing under the DIP Facility or otherwise allowing use of Cash Collateral, with the exception of the Carve-Out and except as otherwise permitted by the DIP Facility, neither the Collateral, Prepetition Collateral nor any

DIP Facility Agent, DIP Facility Lender, or any Prepetition Secured Parties shall be subject to surcharge, pursuant to section 506(c) of the Bankruptcy Code or otherwise, by the Debtors or any other party in interest without the prior written consent of the DIP Administrative Agent and Prepetition Agents and no such consent shall be implied from any other action, inaction, or acquiescence by such parties in this proceeding, including but not limited to funding of the Debtors' ongoing operation by the DIP Facility Agent and DIP Facility Lenders. The DIP Facility Agent, DIP Facility Lender, Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral or Prepetition Collateral.

8.      Use of Cash Collateral. The Debtors shall have use of Cash Collateral pursuant to the terms of the DIP Facility Agreement and the terms of this Order. To the extent any proceeds from dispositions of Term Loan Priority Collateral are received, such proceeds shall be paid to the Term Loan Agent and applied against the Term Loan Indebtedness in accordance with the terms of the Term Loan Credit Facility.

9.      Payoff of Revolver Indebtedness and Revolver Agent and Revolver Lenders Adequate Protection. (a) As authorized in the Interim Order, all letters of credit under the Revolver Credit Agreement were deemed issued under the DIP Facility upon entry of the Interim Order and all Cash Collateral and proceeds of other Collateral (other than Term Loan Priority Collateral) was tendered to the Revolver Agent, for the benefit of the Revolver Lenders and applied against the Revolver Indebtedness in accordance with the terms of the Revolver Credit Agreement (including the repayment and termination of any Hedge Agreements). Upon entry of this Order, the Debtors are authorized to use Advances from the DIP Facility to repay the Revolver Indebtedness outstanding to the Revolver Agent, on behalf of the Revolver Lenders subject to the terms of paragraph 9(b) below. Upon the payment of the Revolver Indebtedness in

full in cash, the Revolver Agent and Prepetition Lenders irrevocably agree and consent, and this

Order deems that the Revolver Liens and Revolver Replacement Liens (as defined in the Interim

Order) be, and are, transferred and assigned to the DIP Facility Agent, for the benefit of itself

and the DIP Facility Lenders, and shall be deemed DIP Facility Liens, without any additional

recording, assignment or documentation of the transfer and assignment of liens required; subject

in all respects to the Intercreditor Agreement; and

        (b)     As adequate protection (the "<u>Revolver Adequate Protection</u>") for all

(i) indemnification obligations arising under provisions of the Revolver Financing Documents

which, by their terms, survive payment in full of the Prepetition Indebtedness (the

"<u>Indemnification Obligations</u>") and (ii) claims for professional fees and expenses incurred by the

Revolver Agent and/or Revolver Lenders pursuant to the terms of the Revolver Credit

Agreement, whether incurred prepetition or postpetition (the "<u>Indemnification Fees</u>", together

with the Indemnification Obligations, the "<u>Indemnification Claim</u>"), if any, shall constitute an

administrative expense claim against the Debtors' estates and property under section 507(b) of

the Bankruptcy Code (other than with respect to proceeds from Avoidance Actions) (the

"<u>Revolver Administrative Claim</u>"), junior and subject only to the DIP Facility Superpriority

Claim and Carve-Out and *pari passu* with the Term Loan Administrative Claim (as defined

below).  The Debtors shall pay any Indemnification Fees within ten (10) days of receipt of a

detailed summary invoice therefor (with a copy to counsel to the Committee and U.S. Trustee)

provided that none of such fees and expenses shall be subject to approval by the Court or the

United States Trustee Guidelines and no recipient of any such payment shall be required to file

with respect thereto any interim or final fee application with the Court; provided, however, that

the Court shall have jurisdiction to determine any dispute concerning such invoices.

Notwithstanding the Debtors' payment of the Revolver Indebtedness, Indemnification Claim or

Indemnification Fees, if a Challenge (as defined below) is successfully adjudicated against the Revolver Agent or the Revolver Lenders, then the Revolver Agent and Revolver Lenders shall remain subject to the jurisdiction of this Court and subject to disgorgement of such amounts or such other remedies as may be ordered by a final order of this Court.

10.    <u>Term Loan Agent and Term Loan Lenders Adequate Protection</u>.    In consideration for the use of Collateral (including Term Loan Priority Collateral), the Term Loan Agent and Term Loan Lenders shall receive the following (collectively the "<u>Term Loan Adequate Protection</u>", together with the Revolver Adequate Protection, referred to herein as the "<u>Adequate Protection</u>"):

(a)    To the extent there is a diminution in the Term Loan Collateral Agent's interest in the Prepetition Collateral (whether the reason for such diminution is as a result of or from, arises from, or is attributable to, the imposition of the automatic stay, the use of Cash Collateral or the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Prepetition Collateral), the Term Loan Collateral Agent, on behalf of the Term Loan Lenders, is granted a replacement lien in the Collateral, subject to the Carve-Out and Intercreditor Agreement (the "<u>Term Loan Replacement Liens</u>"), which liens are valid, binding, enforceable and fully perfected as of the date hereof and shall be subordinate only to the DIP Facility Liens and Term Loan Permitted Prior Liens;

(b)    Subject to the Carve-Out, an allowed administrative claim (the "<u>Term Loan Administrative Claim</u>") against the Debtors' estates under section 507(b) of the Bankruptcy Code (excluding proceeds from Avoidance Actions) to the extent that the Term Loan Replacement Liens do not adequately protect the diminution in the value of the Prepetition Collateral, which Term Loan Administrative Claim, if any, shall be junior and subordinate to the

DIP Facility Superpriority Claims and shall be *pari passu* with any Revolver Administrative Claim;

(c)     To the extent provided in the Term Loan Credit Agreement, payments of the Term Loan Agent's or its counsel's reasonable fees and expenses for legal counsel, financial advisors, auditors and other professionals for services rendered prepetition or postpetition on behalf of the Term Loan Agent or its counsel and payments of each of the Term Loan Lenders' reasonable fees and expenses for legal counsel, auditors, financial advisors and other professionals for services rendered prepetition or postpetition; provided that none of such fees and expenses as adequate protection payments hereunder shall be subject to approval by the Court or the United States Trustee Guidelines, but after the closing date of the DIP Facility, such professional shall provide copies of detailed summary invoices (with redactions as necessary) and statements to the U.S. Trustee and counsel to the Committee. No recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; provided, however, that the Court shall have jurisdiction to determine any dispute concerning such invoices, and provided, further, however, that such payments shall be provisional in nature, and if and to the extent that any payment(s) is challenged by a party in interest under section 506(b) of the Bankruptcy Code and ultimately not allowed under such provision, such payment(s) may be recharacterized as a payment of principal on the indebtedness under the Term Loan Credit Agreement.  The Term Loan Indebtedness shall continue to accrue interest at the applicable rate under the Term Loan Credit Agreement; and

(d)     To the extent the Term Loan Agent or any Term Loan Lender receives payment from the proceeds generated upon the sale, transfer or other disposition of any Term Loan Priority Collateral or Revolver Priority Collateral (to the extent permitted under the Intercreditor Agreement), upon the entry of a final order in connection with a successful

Challenge against the Term Loan Agent or Term Loan Lenders, such Term Loan Agent or Term Loan Lender (as applicable) shall return such payment to the Debtors to the extent directed by the Court.

11.    <u>Fees and Expenses of the DIP Facility Agent and the DIP Facility Lenders</u>.  The Debtors shall promptly following receipt of a written summary invoice (with a copy delivered to the U.S. Trustee), reimburse the DIP Facility Agent and the DIP Facility Lenders for their reasonable out-of-pocket costs, fees (including, without limitation, reasonable attorneys' and financial advisors' fees and expenses), charges, and expenses incurred in connection with the Cases or under the DIP Facility whether incurred prepetition or postpetition. None of such out-of-pocket costs, fees, charges, and expenses shall be subject to Court approval or required to be maintained in accordance with the U.S. Trustee Guidelines and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court, provided that the Court shall have jurisdiction to determine any dispute concerning such invoices.

12.    <u>Restrictions on the Debtors</u>.  Other than the Carve-Out and the Permitted Prior Liens, no claim or Lien having a priority superior or *pari passu* with those granted by this Order to the DIP Administrative Agent, the DIP Facility Lenders or Prepetition Secured Parties shall be granted by any Debtor or Guarantor, while any portion of the DIP Facility (or refinancing thereof), Adequate Protection or the commitment thereunder remains outstanding without the written consent of the DIP Administrative Agent and Prepetition Agents.  Except as expressly permitted by the DIP Facility Agreement and this Order, the Debtors will not, at any time during the Cases, grant mortgages, security interests, or liens in the Collateral or any portion thereof to any other parties pursuant to section 364(d) of the Bankruptcy Code or otherwise.

13. <u>Additional Perfection Measures</u>.  The DIP Facility Agent, DIP Facility Lenders and Prepetition Secured Parties shall not be required to file financing statements, mortgages, deeds of trust, security deeds, notices of lien, or similar instruments in any jurisdiction or effect any other action to attach or perfect the security interests and liens granted under the DIP Facility Documents and this Order (including, without limitation, the taking possession of any of the Collateral, or the taking of any action to have security interests or liens noted on certificates of title or similar documents).  Notwithstanding the foregoing, the DIP Facility Agent, DIP Facility Lenders and Prepetition Agents may, in their sole discretion, file this Order or such financing statements, mortgages, deeds of trust, notices of lien, or similar instruments or otherwise confirm perfection of such liens, security interests, and mortgages without seeking modification of the automatic stay under section 362 of the Bankruptcy Code and all such documents shall be deemed to have been filed or recorded at the time of and on the Commencement Date, with the priorities set forth herein.

14. <u>Access to Collateral – No Landlord's Liens</u>.  Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Administrative Agent, for the ratable benefit of the DIP Facility Lenders, contained in this Order or the DIP Facility Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Facility Agreement, upon written notice to the landlord of any leased premises that an Event of Default has occurred and is continuing under the DIP Facility Documents, the DIP Administrative Agent may, subject to any separate agreement by and between such landlord and the DIP Administrative Agent (the "<u>Separate Agreement</u>"), enter upon any leased premises of the Debtors for the purpose of exercising any remedy with respect to Collateral located thereon and, subject to the Separate Agreement, shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder,

provided that, subject to the Separate Agreement, the DIP Administrative Agent shall only pay rent of the Debtors that first accrues after the DIP Administrative Agent's written notice referenced above and that is payable during the period of such occupancy by the DIP Administrative Agent, calculated on a per diem basis. Nothing herein shall require the DIP Administrative Agent to assume any lease as a condition to the rights afforded to the DIP Administrative Agent in this paragraph.

15.  <u>Automatic Stay</u>.  (a) Subject only to the provisions of the DIP Facility Agreement and without further order from this Court, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Facility Agent and DIP Facility Lenders to exercise, upon the occurrence and during the continuance of any Event of Default (as defined and provided for in Article 8 of the DIP Facility Agreement), all rights and remedies provided for in the DIP Facility Documents (including, without limitation and without prior notice, the right to freeze monies or balances in the Debtors' accounts or set off monies or balances of the Debtors in accounts maintained by the DIP Facility Agent or any DIP Facility Lender, the right to charge default rate of interest, terminate commitments and cease funding under the DIP Facility Agreement and termination of any Cash Collateral use); *provided, however*, that prior to the exercise of any enforcement or liquidation remedies against the Collateral (other than as set forth above), the DIP Administrative Agent shall be required to give five (5) business days prior written notice provided to the Debtors, their bankruptcy counsel, the Committee's counsel, the Prepetition Agents and the U.S. Trustee. Notwithstanding the occurrence of an Event of Default or termination of the Commitments under the DIP Facility Agreement or anything herein, all of the rights, remedies, benefits, and protections provided to the DIP Facility Agent and DIP Facility Lenders under the DIP Facility Documents and this Order shall survive the Maturity Date.  The Debtors and/or the Committee

shall have the initial burden of proof at any hearing on any request by the Debtors and/or the

Committee to re-impose or continue the automatic stay as provided for herein; *provided,*

*however*, that the only issue to be determined at such hearing is whether an Event of Default has

occurred and is continuing.  This Court shall retain exclusive jurisdiction to hear and resolve any

disputes and enter any orders required by the provisions of this paragraph and relating to the

application, re-imposition or continuance of the automatic stay as provided hereunder.

(b)  In the event the DIP Facility Agent or DIP Facility Lenders commence the

exercise of any enforcement or liquidation remedies against the Collateral, the automatic stay

provisions of section 362 of the Bankruptcy Code shall be vacated and modified to the extent

necessary to permit the Prepetition Secured Parties to exercise all rights and remedies provided

for in the Revolver Financing Documents and the Term Loan Financing Documents subject to

the terms of the Intercreditor Agreement.

16.    Binding Effect.  The provisions of this Order shall be binding upon and

inure to the benefit of the DIP  Facility Agent, the DIP Facility Lenders, the Prepetition Secured

Parties, the Debtors, and their respective successors and assigns, including any trustee hereafter

appointed for the estate of any of the Debtors, whether in these Cases or in the event of the

conversion of any of the Cases to a liquidation under chapter 7 of the Bankruptcy Code.  Such

binding effect is an integral part of this Order.

17.    Survival.  The provisions of this Order and any actions taken pursuant

hereto shall survive the entry of any order (i) confirming any plan of reorganization in any of the

Cases (and, to the extent not satisfied in full in cash, the Postpetition Indebtedness shall not be

discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy

Code, each of the Debtors having hereby waived such discharge); (ii) converting any of the

Cases to a chapter 7 case unless permitted under the DIP Facility Documents; or (iii) dismissing

any of the Cases unless permitted under the DIP Facility Documents, and the terms and provisions of this Order as well as the DIP Facility Superpriority Claims,  the DIP Facility Liens, and the Adequate Protection granted pursuant to this Order and/or the DIP Facility Documents shall continue in full force and effect notwithstanding the entry of any such order, and such claims and liens shall maintain their priority as provided by this Order, and the DIP Facility Documents and to the maximum extent permitted by law until all of the Postpetition Indebtedness is indefeasibly paid in full in cash and discharged.

18.    <u>After Acquired Property</u>.  Except as otherwise provided in this Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors after the Commencement Date, including, without limitation, all Collateral pledged or otherwise granted to the DIP Facility Agent, on behalf of themselves and the DIP Facility Lenders, pursuant to the DIP Facility Documents and this Order, is not and shall not be subject to any lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Commencement Date, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable lien as of the Commencement Date which is not subject to subordination under section 510(c) of the Bankruptcy Code or other provision or principles of applicable law.

19.    <u>Access to the Debtors</u>.  In accordance with the provisions of access in the DIP Facility Documents, the Debtors shall permit representatives, agents, and/or employees of the DIP Administrative Agent, its counsel and DIP Facility Lenders to have reasonable access to their premises and records during normal business hours (without unreasonable interference with the proper operation of the Debtors' businesses) and shall cooperate, consult with, and provide to such representatives, agents, and/or employees all such information as they may reasonably request.

20.    <u>Authorization to Act</u>.  Each of the Debtors is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of security agreements, mortgages and financing statements), and to pay interest, fees and all other amounts as provided under this Order and the DIP Facility, which may be reasonably required or necessary for the Debtors' full and timely performance under the DIP Facility and this Order, including, without limitation:

(a)    the execution of the DIP Facility Documents;

(b)    the modification or amendment of the DIP Facility Agreement or any other DIP Facility Documents without further order of this Court, in each case, in such form as the Debtors, the DIP Facility Agent, and the DIP Facility Lenders may agree in accordance with the terms of the DIP Facility; *provided*, *however*, that notice of any material modification or amendment (including any waiver of any Event of Default)  shall be provided to counsel for the Committee, the Prepetition Agents and the U.S. Trustee, each of which will have five (5) days from the date of delivery of such notice within which to object in writing; *provided further*, *however*, that if such objection is timely provided, then such modification or amendment shall be permitted only pursuant to an order of the Court; and

(c)    the non-refundable payments to the DIP Facility Agent or the DIP Facility Lenders, as the case may be, of the fees referred to in the DIP Facility Agreement and the Fee Letter, and reasonable costs and expenses as may be due from time to time, including, without limitation, reasonable attorneys' and other professional fees and disbursements as provided in the DIP Facility Documents.

21.    <u>Insurance Policies</u>.   As of the Interim Order, the DIP Administrative Agent and DIP Facility Lenders shall be, and shall be deemed to be, without any further action or

notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors which in any way relates to the Collateral.

22.    <u>Subsequent Reversal</u>.  If any or all of the provisions of this Order or the DIP Facility Documents are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court:  (i) such modification, vacatur, amendment, or stay shall not affect the validity of any obligation of any Debtor or Guarantor to the DIP Facility Agent, DIP Lenders or Prepetition Secured Parties that is or was incurred prior to such party receiving written notice of the effective date of such modification, vacatur, amendment, or stay (the "<u>Effective Date</u>"), or the validity, enforceability or priority of the DIP Facility Superpriority Claim, DIP Facility Liens, Adequate Protection or other grant authorized or created by this Order, the Interim Order and the DIP Facility Documents; and (ii) the Postpetition Indebtedness and Adequate Protection pursuant to this Order and the DIP Facility Documents arising prior to the Effective Date shall be governed in all respects by the original provisions of this Order and the DIP Facility Documents, and the validity of any such credit extended or security interest granted pursuant to this Order and the DIP Facility Documents and use of Cash Collateral is and shall be protected by section 364(e) of the Bankruptcy Code.

23.    <u>Effect of Dismissal of Cases</u>.  If the Cases are dismissed, converted or substantively consolidated, then neither the entry of this Order nor the dismissal, conversion or substantive consolidation of these Cases shall affect the rights of the DIP Facility Agent, DIP Lenders and the Prepetition Secured Parties (to the extent of Adequate Protection provided hereunder) under their respective documents or this Order, and all of the respective rights and remedies thereunder of the DIP Facility Agent, DIP Lenders and the Prepetition Secured Parties (to the extent of Adequate Protection provided hereunder) shall remain in full force and effect as if the Cases had not been dismissed, converted, or substantively consolidated. If an order

dismissing any of the Cases is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (i) the DIP Facility Liens and DIP Facility Superpriority Claim granted to and conferred upon the DIP Facility Agent and DIP Facility Lenders and the protections afforded to the DIP Facility Agent and/or the DIP Facility Lenders pursuant to this Order, the Interim Order and the DIP Facility Documents shall continue in full force and effect and shall maintain their priorities as provided in the Interim Order, this Order until all Postpetition Indebtedness shall have been paid and satisfied in full in cash and, with respect to outstanding undrawn letters of credit, cash collateralized in accordance with the provisions of the DIP Facility Agreement (and that such DIP Facility Liens, DIP Facility Superpriority Claim and other protections shall, notwithstanding such dismissal, remain binding on all interested parties), (ii) the Adequate Protection granted to and conferred upon the Prepetition Secured Parties shall continue in full force and effect and shall maintain their priorities as provided in this Order and the Intercreditor Agreement until such Adequate Protection has been satisfied, (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Facility Liens, Prepetition Liens, DIP Facility Superpriority Claim, and Adequate Protection referred to herein, and (iv) any hearing on a motion to dismiss any of the Cases shall require at least twenty (20) days prior notice to the DIP Facility Agent and Prepetition Agents.

24.    <u>Findings of Fact and Conclusions of Law</u>.  This Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon the entry thereof.

25.    <u>Controlling Effect of Order</u>.  To the extent any provision of this Order conflicts with any provision of the Motion, the Interim Order, any prepetition agreement or any

document executed in connection with the DIP Facility, the provisions of this Order shall

control.

Dated: December 16, 2008
      New York, New York

                             */s/ Allan L. Gropper*
                             The Honorable Allan L. Gropper
                             United States Bankruptcy Judge